FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN -5 AM 8: 25

LORETTA G. WHYTE
       CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC.<br><br>           Plaintiffs<br><br>VERSUS<br><br>HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC. , AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPAIR  LEROI<br><br>           Defendant | CIVIL ACTION<br><br>NO.:   00-0166<br><br>SECTION:  "S" (1) |

\* \* \* \* \* \* \* \*

SEACOR'S REBUTTAL TO DEFENDANTS'
RECENT MEMORANDA IN SUPPORT OF
SUMMARY JUDGMENT/DISMISSAL

      Plaintiff SEACOR Marine, Inc. and SEACOR Offshore, Inc. respectfully submit this rebuttal to arguments raised in memoranda recently filed by defendants in support of their motions for summary judgment/dismissal.

1

Notwithstanding defendants' arguments, their motions for summary judgment/dismissal based on the *East River* "economic loss" rule should be denied because:

In the only cited case on point, a federal maritime appellate court has ruled that the "economic loss" rule does not bar a tort claim where, as here, a manufacturer's negligence was committed separate and apart from the manufacturing process by failing to advise the product's purchasers and users of a product deficiency learned of after the product had been placed in the stream of commerce. See *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir. 1984).

Defendants have cited no other case on point and none contrary to *Miller Industries*. which constitutes the general maritime law on this issue.

Second, notwithstanding defendants' denials, the maritime jurisprudence establishes that when owner-supplied equipment – that is, equipment purchased separately by a shipowner from a third party rather than from the vessel's manufacturer – is damaged in a shipboard fire, the shipowner may bring a tort claim for damage to that equipment regardless of *East River*.

In *Saratoga Fishing Company v. J.M. Martinac & Co.*, 520 U.S. 875, 876, 117 S.Ct. 1783, 1785 (1997), the Supreme Court held that fire damage to equipment (a skiff, a fishing net, and spare parts) added to a vessel by its purchaser was recoverable irrespective of *East River*. In so ruling, the court wrote: "Items added to the product by the initial user are 'other property.'" *Id.* Like the skiff, fishing net and spare parts in *Saratoga Fishing*, the stern thruster was an item added to the vessel by the purchaser SEACOR and was not a

component supplied by manufacturer Houma under the Shipbuilding Contract. The stern thruster engine accordingly constitutes "other property" beyond the pale of *East River*.

Of similar effect is *Nicor Supply Ships Assoc. v. General Motors Corp.*, 875 F.2d 501 (5th Cir. 1989). There the Fifth Circuit held that a ship charterer who had added seismic equipment to the ship could recover for its fire loss caused by a defective engine. As the Fifth Circuit noted, "because these items were *not part of the contract under which the vessel was sold,* damage to them is an injury which their proprietor may recover in tort." *Nicor*, 876 F.2d at 506 (emphasis added). Here, as well, the damaged stern thruster engine was not provided by Houma under the contract, and damage to it therefore is recoverable in tort.

As these cases illustrate, the "product itself" consists of that which was sold by the seller/manufacturer (Houma Fabricators) – *not* equipment purchased separately by the buyer and integrated into the product.

The uncontroverted evidence establishes here that the GALAXIE's stern thruster engine, which was damaged in the fire, was purchased separately by SEACOR from a third party and was not sold or supplied by Houma under the Shipbuilding Contract. As Houma's president, Butch Monnier, testified in his recent deposition of December 7:

> Q:   In looking at the photographs of fire-damaged equipment, have you observed any equipment on those photographs that you know to have been provided by Waveland [SEACOR's predecessor-in-interest under the contract] or SEACOR?
>
> A:   Yes.

> Q: Please tell me what damaged equipment from those fire photos you're referring to.
>
> A: Stern thruster engine.
>
> ...
>
> Q: Okay. And it's your understanding that that stern thruster engine was paid for separately by Waveland/SEACOR.
>
> A: Yes.

[See *Monnier Deposition,* pp. 189-91 (attached as Exhibit "A")].

