FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN -4 PM 4: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | * * * * | CIVIL ACTION NO.:  00-0166 SECTION:  "S" (1) |
| Plaintiffs | * | |
| VERSUS | * * | |
| HOUMA FABRICATORS, A DIVISION OF L.O.R., INC., AIR COMPRESSOR ENERGY SYSTEMS, INC., DRESSER INDUSTRIES, INC. , AND LEROI INTERNATIONAL, INC. D/B/A COMPAIR  LEROI | * * * * * * * | |
| Defendant | * * | |

\*     \*     \*     \*     \*     \*     \*     \*

## MOTION FOR RECONSIDERATION

NOW COME plaintiffs SEACOR Marine, Inc. and SEACOR Offshore, Inc. and, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, respectfully MOVE for reconsideration of the Honorable Magistrate Judge Sally Shushan's Minute Entry of December 19, 2000, on the grounds and for the reasons stated in the accompanying memorandum.

Fee/
Process
X  Dktd
CtRmDep
Doc.No.

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and
SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this _4_ day of January, 2001.

_____
ALFRED J. RUFTY III

2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SEACOR MARINE, INC. AND** | * | **CIVIL ACTION** |
| **SEACOR OFFSHORE, INC.** | * | |
| | * | **NO.:   00-0166** |
| **Plaintiffs** | * | |
| | * | **SECTION:  "S" (1)** |
| **VERSUS** | * | |
| | * | |
| **HOUMA FABRICATORS, A DIVISION** | * | |
| **OF L.O.R., INC., AIR COMPRESSOR** | * | |
| **ENERGY SYSTEMS, INC., DRESSER** | * | |
| **INDUSTRIES, INC. , AND LEROI** | * | |
| **INTERNATIONAL, INC. D/B/A** | * | |
| **COMPAIR  LEROI** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| *    *    *    *    *    *    *    * | | |

## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

Plaintiff SEACOR Marine, Inc. and SEACOR Offshore, Inc. (together, "SEACOR")

respectfully submit that the Court should reconsider its Minute Entry of December 19, 2000

denying SEACOR's motion for leave to amend its original complaint.

Four basic reasons support this motion.  First, SEACOR did not learn through

discovery of the factual basis for the amended tort claims until the depositions of LeRoi and

Hart Industries on October 18, 2000 – several months after the deadline for amending claims

under the Court's scheduling order. Second, with the exception of the new tort claims based on newly discovered evidence, the remaining claims stated within the amended complaint are contract-based claims that should fairly be regarded as contemplated within the original complaint under the federal "notice pleading" standard and the relevant case law. Third, defendants have identified no prejudice they will suffer by the granting of the motion. Fourth and finally, the governing procedural rules and case law are clear that leave to amend should be "freely given" and generally has been given in similar circumstances.

Although this Court agreed in its Minute Entry that SEACOR's motion for leave should not be denied as futile or with respect to the allegation of diversity jurisdiction, the Court nevertheless denied the motion due to concerns about "the timing and possible prejudice to the defendants." The Court further noted that the "plaintiffs have not explained when and how they learned of the facts given rise to these [amended] claims." [See *Minute Entry* of December 19, 2000 at 3].

## A. **Notice of Facts Underlying Amended Claims**

Addressing the latter concern first, SEACOR filed with the court on November 22, 2000 – in a memorandum submitted to Judge Mary Ann Vial Lemmon – an explanation of how SEACOR learned only recently of the facts giving rise to the tort claims alleged in the amended complaint. In that memorandum, SEACOR explained that the facts upon which the amended tort claims are based were learned in the depositions of CompAir LeRoi and Hart Industries, taken on October 18, 2000. As that memorandum stated at pages two through five, the vessel was delivered to SEACOR in November 1997. Prior to that time,

defendant Houma Fabricators had purchased the compressor unit for the GALAXIE's engine room from defendant Air Compressor Energy Systems ("ACES"), which had ordered the compressor unit from LeRoi and received delivery on or about November 18, 1996.[1]

The critical revelation of the Hart and LeRoi depositions of October 18th was that, by the following Summer, LeRoi and perhaps other defendants had learned that a hydraulic hose in the compressor was defective and/or incompatible with the very oil specified by LeRoi for use in the compressor. Specifically, LeRoi had learned that the hydraulic hose lacked the requisite temperature rating for expectable applications. [See *LeRoi 30(b)(b) Deposition (Ron Keen)*, p. 65, 106-07 (Exhibit "A"]. Additionally, LeRoi had learned that the hydraulic oil it specified for use in the compressor was incompatible with the compressor hose and could cause it to rapidly deteriorate, presenting a significant risk of fire.

