FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -6  PH 5: 00

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | * CIVIL ACTION<br>*<br>* NO. 00-0166 |
| VERSUS | *<br>* SECTION "S" |
| HOUMA FABRICATORS, A DIVISION OF L.O.R., INC., AIR COMPRESSOR ENERGY SYSTEMS, INC., DRESSER INDUSTRIES, INC., and LEROI INTERNATIONAL, INC. d/b/a/ COMPARE LEROI | *<br>* MAGISTRATE (1)<br>* |

## MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' NEW THEORIES OF LIABILITY

NOW COMES, defendant, CompAir LeRoi, and moves this Honorable Court pursuant to Rule 56, F.R.C.P., to render a motion for partial summary judgment in its favor dismissing the claims by plaintiffs against it, all for the reasons more fully set forth in the attached memorandum.

Fee_____
Process_____
X /Dktd_____
_/CtRmDep_____
Doc.No._____

Respectfully submitted,

Campbell E. Wallace, T.A., #13195
Ivan M. Rodriguez #22574
**CHAFFE, McCALL, PHILLIPS**
   **TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for LeRoi International, Inc. d/b/a**
**CompAir LeRoi**

By _____

<u>Certificate of Service</u>

I hereby certify that I have on this 6th day of February, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid.

_____

495886_1 DOC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

SEACOR MARINE, INC. AND      * CIVIL ACTION
SEACOR OFFSHORE, INC.           *
                           * NO. 00-0166
VERSUS                    *
                           * SECTION "S"
HOUMA FABRICATORS, A DIVISION    *
OF L.O.R., INC., AIR COMPRESSOR     * MAGISTRATE (1)
ENERGY SYSTEMS, INC., DRESSER      *
INDUSTRIES, INC., and LEROI
INTERNATIONAL, INC. d/b/a/
COMPARE LEROI

## O R D E R

Considering the foregoing Motion for Partial Summary Judgment:

IT IS ORDERED, ADJUDGED AND DECREED that defendant LeRoi's motion for

partial summary judgment on plaintiffs' new theories of liability is granted

New Orleans, Louisiana, this _____ day of February, 2001.


                     _____
                     **UNITED STATES DISTRICT JUDGE**

Respectfully submitted,

_[signature]_

Campbell E. Wallace, T.A., #13195
Ivan M. Rodriguez #22574
**CHAFFE, McCALL, PHILLIPS
  TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
*Attorneys for LeRoi International,
Inc. d/b/a CompAir LeRoi*

### Certificate of Service

I hereby certify that I have on this ___ day of February, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid.

_[signature]_

495886_1 DOC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND | * CIVIL ACTION |
| SEACOR OFFSHORE, INC. | * |
| | * NO. 00-0166 |
| VERSUS | * |
| | * SECTION "S" |
| HOUMA FABRICATORS, A DIVISION | * |
| OF L.O.R., INC., AIR COMPRESSOR | * MAGISTRATE (1) |
| ENERGY SYSTEMS, INC., DRESSER | * |
| INDUSTRIES, INC., and LEROI | |
| INTERNATIONAL, INC. d/b/a/ | |
| COMPARE LEROI | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' NEW THEORIES OF LIABILITY

MAY IT PLEASE THE COURT:

Plaintiffs, Seacor Marine, Inc. and Seacor Offshore, Inc. ("Seacor") recently filed their first supplemental and amending complaint to assert seven (7) "new" claims for relief. Defendant, Comp Air LeRoi ("LeRoi"), submits that it is entitled to judgment as a matter of law pursuant to Rule 56, FRCP, dismissing each of these "new" claims based upon the undisputed facts, and plaintiff's inability to prove disputed issues of material fact exist for one or more of the essential elements of each "new" claims.

495883_1 DOC

## BACKGROUND

The M/V GALAXIE is an offshore supply vessel owned and operated by Seacor. *See* Statement of Uncontested Material Fact ("UMF"), Nos. 1-7It was designed and built by defendant, Houma Fabricators ("Houma"), pursuant to a ship-building contract between Seacor and Houma. *See* UMF No. 1.