Because the stern thruster engine was not supplied by Houma under the Shipbuilding Contract, but was rather purchased separately by SEACOR, it constitutes "other property" beyond the scope of *East River.*

This only makes sense, particularly in light of *East River*'s chief public policy rationale: that purchasers need no tort remedy since a contract remedy will lie against the seller under the contract of sale. A contract remedy would not lie against Houma for an inherent defect in the stern thruster engine, which Houma did not select, supply, or sell under the Shipbuilding Contract or otherwise.[1] *East River*'s main policy justification therefore does not apply to the stern thruster, which further supports the view that the stern thruster constitutes "other property" damage which should be recoverable in tort.

---

[1] Houma and LeRoi maintain without any supporting reasoning or authority that SEACOR would have a warranty claim against Houma in respect of any defect in the stern thruster engine. This unsupported contention makes no sense. Under what legal theory would Houma be responsible for defects in a product that it did not supply and that was instead purchased separately by SEACOR? Defendants provide no direct answer.

Defendants of course argue to the contrary. But, in doing so, they are unable to cite even a single case in which a plaintiff was barred from bringing a tort claim for damage to property that it had purchased separately from a third party rather than from the product's seller/manufacturer. Apparently no maritime case has held that such separately-purchased property constitutes "the product itself" (instead of "other property") for purposes of the economic loss rule.

Defendants argue that the stern thruster engine was a part of the "product itself" because Houma was obligated under the Shipbuilding Contract to provide a fully functional vessel and because the stern thruster engine was installed by Houma prior to the vessel's delivery. Houma writes: "a stern-thruster and its power plant are an integral part of the ship's propulsion system, which could scarcely be called 'extra' for an operational vessel." [See *Houma's Rebuttal Memorandum* at 2]. Defendants thus suggest that, because a stern thruster is a necessary component of an operational vessel, Houma *was* obligated to provide a stern thruster under its contract to supply an operational vessel.

This argument fails. Contrary to defendants' assertions, the stern thruster plainly was an "extra" (i.e. "other property") supplied separately by SEACOR rather than by Houma under the Shipbuilding Contract. The contention that the stern thruster was an essential piece of equipment to any functioning vessel is neither true nor material to the issue at hand. It is not true because a stern thruster is a highly specialized device that is not essential to navigation and is found on very few vessels. The contention is immaterial because we need not engage in a theoretical analysis of what constitutes "an operational vessel" to determine

5

whether the stern thruster was supplied by Houma under the Shipbuilding Contract. We know for a fact that Houma did *not* supply the stern thruster as part of its contractual obligations; it was purchased separately by SEACOR from a third-party. The stern thruster therefore constitutes "other property" separate and apart from what was sold by Houma under the Shipbuilding Contract.

A contrary conclusion is not warranted simply because Houma installed the stern thruster engine aboard the vessel. The act of installation did not transform this piece of owner-supplied equipment into a piece of manufacturer-supplied equipment (the "product itself") any more than installation of owner-supplied seismic equipment did so in the *Nicor* case. There, as here, the equipment remained owner-supplied "other property," regardless of its integration with the vessel. As such, it was not a piece of equipment supplied by Houma under the Shipbuilding Contract and it therefore constitutes "other equipment."

In arguing to the contrary, defendants ignore the case of *Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc.*, 1 F.Supp.2d 608 (E.D. La. 1998). In that factually analogous case, Judge Vance confronted the question whether a marine engine purchased separately by the shipowner constituted "other property" for purposes of *East River*, notwithstanding that the engine had been installed in the vessel by a company that had contracted to supply a fully refurbished vessel. In ruling that the engine did constitute "other property," the court rejected the notion that the engine was an integral part of the "product itself" simply because it was installed aboard the vessel by a company that was contractually obligated to provide

a fully refurbished vessel. This is essentially the same argument advanced by defendants in the instant case, and it should be rejected here as well.

In short, defendants seek an unprecedented expansion of *East River* in two respects: (a) to bar claims for post-manufacture negligence and (2) to bar claims for damage to property that was not even purchased from the seller/manufacturer. Defendants' arguments are contrary to existing maritime jurisprudence, and they should be rejected. There is no basis in law or public policy for defendants to be immunized from the consequences of their own negligence in this matter.