As the October 18th depositions further disclosed, in a meeting with representatives of Hart in July 1998, LeRoi was advised of tests which had revealed the incompatibility. LeRoi further learned that the incompatibility caused the hose material to deteriorate at an advanced rate. In the corporate deposition of Hart Industries (the hose supplier), its president Roger Hart testified that he had a discussion with LeRoi

> as to a hose returned to us by LeRoi, submitted to Gates for analysis, at which time it was determined that there was a fluid [oil] being used that *may have caused the hose to leak from an*

---

[1] See *Houma Fabricators Purchase Order H-44085* (attached to LeRoi's Summary Judgment Memorandum as Exb. "4"); and *LeRoi Invoice no. 20093947* (attached to LeRoi's Summary Judgment Memorandum as Exb. "5").

3

*incompatibility.* [*Hart Ind. Dep. (Roger Hart)*, p. 33 (Exhibit " B")].

Although this conversation took place in January 1999, in a letter of January 28, 1999 (just two days before the fire), Hart wrote to LeRoi inquiring why LeRoi had taken no corrective action despite having learned in a July 1998 meeting that there was a compatibility problem in its use in its compressors of hydraulic oils containing phosphate esters in conjunction with the Gates C5C hoses (the very hose on the compressor in issue). Referring to the letter, Hart testified:

> From what I can see here, we were trying to get some kind of a response from LeRoi with respect to the analysis that had been performed by Gates warning them that there might be a problem if they were to be using the phosphate esters ... .

> Q:    And that analysis was that there was a problem with using C5C hoses with oils containing phosphate esters?

> A:    Yes.

> \* \* \*

> Q:    And that information was apparently presented to LeRoi at least as early as this July '98 meeting, is that your understanding?

> A:    Correct. [*Id.*, pp. 49-50].

In spite of the potentially severe dangers posed to life and property by a rupturing hose and expectable fire from the spraying of pressurized hydraulic oil in a hot engine room, LeRoi took no action to advise users of the problems with the hose. LeRoi's inaction is inexcusable. LeRoi ignored the warnings, suppressed the information, and remained mute

(no doubt to save the costs and potential liabilities associated with a product recall).[2]

As a prudent operator, SEACOR had used in the compressor the hydraulic oil that LeRoi specified: namely, the incompatible oil. On January 30, 1999, a fire erupted in the GALAXIE's engine room. The fire has been traced to the failed hydraulic compressor hose, which (predictably) failed. This is, of course, the same hose that LeRoi had previously learned to be defective and incompatible with LeRoi-specified hydraulic oil. At the time of the fire, the compressor was essentially brand-new, having been subjected to only 28.5 hours of running time.

Before the fire SEACOR was unaware that the compressor hose was defective and incompatible with LeRoi-specified oil.

The depositions that revealed these facts were taken on October 18, 2000, demonstrating that SEACOR did not learn of the basis for the newly alleged tort claims until the month of October, which is of course several months after the scheduling order's deadline for amending claims. Prior to that date, SEACOR was not aware – and had no basis to be aware – of facts suggesting that a predicate existed for the tort claims alleged in the amended complaint. In fairness, the motion to amend therefore should be allowed.

---

[2]  A few months after the fire, LeRoi finally took action: It issued the enclosed recall notice, advising its distributors of the hose defect/incompatibility; warning that a fire could result; and enlisting assistance in tracking down all affected customers so that the deficient hoses could be replaced. [See *"Important Service Notice" of April 21, 1999* (Exhibit "C")].

## B. <u>The Original Complaint</u>

Aside from the newly-stated tort claims based on information learned in the recent Hart and LeRoi depositions, the remaining claims in the amended complaint are fairly contemplated within the original complaint.