Seacor only had a contract with Houma to build the vessel. It had no contact, much less privity of contract, with LeRoi about the compressor on the GALAXIEprior to the fire which is the subject of this suit. *See* UMF No. 15.

Before the vessel went into service, defendant, ACES, assembled component parts of a LeRoi WE150SSIIB compressor, with Serial No. 4256X124, which was installed in the engine room of the GALAXIE. *See* UMF No. 5. When the compressor was tested by ACES, they "filled up" the compressor with an oil called SSL-50. This was the only "LeRoi-specified" oil used by Seacor in the compressor. *See* UMF No. 10.

On January 30, 1999, the GALAXIE's engine room caught on fire. The only damage to the vessel was to the "product itself", *i.e.*, the GALAXIE and the vessel's component parts. *See* UMF No. 14.

## PLAINTIFFS' THEORY OF CAUSATION

Plaintiffs allege that the fire originated in a rubber hose which they claim was part of the compressor furnished by mover, LeRoi. Plaintiffs' expert has declared that:

> The cause of the fire was a compromised oil injection hose at the compressor fitting end. The pressurized heated oil mist ignited and flashed the source of the breach (the hose), resulting in the generation of heat and smoke within the confines of the engine room. See UMF nos. 9.

In simple terms, plaintiffs' expert says that the rubber hose separated and spewed oil into the engine room which then caught on fire plaintiffs admit that they have "one" basic contention:

Under plaintiffs' theory of the case, the rubber hose supposedly "fell apart" because the oil used in the compressor degraded the physical integrity of the hose and allowed the hose to separate during normal use. If the oil was compatible with the rubber hose, plaintiffs have no other theory of how any condition of a LeRoi product proximately caused the fire and resultant harm to them and their vessel.[1]

**It is uncontested that SSL-50 was the only oil used in the compressor in the M/V GALAXIE. It contained no esthers and was compatible with rubber hoses. See UMF nos. 10 – 13.**

Upon ordering the compressor components, SSL-50 was requested from LeRoi. After the compressor components were installed before the M/V GALAXIE left on its maiden voyage, SSL-50 was placed in the compressor. While the vessel was in service, on February 28, 1998, and July 26, 1998, SSL-50 was added to the compressor. When the compressor was repaired after the fire, SLL-50 was placed back into the compressor. See UMF no. 10.

## PARTIAL SUMMARY JUDGEMENT STANDARDS

The summary judgement procedure is an integral part of the Federal Rules of Civil Procedure. *Celetox v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 2555 (1986). Under Rule 56, a partial summary judgment should be rendered "forthwith" if, as in this case, there is no genuine issue as to any material fact on a particular issue and the moving party is entitled to judgment as a matter of law." See Federal Rules of Civil Procedure, Rule 56(c)(d). A genuine dispute of material fact "requires more than showing some metaphysical doubt." *Myers v. M/V EUGENIO C,* 919 F.2d 1070, 1072 (5th Cir. 1990). "Material" means that a contested fact has a potential to alter the outcome of the suit under the governing law if the controversy over it is resolved

---

[1] In order to avoid any argument by plaintiffs that there is a disputed issue of fact over whether a rubber hose or hard piping was furnished by LeRoi, LeRoi hereby stipulates solely for purposes of this partial summary judgement and otherwise without prejudice that it furnished a rubber hose with the compressor at issue. However, all of the evidence is to the contrary, but not at issue in this motion for partial summary judgment on causation which assumes

satisfactorily to the non-movant. See *Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir. 1996);

*Douglass v. United Auto Servs,* 79 F.3d 1415, 1423 and note 11 (5th Cir. 1996).

As established in *Celetox,* it is not necessary for LeRoi to introduce <u>any</u> evidence in order

to prevail on summary judgement. Messrs Wright and Miller explained that:

> ...At least in cases in which the non-moving party (Seacor) will
> bear the burden of proof at trial, the movant (LeRoi) can seek summary
> judgement by establishing that the opposing party has insufficient
> evidence to prevail as a matter of law, thereby forcing the opposing party
> to come forward with some evidence or risk having judgment against
> him. <u>See</u> 10A *Wright – Miller – Kane,*) Federal Practice and Procedure
> (3rd Ed. 1998) §2727, p. 474.