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ____ day of January, 2001.

_____
ALFRED J. RUFTY III

G:\Data\GALAXIE\P\Rebuttal.to.Def's Memo.wpd

```
                                                                    1

1

2

3              UNITED STATE DISTRICT COURT

4              EASTERN DISTRICT OF LOUISIANA

5

6

7    SEACOR MARINE, INC.,            *    CIVIL ACTION
     SEACOR OFFSHORE, INC.           *
8                                    *    NUMBER 00-0166
     VERSUS                          *
9                                    *    SECTION "S"
     HOUMA FABRICATORS, A DIVISION   *
10   OF L.O.R., INC., AIR COMPRESSOR *    MAGISTRATE (1)
     ENERGY SYSTEMS, INC., DRESSER
11   INDUSTRIES, INC., and LEROI
     INTERNATIONAL, INC. d/b/a
12   COMPAIR LEROI

13

14

15          Deposition of O.E. "BUTCH" MONNIER, JR., taken

16   at the offices of Houma Fabricators, Peach Street,

17   Houma, Louisiana, on the 7th day of December, 2000.

18

19

20

21

22

23

24

25
```



189

1   Q.      In looking at the photographs of fire-damaged
2   equipment, have you observed any equipment on those
3   photographs that you know to have been provided by
4   Waveland or Seacor?
5   A.      Yes.
6   Q.      Please tell me what damaged equipment from
7   those fire photos you're referring to.
8   A.      Stern thruster engine.
9   Q.      Okay.  Anything else?
10  A.      Not right off the top of my head.
11  Q.      Okay.  And it's your understanding that that
12  stern thruster engine was paid for separately by
13  Waveland, slash, Seacor?
14  A.      Yes.
15  Q.      So that stern thruster engine was not part of
16  the vessel that you provided to Seacor; is that right?
17          MR. KLEINMAN:
18              Object to the form of the question.
19  A.      Objection.
20          THE REPORTER:
21              I didn't get his answer.
22          MR. JOHNSON:
23              He said "objection."
24          MR. RUFTY:
25              The witness said "objection"?

```
                                                           190

 1          MR. JOHNSON:
 2                  That's what he said.  But I think you may
 3     want to rephrase it.
 4          MR. RUFTY:
 5                  I'd be happy to rephrase it.
 6     BY MR. RUFTY:
 7     Q.   Was proving a stern --
 8          MR. McCARTHY:
 9                  I joint the witness in his objection.
10     MR. RUFTY:
11     Q.   All right.  Was providing the stern thruster
12     engine part of your deal with Galaxie, slash, Seacor?
13          MR. JOHNSON:
14                  I think you need to explain what "deal"
15     means.  Initially you asked him whether or not it was
16     part of the vessel, and I think clearly it was.
17          MR. RUFTY:
18                  I agree with that.
19          MR. JOHNSON:
20                  You're talking about whether or not
21     Seacor, slash, Waveland agreed that they were going to
22     furnish the stern thruster as opposed to it being
23     furnished by Houma Fabricators?
24          MR. RUFTY:
25                  As opposed to it being a piece of
```

```
                                                          191

1    equipment that Houma Fabricators was suppose to
2    furnish under the contract.
3         MR. JOHNSON:
4              All right.  Do you understand the
5    question?
6         MR. McCARTHY:
7              I don't.
8         THE WITNESS:
9              No.  But I think I could answer.
10   BY MR. RUFTY:
11   Q.   Well, I want you to understand the question.
12   I'll ask it again.
13        Was that stern thruster equipment a piece of
14   equipment that Houma was supposed to furnish with the
15   vessel under its contract with Galaxie, slash, Seacor?
16   A.   Under the contract, we allowed Seacor to
17   furnish certain pieces of major equipment of large
18   dollar cost and minimal handling so that I would not
19   mark them up 10 percent for handling and charge Seacor
20   for it.  Now does that answer your question?
21   Q.   Very well.  Thank you, sir.  And the stern
22   thruster was one of those pieces of major equipment?
23   A.   Yes.
24   Q.   Were there any other pieces of such equipment
25   that were damaged in the fire, based on your review of
```