The relevant case law plainly establishes that, under the federal "notice pleading" standard, a complaint need only fairly apprise the defendants of the factual basis underlying the claims instead of a demand for relief. "The basis premise of the rules is that pleadings do little more than indicate generally the type of litigation that is involved by presenting a generalized summary of the claim and the defense or defenses, sufficient to afford fair notice to the defendant and the plaintiff." *Moore's Federal Rules Pamphlet* ¶8.3 (1998) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Indeed, "the pleader is not bound to have formulated a legal theory" at the time of filing the complaint. *Moore Federal Rules Pamphlet* ¶8.3(5) (1998); *Whitmire v. Victus, Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000); *Vidimos, Inc. v. Laser Lab, Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996) (plaintiff's pleading of contract claim was sufficient basis for later assertion of claim of promissory estoppel, since legal theory for recovery need not be pleaded); *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir. 1988) (a theory of recovery need not be spelled out in a complaint where the relevant issues are sufficiently implicated by the pleadings in evidence).

In this case, the amended complaint clarified theories of relief by asserting claims for breach of contract, redhibition, and breach of warranty. The facts stated in the original

6

complaint – concerning the provision to SEACOR of a vessel with a defective compressor – are plainly enough to apprise defendants of the factual foundation for such run-of-the-mill contract claims.

Additionally, these standard contract claims call for no onerous, unforeseen discovery. Rather, the factual predicate for all of these claims is that the compressor hose was defective, which is of course directly stated in SEACOR's original complaint.

Because these contract-based claims were fairly encompassed within the original complaint and caused no significant new issues for discovery and hence no prejudice, amendment to specify these claims should be allowed.

## C. No Prejudice

In the memoranda opposing SEACOR's motion to amend, defendants identified no significant prejudice that they would suffer by the granting of the motion. No doubt they now will contend that new issues would be raised, necessitating greater discovery time.

But given that SEACOR was unaware of the factual basis for the amended tort claims until well after the Court's deadline for amendment and until soon before the motion to amend was filed, basic fairness requires that these amended claims be allowed, even if new discovery issues are implicated.

Additionally, any complaints of new issues for discovery will be overblown. The amended tort claims all relate to one basic contention: that LeRoi and perhaps other defendants learned after the compressor was placed in the stream of commerce that the hose was defective and/or incompatible with the specified compressor oil and yet neglected to

7

advise SEACOR of this fact prior to the fire. As the amended complaint reflects, this is the factual predicate for all of the tort claims stated in the amended complaint: namely, for the maritime tort claim (first count), the negligent provision of erroneous advice (second count), the intentional/negligent misrepresentation claim (third count), and the fraud claim (fourth count).

The discovery implicated by these claims thus concerns what the defendants knew and when they knew it. Defendants obviously already know these things. It requires no discovery by the defendants to learn what the defendants knew (and when) about deficiencies in the compressor hose. These are matters within the defendants' exclusive knowledge. Any discovery burdens raised by these amended tort claims therefore fall on the shoulders of SEACOR, not defendants.

Allowing the amended tort claims therefore will not significantly prejudice the defendants. And even if some prejudice were caused (in the minor form of additional discovery), this would not in fairness be a basis for depriving SEACOR of legitimate claims based on facts learned of only recently in the discovery process due to no delay or delinquency on SEACOR's part.

With respect to the remaining claims specified in the amended complaint – the contract-based claims for breach of contract, redhibition, and breach of warranty – there are essentially no new factual issues for discovery and, as discussed above, these claims are in any event fairly encompassed within the original complaint and pose no unfair surprise to defendants. Again, defendants cite no prejudice in their previous memoranda that would arise from the Court's permitting SEACOR to more specifically state these contract-based remedies.

8

Finally, the standards for amending pleadings are quite liberal and court's routinely have allowed amendment in circumstances similar to these. When, as here, the evidence adduced in discovery reveals claims or issues not raised in the pleadings, Fed. R. Civ. P. 15(b) permits these claims or issues to be determined at trial even without a formal amendment. Further, if a party seeks a formal amendment to conform the pleadings to the evidence, this may be done by motion "at any time, even after judgment." Fed. R. Civ. P. 15(b).

If an opponent objects to evidence at trial as beyond the issues raised in the pleadings, the court may nevertheless

> allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to [demonstrate prejudice].
> *Id.*

If the prejudice alleged is lack of an adequate discovery opportunity, "[t]he court may grant a continuance to enable the objecting party to meet such evidence." *Id.*

Similarly, Rule 15(a) directs that leave to amend shall be "freely given when justice so requires."

Assuring that these are not mere hollow words, the Supreme Court has directed: "This mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). as the *Foman* court then explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc. – the
leave sought should, as the rules require, be 'freely given.'