By plaintiffs' own admission, their case boils down to "...one basic contention:  that

LeRoi and perhaps other defendants learned after the compressor [aboard the GALAXIE] was

placed in the stream of commerce that the hose was defective and/or incompatible with a LeRoi

specified compressor oil and yet neglected to advise Seacor of this fact prior to the fire...

Additionally, LeRoi had learned that the hydraulic oil that it had specified was incompatible

with the compressor and could cause [a rubber hose] to rapidly deteriorate, presenting a

significant risk of fire, and that there was a compatibility problem in the use of a rubber hose

with hydraulic containing phosphate esters. <u>See</u> plaintiffs' motion for reconsideration.

## THE LAW

### A.
### The Controlling Law for the "New" Tort Claims is Maritime Law

Seacor has asserted diversity jurisdiction[2] in its first supplemental and amending

complaint in a misplaced effort to "morph" their maritime tort claims into state law tort claims.

Plaintiffs' election to proceed in a federal forum on the basis of diversity of citizenship does not

---

for the sake of argument that plaintiff would prevail at trial and show that the rubber hose in the compressor was the
responsibility of LeRoi.

change the choice of maritime law which governs the legal rights and liabilities arising from conduct which is within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law. See *East River S.S. Co. v. Transamerica Delaval*, 476 U.S. 8658, 106 S.Ct. 2295, 90 L.Ed. 865 (1996); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 408 (1958); *Ercole v. K/S Difko*, 793 F. Supp. 61, 63 (E.D. N.Y. 1992); *Lejano v. Dandak*, 705 So.2d 158, 162-163 (La. 1997).

## B.
## Plaintiff's Have No Valid Tort Claims under Maritime Law

The "new" tort claims by plaintiffs in their amended complaint are all governed by *East River*. The *East River* doctrine applies to all negligence and strict liability claims brought under admiralty jurisdiction. Based upon express language in *East River*, the *East River* Rule applies to the product liability claims by Seacor:

a. Just as in *East River*, the torts alleged by Seacor fall within the admiralty jurisdiction based upon the "locality" requirement and the "maritime nexus" for the vessel fire occurred while the vessel was in operation in the Gulf of Mexico. See *East River, supra,* 90 L. Ed. at 872.

b. The Supreme Court joined the Courts of Appeals sitting in admiralty in adopting concepts of "…product liability, based both on negligence…and on strict liability…" *Id* at p. 873.

c. The *East River* economic loss rule was clearly stated by the Court:

The manufacturer in a commercial relationship has no duty under either a negligence or a strict products liability theory to prevent a product from injuring itself. *Id* at p. 877.

d. The policy reasons for the *East River* Rule are that damage to a product itself is basically a warranty claim that a large commercial enterprise, such as Seacor, can protect itself against and pursue a warranty action. *Id* at pp. 877 – 879.

---

[2] Defendants have challenged plaintiff's assertion of diversity jurisdiction, but plaintiffs have offered no proof of

The Supreme Court and the Fifth Circuit applied Section 402(a) of the Restatement of Torts (Second) to maritime product liability cases. *Saratoga Fishing*, 117 S. Ct. 1783 (1997) at 1790; *Vickers v. Chiles Drilling Company*, 822 F.2d 635, 638 (5th Cir. 1987); *Ocean Barge Transport Company v. Hess Oil Virgin Islands Corp.*, 726 F. 2d 121, 123 (3rd Cir. 1984); *Pan-Alaska Fisheries, Inc. v. Marine Construction and Design Co.*, 565 F.2d 1129, 1134 (9th Cir. 1977); *Lindsay v. McDonnel Douglas Aircraft Corp.*, 460 F.2d 631 (8th Cir. 1972); *McKee v. Brunswick Corp.*, 354 F.2d 577, 584 (7th Cir. 1965) (The Restatement (Second) of Torts applied to maritime product liability claims and helps establish uniform rules of maritime law).