See also *Eastern Natural Gas Corp. v. Aluminum Co. of Am.,* 126 F.3d 996, 999-1000

(7th Cir. 1997) (grant of leave to amend counterclaim only 11 days before trial affirmed when

opposing party conducted further discovery and did not request continuance); *Lowrey v.*

*Texas A & M Univ. System*, 117 F.3d 242, 245-246 (5th Cir. 1997) (dismissal of complaint

without granting motion for leave to amend complaint was abuse of discretion, particularly

when amendment only stated alternative legal theories for recovery on same facts ).

In the instant case, leave to amend is not sought in bad faith; there has been no undue

delay, considering that SEACOR only learned the factual predicate for the amended tort

claims a few weeks before the motion for leave was filed; and there will be o significant

prejudice to defendants if the motion is granted.  Under the established liberal standards for

amendment, and in the interest of justice, SEACOR respectfully submits that the

amendments should be allowed.

For these reasons, SEACOR respectfully requests that the Court reconsider its Minute

Entry of December 19, 2000.

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS, III (#6678)
ALFRED J. RUFTY, III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and
SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ___4___ day of January, 2001.

_____
ALFRED J. RUFTY III

1              UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF LOUISIANA

3       ———————————————————————————————————————————

4    SEACOR MARINE AND SEACOR              :

5    OFFSHORE, INC.                        :

6              Plaintiffs                  :

7        -vs-                              : CASE NO.

8    HOUMA FABRICATORS, A DIVISION         : 00-0166

9    OF L.O.R., INC., AIR COMPRESSOR       :SECTION "S"

10   ENERGY SYSTEMS, DRESSER INDUSTRIES,:

11   INC., AND LEROI INTERNATIONAL,        :

12   Dba COMPAIR LEROI                     :

13              Defendants                 :

14      ———————————————————————————————————————————

15

16           Deposition of RON W. KEEN, a witness

17   herein, taken by the Plaintiffs as upon cross

18   examination and pursuant to the Ohio Rules of

19   Civil Procedure as to the time and place and

20   stipulations hereinafter set forth, at the

21   Holiday Inn, 400 Folkerth Avenue, Sidney, Ohio,

22   at 9:31 a.m., on Wednesday, October 18, 2000,

23   before Mary A. Frazier, a RMR, CRR, and Notary

24   Public within and for the State of Ohio.

25                  * * * * * *

1    and verified that by the Aeroquip FC350 spec,

2    that they were those hoses or that they were

3    acceptable spec.  And again, the catalog will

4    state compatibility with it.  We took the extra

5    measure in this case to actually have Aeroquip

6    to physically rerun a compatibility check on

7    our particular one.

8        Q.   Do you recall if the Gates catalog

9    or other information provided by Gates

10   contained information concerning compatibility?

11       A.   I don't recall.  But the problem

12   with the Gates was it didn't meet the spec.  It

13   wasn't the right hose for the spec.

14            MR. WALLACE:  Let the record

15   reflect the witness was pointing to the

16   temperature.

17            THE WITNESS:  Not the right

18   temperature, and it doesn't meet the J, excuse

19   me, SAE J1402 spec.

20            MR. McCARTHY:  That's the oil

21   compatibility?

22            THE WITNESS:  The oil

23   compatibility is included in the SAE spec,

24   that's correct.

25            MR. McCARTHY:  Okay, thank you.

1          MR. WALLACE:  We have got time

2     problems, and what I was basically trying to

3     say was these questions had already been asked

4     and answered and they also go beyond the area

5     of inquiry.

6          MS. LAPORTE:  Okay, I am not

7     going to pursue it then.

8               RECROSS EXAMINATION

9     BY MR. RUFTY:

10         Q.    A very quick couple of follow-ups.

11     Is the Gates C5C hose one that fits the

12     description of the LeROI product number 73-951

13     series?

14         A.    No.

15         MR. WALLACE:  Same objection.

16         THE WITNESS:  That doesn't meet

17     the spec.  By reading their literature and by

18     their own admission, it doesn't meet the spec.

19     BY MR. RUFTY:

20         Q.    Okay.  I understand it doesn't meet

21     the spec.  Make sure we are on the same page.

22     The product number, 73-951 series, to my

23     understanding, refers to various, to hoses of a

24     various size and type.

25         A.    Only length.

1        Q.    Only length.

2        A.    One particular size, only different

3  lengths.

4        Q.    Okay.  The designation by LeROI,

5  though, of 73-951 does not refer to a

6  particular manufacturer?