The Restatement (Second) of Torts was superseded when the Restatement (Third) of Products Liability was enacted in January 1998. The Restatement (Third) of Products Liability was the maritime product liability law in effect at the time of the fire aboard the M/V GALAXIE in January 1999 and is the controlling law in this matter. See *Krummel v. Bombardier Corp.*, 206 F.3d 549 (5th Cir. 2000).

The Restatement (Third) covers the liability of commercial product sellers based on alleged product defects arising both before and after the time of sale. Accordingly, it covers the alleged "intentional misconduct or fraud," "negligent failure to advise of a product defect" and "negligence based on a claim that the defendant negligently supplied erroneous instructions" as alleged by Seacor in its proposed amended complaint.[3] See Exhibit 1, Restatement (Third) of Products Liability, Sections 9, 10 and 11. Section 21 of the Restatement states:

> "§ 21. Definition of harm to persons or property:" Recovery for Economic Loss
>
> For purposes of this Restatement, harm to person or property includes economic loss if caused by harm to:

---

their citizenship and it remains the burden of plaintiffs to prove diversity of citizenship exists.
[3] See plaintiffs' amended complaint ¶¶ 15-26.

(a)    the plaintiff's person; or

(b)    the person of another when harm to the other
       interferes with an interest of the plaintiff protected
       by tort law; or

(c)    **the plaintiff's property other than the defective
       product itself.**

See Exhibit 1. Under maritime law, Seacor has no tort remedy for damage to the product itself, *i.e.*, the vessel. Because no "other property" was damaged in the fire, Seacor has no tort remedies against LeRoi under its old or "new" claims for relief.[4]

The only oil which Seacor used in the LeRoi compressor was SSL-50. This oil contained no esthers and was compatible with the rubber hose attached to the compressor. *See* UMF No. 10-13. It is, thus, undisputed that there was "no duty to apprise" Seacor to replace the rubber hose due to an incompatible oil. *see* plaintiffs' amended complaint, ¶¶ 15-16; there was no negligence by LeRoi in recommending that Seacor use the oil it used, *i.e.*, SSL-50, *Id.* ¶¶ 18-20, which was compatible; and there was no "misrepresentation" or "fraud" by LeRoi about the SSL-50 oil which was, in fact, compatible with rubber hoses, i.e., LeRoi did not tell, or withhold any material information about the SSL-50 oil or any rubber hoses. *Id.* at ¶¶ 22-23, 25-26. Plaintiffs cannot show by competent evidence that there is any "defect" or "unreasonably dangerous condition" in the LeRoi compressor or the SSL-50 oil specified for use with it.

## C.
### Plaintiffs Have No Claim for Punitive Damages

Louisiana law does not recognize punitive damages, and neither does admiralty law. Nonetheless, plaintiffs assert that they are entitled to recover punitive damages in this case. See amended complaint, ¶27.

---

[4] LeRoi issued it's "Important Service Notice" in April-May 1999 to address the potential incompatibility between two of the three oils it specified for use with the compressor, *i.e.*, SSL46 and CompLube "10", which contain esthers. The SSL-50 used by Seacor in the GALAXIE contained no esthers and was compatible with rubber hose in the compressor in the engine room of the GALAXIE.

495883_1 DOC                          7

The seminal modern Supreme Court case on the availability of non-pecuniary damages in maritime cases is *Miles v. Apex Marine Corp.*[5]  In *Miles*, the Court held that loss-of-society damages (a form of nonpecuniary damages) are not available in a general maritime law action for the wrongful death of a seaman.  According to the Court, because "[t]he Jones Act prohibits non-pecuniary recovery . . . the general maritime unseaworthiness action for the wrongful death of a seaman must have a similar prohibition against non-pecuniary awards." [6]  Although *Miles* did not deal with the recoverability of nonpecuniary damages in a general maritime law claim against a non-employer such as LeRoi, subsequent cases in this district have so extended the *Miles* rationale.