7        A.    No, it refers to the SAE spec.

8        Q.    Okay.

9           MR. WALLACE:  Excuse me,

10  counsel.  It refers to two particular

11  manufacturers or equal.

12           MR. RUFTY:  Yes, okay.

13           MR. WALLACE:  And the question

14  is whether this is an or equal.

15  BY MR. RUFTY:

16        Q.    To your knowledge, was the Gates C5C

17  hose used in applications calling for a 73-951

18  series hose?

19           MR. WALLACE:  Object to the

20  form.  Beyond the area of inquiry.

21           THE WITNESS:  Yeah.  Yes, it

22  was.

23  BY MR. RUFTY:

24        Q.    I thought so.  I just wanted to make

25  sure that's what I was understanding.

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF LOUISIANA

 3    _____

 4   SEACOR MARINE AND SEACOR              :

 5   OFFSHORE, INC.                        :

 6              Plaintiffs                 :

 7       -vs-                              : CASE NO.

 8   HOUMA FABRICATORS, A DIVISION         : 00-0166

 9   OF L.O.R., INC., AIR COMPRESSOR       :SECTION "S"

10   ENERGY SYSTEMS, DRESSER INDUSTRIES,:

11   INC., AND LEROI INTERNATIONAL,        :

12   Dba COMPAIR LEROI                     :

13              Defendants                 :

14    _____

15

16              Deposition of ROGER HART, a witness

17   herein, taken by the Plaintiffs as upon cross

18   examination and pursuant to the Ohio Rules of

19   Civil Procedure as to the time and place and

20   stipulations hereinafter set forth, at the

21   Holiday Inn, 400 Folkerth Avenue, Sidney, Ohio,

22   at 1:15 p.m., on Wednesday, October 18, 2000,

23   before Mary A. Frazier, a RMR, CRR, and Notary

24   Public within and for the State of Ohio.

25                   *  *  *  *  *  *
```

Page 30

1  would like to go through the same general
2  question with respect to pressure and
3  temperature requirements. Has Gates supplied
4  Hart with information concerning the
5  temperature and pressure capabilities of its
6  hoses?
7      A.  Yes, they have.
8      Q.  And would your answers with respect
9  to temperature and pressure be the same as
10  those you just gave?
11      A.  Correct.
12      Q.  That information you would expect to
13  be included in the Gates catalog?
14      A.  Yes.
15      Q.  And that catalog, to your
16  recollection, was sent to LeROI prior to the
17  '96-97 time frame?
18          MR. WALLACE:  Object to the
19  form.
20          THE WITNESS:  Yes.
21  BY MR. RUFTY:
22      Q.  What circumstances surrounded the
23  loss of the LeROI account?
24      A.  LeROI had become --
25          MR. KLEINMAN:  Go ahead.

Page 31

1          THE WITNESS:  Should I go?
2          MR. KLEINMAN:  Yes.
3          THE WITNESS:  They become a
4  credit problem.  Our receivables were going
5  past 100 days.  We feared that they might be in
6  financial trouble.  And not having the ability
7  to carry that receivable balance, we raised
8  their prices substantially, which we knew they
9  would either find new suppliers or we would
10  have the additional revenues to cover the
11  carrying costs for their bad paying habits.
12  BY MR. RUFTY:
13      Q.  And I am sorry, I think you answered
14  this, but approximately when did that business
15  relationship cease?
16      A.  That was ceasing through '98.  So it
17  would have been -- I don't know exact dates,
18  but it would have probably come to an end
19  either late '98 --
20          CHRISTOPHER HART:  It was early
21  '99.
22          THE WITNESS:  Oh, early '99.
23          MR. RUFTY:  Randy, are questions
24  about any role that compatibility questions,
25  investigation may have had in the interruption

Page 32

1  of the business relationship, are those best
2  addressed to this witness or the next?
3          MR. KLEINMAN:  I suggest that
4  the technical questions be made to him.
5          MR. RUFTY:  Okay.
6  BY MR. RUFTY:
7      Q.  Did concern or discussions about the
8  compatibility or suitability of Gates hoses or
9  LeROI compressors have anything to do with the
10  severing of your business relationship?
11      A.  To my knowledge, no.
12      Q.  Were you involved in any capacity in
13  discussions or communications with LeROI
14  concerning the potential incompatibility or
15  insuitability of Gates hoses for air