For example, in *Ellender v. John E. Graham & Co.*[7] Judge Feldman extended *Miles* to preclude recovery of punitive damages by seamen against non-employers under the general maritime law.  The following year, in *Earhart v. Chevron U.S.A., Inc.*, this Court held that punitive damages are not recoverable by *nonseamen* under the general maritime law.[8]  In *Earhart*, the plaintiffs, operators and passengers of a fishing boat, sued a nonemployer defendant under the general maritime law for injuries sustained when a vessel struck an underwater object.  In rejecting plaintiffs' claim for punitive damages, this Court noted that "punitive damages are no longer recoverable under the post-*Miles* general maritime law."[9]  The Court explained its holding as follows:

> Because the policy underlying the *Miles* decision requires that damages recoverable under the Jones Act, the Death on the High Seas Act, and the general maritime law be uniform, punitive damages may not be recovered in this general maritime law case.

---

[5] 498 U.S. 19, 1991 AMC 1 (1990).
[6] *Id.*
[7] 1993 AMC 747, 748, 821 F.Supp. 1136, 1136 (E.D. La. 1992).
[8] 1994 AMC 762, 763, 852 F.Supp. 515, 516 (E.D. La. 1993); see also *Frantz v. Brunswick, Corp.*, 1994 A.M.C. 1955 (E.D. La. 1994); *Hunter v. Seabulk Offshore Ltd.* 1998 AMC 2323, 993 F.Supp. 973, (E.D. La. 1998).
[9] 1994 AMC at 763, 852 F.Supp. at 516.

In so holding, the Court relied in part on Fifth Circuit dicta indicating that nonpecuniary damages are not recoverable in an action against a nonemployer defendant under the general maritime law.[10]   In *Walker v. Braus*, the court held that survivors could not recover loss-of-society damages in a wrongful death action against a nonemployer defendant under the general maritime law.   In connection with this holding, the Fifth Circuit noted that allowing recovery of non-pecuniary damages such as those for loss of consortium in a general maritime law wrongful death action would upset the uniformity principle established in *Miles*.

Based on the foregoing, LeRoi submits that plaintiffs have no cognizable claim for punitive damages for property damage under general maritime law.   Although the Fifth Circuit has not spoken directly on this issue, such a ruling would be consistent with holdings from other circuits that have.

For example, the Second Circuit recently denied the recovery of punitive damages by the survivors of a nonseaman under the general maritime law in *Wahlstrom v. Kawasaki Heavy Indus., Ltd.*[11] .   In *Wahlstrom*, the parents of a child killed in the collision of two pleasure craft sued for, *inter alia*, punitive damages under the general maritime law.[12]   Although noting that most of the post-*Miles* cases denying punitive damages recovery dealt with seamen, the *Wahlstrom* court held that "Overall . . . this post-*Miles* authority lends additional support to our conclusion that the [parents of a nonseaman] should not be allowed to pursue punitive damages under the general maritime law."[13]   Furthermore, in a recent case in the Eleventh Circuit, *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993,*[14] the court held that

---

[10] *Id., citing Walker v. Braus*, 1993 AMC 2455, 2461, 995 F.2d 77, 82 (5 Cir. 1993).

[11] 1994 AMC 13, 4 F.3d 1084 (2 Cir. 1993).

[12] 1994 AMC at 14, 4 F.3d at 1085.

[13] 1994 AMC at 29, 4 F.3d at 1094.