16  compressors?
17      A.  No, I was not.
18      Q.  Who, if anyone, at Hart was, if you
19  know?
20      A.  If anyone was, it would have been
21  our salesman, Jim Toschlog.  Oh, our quality
22  manager, Jack Hart.
23      Q.  Is he still employed at the company?
24      A.  Yes.
25      Q.  Same capacity?

Page 33

1      A.  Yes.
2      Q.  Were you aware that that issue
3  existed back in early 1999?
4      A.  Yes.
5      Q.  Did you have any discussions with
6  Jack Hart or Mr. Toschlog about it?
7      A.  One brief description.
8      Q.  With whom, please?
9      A.  With Jack Hart.
10      Q.  Do you recall roughly when that was?
11      A.  No.  Sometime in the first quarter
12  of '99.
13      Q.  What was discussed in that
14  conversation, please?
15      A.  There was some discussion as to a
16  hose returned to us by LeROI, submitted to
17  Gates for analysis, at which time it was
18  determined that there was a fluid being used
19  that may have caused the hose to leak from an
20  incompatibility.  It was Gates' recommendation
21  to LeROI as well as ours that they change the
22  fluid being used in that application.
23          They had expressed other
24  problems they were having with the same units
25  with products not supplied by us but were

9 (Pages 30 to 33)

Page 46

1    Q.  And what was that, please?
2    A.  They said it was -- well, I will
3  read what they wrote here.  Investigation found
4  that the C5C product, due to contaminating --
5  containing a nitrile tube, is not recommended
6  for use of phosphate esters.  So we're not
7  sure.
8        I mean I don't know if that
9  tells me what kind of oil LeROI was using.  I
10  don't think that tells me definitively.  So
11  having not talked to LeROI about this, and only
12  having this response from Gates on the failed
13  hose, I can't tell you.
14    Q.  Is it your understanding that the
15  C5C hoses of the composition sent to LeROI
16  would be incompatible for use with any oils
17  containing phosphate esters?
18        MR. WALLACE:  Object to the
19  form, calls for a legal conclusion, expert
20  opinion, a lack of foundation, vagueness,
21  overbroadness.
22        MR. KLEINMAN:  Join in the
23  objection.  Go ahead and answer the question if
24  you can.
25        THE WITNESS:  That would

Page 47

1  probably depend on the concentration of
2  phosphate esters.  We would probably need to
3  know the specific specifications of the fluid.
4  There is a lot of different phosphate ester
5  fluids and sometimes they are used in varying
6  concentrations, so.
7  BY MR. RUFTY:
8    Q.  Okay.
9        MR. WALLACE:  Are you at a
10  breaking point?
11        MR. RUFTY:  Okay.
12        MR. WALLACE:  Off the record.
13        (WHEREUPON, the parties went
14  off the record.)
15  BY MR. RUFTY:
16    Q.  Aside from what you have already
17  told us, what else do you recall about your
18  discussions with Jack Hart on, sometime the
19  first quarter of 1999?
20    A.  That's about all I can recall from
21  that conversation.  It was brief.
22    Q.  Do you recall whether he mentioned
23  anything about a fire aboard a vessel?
24    A.  No, I don't believe there was any
25  mention of that.

Page 48

1    Q.  Do you have any idea when LeROI
2  first posed questions to Hart about
3  compatibility or suitability issues pertaining
4  to the C5C hose?
5    A.  I believe it was sometime in the
6  first quarter of 1999.
7    Q.  Referring, if I may, to the exhibit
8  which has been marked 7A, which is a letter
9  from John Hart to CompAir LeROI dated January
10  28, 1999, would you agree that based upon this
11  letter it appears that the questions were
12  raised by LeROI sometime prior to or at the
13  very latest on this very date of January 28,
14  1999?
15    A.  Yes, this letter would have been
16  after the analysis by Gates that we were just
17  talking about.  At which time the PS at the
18  bottom of the letter was calling on LeROI to
19  respond to that information supplied to them by
20  Gates.
21    Q.  The request by your company that
22  Gates perform this analysis was in response to
23  a request for information by LeROI?
24    A.  Apparently so.
25    Q.  Do you know when that request was

Page 49

1  made?
2    A.  No, I do not.
3    Q.  Please look at the post script to