[14] 1997 AMC 2962, 121 F.3d 1421 (1997), *petition for cert. filed*, 66 USLW 3427 (Dec. 8, 1997).

nonseaman personal injury plaintiffs, as distinguished from nonseaman wrongful death plaintiffs, were not entitled to seek nonpecuniary damages, including punitive damages, under the general maritime law.[15]

Plaintiffs, Seacor, are corporations and "nonseaman" like the plaintiffs in *Earhart*, *Wahlstrom*, and *Amtrak*, which are not entitled, as a matter of law, to recover punitive damages under the general maritime law. It would defy the uniformity which the general maritime law seeks if an injured seamen, widows and children of seamen, and passengers could not recover punitive damages, but a multi-billion dollar corporation like Seacor could just because it sought property damage and not recovery for a personal injury or wrongful death of an individual. See *Geuvera v. Maritime Overseas, Corp.*, 59 F.3d 1496, 1513 (5 Cir. 1995) (*en banc*).[16]

## D.
## Plaintiffs Have No Valid Contract Claims against LeRoi

Plaintiffs assert that LeRoi breached a contract with them. *See* plaintiff's amended complaint, ¶¶ 28-39. It is undisputed that there was no privity of contract between Seacor and LeRoi, and, therefore, nothing which LeRoi did or did not in alleged "breach of contract" do caused the fire on the GALAXIE.

Contracts relating to the construction of a vessel are not within the admiralty jurisdiction.[17] Since contracts relating to the construction of a vessel and the provision of component parts to the shipbuilder are not within the admiralty jurisdiction, warranty claims

---

[15] 1997 AMC at 2973, 121 F.3d at 1429.
[16] There is no competent evidence that plaintiffs can establish any of the elements of proof for a punitive damage claim against *vis*, that any thing LeRoi did or did not do with respect to SSL-50 or rubber hoses was "wanton or reckless" and that high level corporate officials engaged in such activities. *P&E Boat Rentals*, 1989 AMC 2447 (5th Cir. 1989).
[17] See *East River, supra, footnote 7*

based upon such contracts are also based upon state law and not within the Court's admiralty jurisdiction.[18]

    (1) The redhibition claim by Seacor in paragraphs 28-31 of the amended complaint is fatally flawed. In its motion papers, Seacor admits that this case involves a "contract to build a vessel."[19] Under the law of redhibition, a contract to build a vessel is not a "sale" subject to a redhibitory action;[20]

    (2) The contract claims by Seacor in paragraphs 32 – 39 of the amended complaint are not applicable to any of the defendants, other than <u>arguably</u> Houma Fabricators, because there is no privity of contract between Seacor and any of the defendants, except Houma Fabricators with whom plaintiffs had a ship building contract. Under Louisiana law, no action for breach of a construction contract may lie in the absence of privity of contract between the parties.[21] Because the contract to build the vessel was entered into between Seacor Marine and Houma Fabricators only, there is no privity of contract between plaintiffs and all of the other defendants upon which to base a breach of contract or warranty claim under state law;

    (3) Finally, the breach of contract claim against Houma Fabricators is also beyond the jurisdiction of this Honorable Court because it is subject to a mandatory

---

[18] *Id.*

[19] See plaintiffs' motion papers, p. 5.

[20] See *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F. 2d 517 (5th Cir. 1981); *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d 559 (La. App. 3rd Cir. 1981); *Harris v. Williams*, 679 So. 2d 990 (La. App. 2nd Cir. 1996). Plaintiff also cannot show that LeRoi was a "seller" as contemplated by the Louisiana Civil Code Article 2439 and 2520. See *Ahrens v. T.P.L. C , Inc*, 955 F. Supp. 54, 56 – 57 (E.D. La. 1997).

[21] *Louisiana Insurance Guaranty v. Rapides Parish Police Jury*, 182 F. 2d 326, 331 (5th Cir. 1999); *Domengeaux's Lumber Depot, Inc. v. Spyrer*, 498 So.2d 1091 (La. App. 3d Cir. 1986).

arbitration provision.[22]  Thus, if there is privity between Seacor and LeRoi,

Seacor's claims are subject to arbitration, and beyond the jurisdiction of this

Honorable Court.

## CONCLUSION

Seacor is an offshore vessel operator which rivals Tidewater Marine in economic

bargaining power.  It entered into a shipbuilding contract with Houma Fabricators in which it

attempted to allocate the risk of loss for the alleged malfunctioning of the M/V GALAXIE with

full knowledge that it had no rights whatsoever under maritime product liability law in the event

that the "product" injured itself as contemplated under the *East River* Rule.  Plaintiff cannot now

try to rewrite its contract to get out of what may be a bad bargain which it struck.