4  this exhibit, 7A.  Let me know when you have
5  had an opportunity to read it.
6    A.  Yes.
7    Q.  Does that postscript suggest to you
8  that LeROI had been communicating with Hart
9  concerning potential hose failures, at least as
10  early as July 1998?
11        MR. WALLACE:  Objection to form,
12  calls for a conclusion, lack of foundation.
13  BY MR. RUFTY:
14    Q.  You can answer subject to that.
15    A.  From what I can see here, we were
16  trying to get some kind of a response from
17  LeROI with respect to the analysis that had
18  been performed by Gates warning them that there
19  might be a problem if they were to be using the
20  phosphate esters, which at this point we still
21  were never told that they were using those
22  fluids in our hoses.
23    Q.  Is it your understanding that in
24  this 7-98 meeting referred to in Exhibit 7A,
25  that your company made known to LeROI that

13 (Pages 46 to 49)

Page 50

1  there might be a problem in using oils with
2  phosphate esters?
3        MR. WALLACE: Object to the
4  form, calls for a conclusion, lack of
5  foundation.
6        THE WITNESS: I think that what
7  was written in this letter basically covers
8  what we were trying to tell them.
9  BY MR. RUFTY:
10       Q. And what exactly was that, please?
11       A. That we were still awaiting their
12  response to the analysis that Gates had made on
13  the hose.
14       Q. And that analysis was that there was
15  a problem with using C5C hoses with oils
16  containing phosphate esters?
17       A. Yes.
18       MR. WALLACE: Object to the
19  form.
20  BY MR. RUFTY:
21       Q. And that information was apparently
22  presented to LeROI at least as early as this
23  July '98 meeting; is that your understanding?
24       A. Correct.
25       MR. WALLACE: Object to the

Page 51

1  form.
2  BY MR. RUFTY:
3       Q. Is it your understanding that oils
4  with phosphate esters might have been the
5  source of the seal failures as well?
6       MR. KLEINMAN: Object to the
7  form.
8       MR. WALLACE: Object to the
9  form, calls for an opinion --
10       THE WITNESS: Yeah, I wouldn't
11  be able to comment on that.
12  BY MR. RUFTY:
13       Q. Okay, fair enough. What lengths, if
14  you know, of C5C hoses have the neoprene
15  elastomer as opposed to the nitrile elastomer?
16       MR. KLEINMAN: Object to the
17  form of the question, mischaracterized previous
18  testimony. Go ahead and answer it.
19  BY MR. RUFTY:
20       Q. I apologize --
21       MR. WALLACE: Object to form.
22       THE WITNESS: Do you mean what
23  lengths in the 73-951 series?
24  BY MR. RUFTY:
25       Q. I believe the answer to that is

Page 52

1  none, correct?
2       A. Right.
3       Q. Aside from that, what length or
4  sizes of C5C hoses have the neoprene as opposed
5  to the nitrile elastomer?
6       A. The No. 4 and No. 5 sizes which are
7  the nominal 1/4 inch and 5/16 ID sizes, which
8  would be designated by the 4C5C part number and
9  5C5C part number.
10       Q. Is it your understanding that those
11  particular hoses are significantly smaller than
12  hoses that were sent by Hart to LeROI?
13       A. Yes.
14       Q. Had you been advised by LeROI prior
15  to January of 1999 that it was using or
16  specking oils with phosphate ester for use --
17       A. To my --
18       Q. -- for use in C5C hoses, would that
19  have caused you concern?
20       MR. KLEINMAN: Object to the
21  form of the question.
22       MR. WALLACE: Same objection,
23  calls for opinion, calls for a conclusion, lack
24  of foundation, also doesn't define the word
25  concern in any legal relevance of any that may

Page 53

1  have.
2       MR. KLEINMAN: Calls for
3  speculation as well.
4       MR. WALLACE: Join the
5  objection.
6       MR. KLEINMAN: You know, this is
7  a factual deposition. I am not sure that's an
8  appropriate question at all.
9  BY MR. RUFTY:
10       Q. Subject to the objections --
11       MR. KLEINMAN: Well, I still
12  don't know whether I will allow him to answer
13  the question or not.
14       MR. RUFTY: All right. It is
15  pretty self evident.
16       MR. KLEINMAN: Go ahead and
17  answer it.
18       THE WITNESS: Could you repeat
19  the question, please?
20  BY MR. RUFTY:
21       Q. Sure. Had LeROI come to you and