The law is clear that there is no admiralty jurisdiction for plaintiffs' product liability

claims based in tort because all of these claims, whether based in negligence, strict liability, or

intentional tort, i.e. fraud, are based upon the Restatement (Third) of Products Liability and the

Restatement expressly excludes recovery for damage to the product itself under all theories of

tort liability.[23]

Finally, none of the contract claims Seacor has asserted in its amended complaint are

valid as a matter of law and there is a state court forum for Seacor to pursue its breach of contract

claims (if they are not subject to arbitration).

In view of the foregoing, LeRoi respectfully submits that it is entitled to judgment as a

matter of law, dismissing all of plaintiffs' claims against it.

---

[22] See Article XVIII "Mediation and Arbitration" which provides that all disputes arising in connection with agreement or having a significant relationship to this agreement, regardless of the label attached to the dispute shall be finally settled under the commercial arbitration rules of the American Arbitration Association by one mediator, or if necessary, by one or three arbitrators appointed pursuant to those rules.

Respectfully submitted,

Campbell H. Wallace, T.A., #13195
Ivan M. Rodriguez, #22574
**CHAFFE, McCALL, PHILLIPS**
  **TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for LeRoi International, Inc. d/b/a**
**CompAir LeRoi**


<u>Certificate of Service</u>

I hereby certify that I have on this _6_ day of February, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid.

---

[23] <u>See</u> Exhibit "1", §21.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

SEACOR MARINE, INC. AND     * CIVIL ACTION
SEACOR OFFSHORE, INC.     *
    * NO. 00-0166
    *
VERSUS     *
    * SECTION "S"
    *
HOUMA FABRICATORS, A DIVISION     *
OF L.O.R., INC., AIR COMPRESSOR     * MAGISTRATE (1)
ENERGY SYSTEMS, INC., DRESSER     *
INDUSTRIES, INC., and LEROI
INTERNATIONAL, INC. d/b/a/
COMPARE LEROI

## STATEMENT OF UNCONTESTED MATERIAL FACTS

Defendant, LeRoi International, Inc. d/b/a CompAir LeRoi ("LeRoi") submits the following statement of uncontested material facts solely for purposes of and in support of its motion for partial summary judgment and otherwise without prejudice:

1.    On May 30, 1996, Waveland Marine Service, Inc. ("Waveland") and Houma Fabricators, A Division of LOR, Inc. ("Houma Fabricators"), entered into a shipbuilding contract ("the contract") for the construction of a new, fully-classed, fully-documented, and ready-for-service offshore supply vessel, the M/V GALAXIE.  See Exhibit "1" (contract).

2.    On September 6, 1996, Houma Fabricators issued a purchase order for an air compressor package from Air Compressor Energy Systems, Inc. ("ACES").  See Exhibit "2" (purchase order).

495889_1 DOC

3.   ACES purchased some of the component parts used to assemble the air compressor package from LeRoi. See Exhibit "5" (LeRoi invoice).

4.   LeRoi shipped the component parts to ACES on November 18, 1996. Id .

5.   The completed air compressor package was installed in the engine room aboard the GALAXIE was a "WE150SSIIB" model with LeRoi serial no. 4256X124. Id.

6.   On January 3, 1997, before construction of the GALAXIE was complete, Waveland assigned all of its vessel construction contracts to its successor corporation, Seacor Marine, Inc./Seacor Offshore, Inc. ("Seacor"), plaintiffs in this lawsuit. See Exhibit "4" (Assignment).

7.   Houma Fabricators delivered the completed vessel, including the air compressor package, to Seacor in the Fall, 1997. See Exhibit "5" (Seacor deposition).

8.   The GALAXIE experienced an engine room fire on January 30, 1999, and sued Houma Fabricators, ACES and LeRoi. See Exhibit "6" (complaint).