22  told you that they were specking oil with
23  phosphate esters for use in C5C hoses, would
24  that have caused you concern?
25       MR. KLEINMAN: Same objections.

14 (Pages 50 to 53)



**CompAir**

A SIEBE COMPANY

CompAir LeROI
P.O. Box 927
211 E. Russell Rd.
Sidney, Ohio 45365-0927

Telephone: (937) 498-2500
Facsimile: (937) 492-3843

GNC # 400001

## IMPORTANT SERVICE NOTICE
### IMMEDIATE ACTION REQUIRED

CompAir LeROI has determined that a potential problem may exist with the Part Number 73-951 Series Oil Injection Hose on CompAir LeROI Stationary Screw Compressor models shown on the attached list which were shipped from the factory in Sidney, Ohio.

The problem is a potential incompatibility between the oil carried by the hose and the hose material. This could result in a shortened service life for the hose due to premature hardening and possible rupture. The ultimate consequence could be a fire resulting in personal injury and / or property damage. Action must be taken to ensure that the compressors covered by this notice have hoses which are known to be compatible with synthetic compressor oils.

Accordingly, CompAir LeROI requests that you notify your customers who own Stationary Screw Compressors covered by this notice that the P/N 73-951 Series hose must be replaced. If any customer has a machine that falls into this category, please contact the CompAir LeROI Technical Service Department at (937) 498-2511, providing the serial number of the compressor. A replacement hose will be sent to you at no cost, and installation cost will be reimbursed / credited upon AFA submission. The new replacement hoses that will be sent will have a black polyester textile braided cover embossed with "Aeroquip FC350 AQP" and fittings stamped with the Aeroquip logo, the "Flying A". Removed hoses should be rendered useless and disposed of.

(Note that the Aeroquip logo on the fitting is the key identifier of a proper hose.)

All P/N 73-951, 73-951-3 & 73-951-11 hoses in your inventory should also be replaced with the new Aeroquip hoses. Contact the CompAir LeROI Technical Service Department at (937) 498-2511 to make arrangements for such replacements.

CompAir LeROI, who is committed to providing our customers with top quality compressed air equipment, request your prompt attention and assistance with this matter.

Technical Service Department
4/21/99



# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC.** | * <br> * <br> * | **CIVIL ACTION** |
| | * | **NO.:   00-0166** |
| **Plaintiffs** | * <br> * | **SECTION:  "S" (1)** |
| **VERSUS** | * <br> * | |
| **HOUMA FABRICATORS, A DIVISION OF L.O.R., INC., AIR COMPRESSOR ENERGY SYSTEMS, INC., DRESSER INDUSTRIES, INC. , AND LEROI INTERNATIONAL, INC. D/B/A COMPAIR  LEROI** | * <br> * <br> * <br> * <br> * <br> * <br> * | |
| **Defendant** | * <br> * | |

\*     \*     \*     \*     \*     \*     \*     \*

## ORDER

Considering the foregoing motion of plaintiffs SEACOR Marine, Inc. and SEACOR Offshore, Inc. to reconsider the Minute Entry of December 19, 2000, it is hereby

**ORDERED** that the motion is GRANTED.  It is **FURTHER ORDERED** that the Honorable Magistrate Judge Sally Shushan's Minute Entry of December 19, 2000 is vacated and, upon reconsideration, plaintiffs' motion to amend their original complaint be and hereby is GRANTED.

New Orleans, Louisiana this _____ day of January, 2001.

_____
U.S. MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SEACOR MARINE, INC. AND**<br>**SEACOR OFFSHORE, INC.** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO.:   00-0166** |
| **Plaintiffs** | * | |
| | * | **SECTION:  "S" (1)** |
| **VERSUS** | * | |
| | * | |
| **HOUMA FABRICATORS, A DIVISION** | * | |
| **OF L.O.R., INC., AIR COMPRESSOR** | * | |
| **ENERGY SYSTEMS, INC., DRESSER** | * | |
| **INDUSTRIES, INC. , AND LEROI** | * | |
| **INTERNATIONAL, INC. D/B/A** | * | |
| **COMPAIR  LEROI** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| *    *    *    *    *    *    * | * | |

## NOTICE OF HEARING

SEACOR Marine, Inc. and SEACOR Offshore, Inc.'s Motion for reconsideration is

scheduled to be heard on the _24th_ of _Jan._ , 2001 at _9 a.m._

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and
SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ___4___ day of January, 2001.

_____
ALFRED J. RUFTY III