9.   In his expert report, plaintiffs' expert, Mr. Casellas declared that:

> The cause of the fire was a compromised oil injection hose at the compressor fitting end. The pressurized heated oil mist ignited and flashed to the source of the breach (the hose) resulting in the generation of heat and smoke within the confines of the engine room.[1]

10.   SSL-50 was the only oil used in the compressor in the M/V GALAXIE. Upon ordering the compressor components, SSL-50 was requested from LeRoi.[2] After the compressor components were installed before the M/V GALAXIE left on its maiden voyage, SSL-50 was placed in the compressor.[3] While the vessel was in service, on February 18, 1998 and July 26, 1998, SSL-50

---

[1] See Exhibit 7, (Casellas report).
[2] See Exhibit 8, (LeRoi deposition) pp. 126-128 and Invoice Exhibit 1E.
[3] See Exhibit 9, (ACES service order dated 10/24/97).

oil was added to the compressor.[4]  When the compressor was repaired after the fire, SSL-50 was placed back into the compressor.[5]

11.  SSL-50 oil is a mineral oil blend manufactured by CPI Engineering Services, Inc. ("CPI"). CPI provided SSL-50 oil to LeRoi and its customers. SSL 50 oil has had the following characteristics from at least 1995 to the present (according to its manufacturer):

> Flash Point - 475°F
> Fire Point - 525°F[6]

12.  The SSL-50 oil contained no esthers[7] and is compatible with the Gates C5C rubber hose (according to Gates and CPI).[8]

13.  While in operation, the SSL-50 oil in the compressor is typically heated to a temperature of about 185° to 200°F.[9]  This temperature is well within 212°F the design limits for the Gates C5C rubber hose.[10]

14.  Seacor's only tort claims are for "damages to the GALAXIE" and "detention losses" for loss of use of the GALAXIE after a fire in the engine room of the vessel.  *Id.*

15.  Seacor had no privity of contract with LeRoi and no contact with it prior to the fire.

---

[4] See Exhibit 10 (Engineer Log Excerpts).
[5] See Exhibit 11 (ACES service order dated 3/22/99).
[6] See Exhibit 12 (MSDS Sheets for SSL-50 and documents from CPI).
[7] *Id.*
[8] See Exhibit 13 (Gates catalog ).
[9] See Exhibit 14 (LeRoi deposition), p. 71.
[10] *Id*, pp. 69-70.

Respectfully submitted,

Campbell E. Wallace, T.A., #13195
Ivan M. Rodriguez, #22574
**CHAFFE, McCALL, PHILLIPS**
**TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
*Attorneys for LeRoi International, Inc. d/b/a*
*CompAir LeRoi*

<u>Certificate of Service</u>

I hereby certify that I have on this 6th day of February, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or by depositing the same in the United States mail, properly addressed, and first-class postage prepaid.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC. | * CIVIL ACTION<br>*<br>* NO. 00-0166 |
| VERSUS | *<br>* SECTION "S" |
| HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC., and LEROI<br>INTERNATIONAL, INC. d/b/a/<br>COMPARE LEROI | *<br>* MAGISTRATE (1)<br>* |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that undersigned counsel for LeRoi International, Inc. d/b/a

CompAir LeRoi, ("LeRoi") will bring the attached motion for partial summary judgment on

plaintiffs' new theories of liability on for hearing before the Honorable Mary Ann Vial Lemmon on

the 21st day of February, 2001 at 10:00 o'clock a.m. at the U. S. District Courthouse, 500 Camp

Street, New Orleans, Louisiana.

495886_1 DOC

Respectfully submitted,

Campbell E. Wallace, T.A., #13195
Ivan M. Rodriguez #22574
**CHAFFE, McCALL, PHILLIPS**
  **TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
**Attorneys for LeRoi International, Inc. d/b/a**
**CompAir LeRoi**


## Certificate of Service

I hereby certify that I have on this _**10**_ day of February, 2001, served a copy of the

foregoing pleading on counsel for all parties to this proceeding, by hand delivery, facsimile, or

by depositing the same in the United States mail, properly addressed, and first-class postage

prepaid.

495886_1 DOC

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**