FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

**FEB 1 6 2001**

20[0]1 FEB 16 PM 4: 31

LORETTA G. WHYTE
CLERK

145606                                                                     0207-5994

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO. 00-0166        SECTION S (1) |
| HOUMA FABRICATORS, A DIVISION OF LOR, INC., AIR COMPRESSOR INDUSTRIES, INC., AND LEROI INTERNATIONAL, INC. D/B/A COMPARE LEROI | JUDGE LEMMON<br><br>MAGISTRATE JUDGE SHUSHAN |

### <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant, Houma Fabricators, a Division of LOR, Inc. ("Houma Fabricators"),

through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure,

moves this Honorable Court for an order granting its Motion for Summary for Judgment,

seeking dismissal of the First Supplemental and Amending Complaint ("Amended

Complaint") filed by Plaintiffs, Seacor Marine, Inc., and Seacor Offshore, Inc., ("Seacor"),

on the following grounds:

1)      The Amended Complaint filed by Seacor should be dismissed for lack of subject

matter jurisdiction;

Fee_____
Process_____
X  Dktd_____
   CtRmDep____
   Doc.No._____

2)    The Amended Complaint fails to state a cause of action with respect to the claims asserted against Houma Fabricators; and,

3)    There is no genuine issue of material fact and Houma Fabricators is entitled to judgment as a matter of law.

Wherefore, Defendant, Houma Fabricators prays that this Honorable Court will grant its Motion for Summary Judgment and order the dismissal of all claims asserted by the Plaintiffs in their original or Amended Complaint, in addition any further legal or equitable relief to which Defendant is entitled under the law.

RONALD A. JOHNSON, T.A. (#7329)
ROBERT H. WOOD (#23598)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
One Shell Square,
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
Telephone (504) 528-3001
Attorneys for Houma Fabricators,
A Division of LOR, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this *16th* day of February, 2001, served a copy of these pleadings and their attachments on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed, and first class postage prepaid.

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO. 00-0166      SECTION S (1) |
| HOUMA FABRICATORS, A DIVISION<br>OF LOR, INC., AIR COMPRESSOR<br>INDUSTRIES, INC., AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPAIR/LEROI | JUDGE LEMMON<br><br>MAGISTRATE JUDGE SHUSHAN |

## STATEMENT OF UNCONTESTED MATERIAL FACTS

Defendant, Houma Fabricators, a Division of LOR, Inc. ("Houma Fabricators"), submits the following Statement of Uncontested Material Facts in support of its Motion for Summary Judgment as follows:

1. Houma Fabricators contracted to build a 200-foot offshore supply vessel, the M/V GALAXIE, pursuant to a Shipbuilding Contract with Waveland Marine Service, Inc. (Exh. 1, Shipbuilding Contract, p. 1; Exh. 4, Affidavit of Butch Monnier).

2. The Shipbuilding Contract was executed on May 30, 1996 (Exh. 1, Shipbuilding Contract, p. 18) and thereafter assigned to Seacor Marine, Inc. on January 3, 1997. (Exh. 2, Assignment of Vessel Construction Contracts; Exh. 4, Affidavit of Butch Monnier).

3. Article V of the Shipbuilding Contract allowed the customer to make alterations or changes/contract modifications during the construction of the vessel. (Exh. 1, Shipbuilding Contract, p. 4-5; Exh. 4, Affidavit of Butch Monnier).

3

4. The Shipbuilding Contract also allowed the customer to furnish various items of equipment for the vessel, and save the cost of the item plus the 10% markup the shipbuilder would otherwise have earned on those items. (Exh. 1, Shipbuilding Contract, p. 5; Exh. 4, Affidavit of Butch Monnier).

5. In August, 1996, less than three months after the signing of the Shipbuilding Contract, Waveland Marine Services, Inc., requested that the design for the M/V GALAXIE be modified to include a dynamic positioning system and sternthruster engine. (Exh. 3, Change Order Request, p. 4-5; Exh. 4, Affidavit of Butch Monnier).

6. The dynamic positioning system and stern-thruster engine then became an integral part of the power and navigation system of the re-designed vessel, in addition to the two main engines and bowthruster engine previously specified in the plans. (Exh. 4, Affidavit of Butch Monnier).

7. In accordance with the terms of the Shipbuilding Contract, the completed M/V GALAXIE was delivered to Seacor at Houma Fabricator's slip in Houma, Louisiana, on November 26, 1997. (Exh. 5, Engineer's Log; Exh. 4, Affidavit of Butch Monnier).

8. Under Article IX of the Shipbuilding Contract, delivery of the vessel to the owner at the builder's yard in Houma, Louisiana, transferred the risk of loss to the vessel owner. (Exh. 1, Shipbuilding Contract, p. 9; Exh. 4, Affidavit of Butch Monnier).

9. Article XII of the Shipbuilding Contract provided a one-year warranty, beginning upon delivery of the vessel. (Exh. 1, Shipbuilding Contract, p. 11).

10. As required by Article XVII of the shipbuilding contract, Houma Fabricators secured insurance for the construction period, including a builder's risk policy, workmen's compensation insurance and comprehensive general liability coverage in accordance

4

with its contractual obligations. (Exh. 1, Shipbuilding Contract, p. 14-16; Exh. 4, Affidavit of Butch Monnier).

11. Under Article XVII of the Shipbuilding Contract, Houma Fabricators did not extend the defense, indemnity and hold harmless obligations to the vessel owner for property damages caused solely by equipment failure after delivery of the vessel. (Exh. 1, Shipbuilding Contract, p. 14-16; Exh. 4, Affidavit of Butch Monnier).

12. The insurance and indemnity obligations in Article XVII did not extend or otherwise affect the warranty provisions of Article XVII of the Shipbuilding Contract. (Exh. 1, Shipbuilding Contract, p. 15; Exh. 4, Affidavit of Butch Monnier).

13. Article XX of the Shipbuilding Contract provided that the agreement would be construed according to the laws of the State of Louisiana. (Exh. 1, Shipbuilding Contract, p. 17; Exh. 4, Affidavit of Butch Monnier).

14. No representative of Houma Fabricators had any notice or knowledge of a possible defective condition relating to the hose or compressor that is the subject matter of this litigation until after the fire occurred on January 30, 1999. (Exh. 4, Affidavit of Butch Monnier).

15. Houma Fabricators purchased the subject compressor as a single unit mounted on a skid package and installed the unit in the engine room without making any alteration to the compressor or hose. (Exh. 4, Affidavit of Butch Monnier).

16. Waveland/Seacor exerted control over the details of the construction of the M/V GALAXIE through discussions and negotiations relating to the vessel plans, specifications and its overall cost. (Exh. 1, Shipbuilding Contract, p. 1; Exh. 4, Affidavit of Butch Monnier).

17. The negotiations over the shipbuilding contract took place before the commencement of the vessel's construction and prior to delivery, as evidenced by the schedule of payments contained in the Shipbuilding Contract. (Exh. 1, Shipbuilding Contract, p. 3; Exh. 4, Affidavit of Butch Monnier).

18. Houma Fabricators supplied the materials, skill and labor to construct the vessel as evidenced by Article I of the Shipbuilding Contract. (Exh. 1, Shipbuilding Contract, p. 1; Exh. 4, Affidavit of Butch Monnier).

RONALD A. JOHNSON, T.A. (#7329)
ROBERT H. WOOD (#23598)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
One Shell Square,
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
Telephone (504) 528-3001
Attorneys for Houma Fabricators,
A Division of LOR, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO. 00-0166    SECTION S (1) |
| HOUMA FABRICATORS, A DIVISION OF LOR, INC., AIR COMPRESSOR INDUSTRIES, INC., AND LEROI INTERNATIONAL, INC. D/B/A COMPARE LEROI | JUDGE LEMMON |
| | MAGISTRATE JUDGE SHUSHAN |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Houma Fabricators, a Division of LOR, Inc. ("Houma Fabricators"), submits the following arguments and authorities in support of its Motion for Summary for Summary Judgment seeking dismissal of the First Supplemental and Amending Complaint ("Amended Complaint") filed by Plaintiffs, Seacor Marine, Inc., and Seacor Offshore, Inc., ("Seacor"), as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

Houma Fabricators built a 200-foot offshore supply vessel, the M/V GALAXIE, pursuant to a Shipbuilding Contract with Waveland Marine Service, Inc., (also previously known as Galaxie Marine). The Shipbuilding Contract was executed on May 30, 1996 and thereafter assigned by Waveland Marine Service, Inc., to Seacor on January 3, 1997. The completed vessel was delivered on November 27, 1997. A fire erupted in the engine room of the M/V GALAXIE on January 30, 1999 causing damage to a number of engine room components, including a stern thruster engine.

The Plaintiff's original Complaint alleged the fire was started by a ruptured hydraulic hose on a bulk mud compressor manufactured by CompAir/LeRoi, distributed by Air

7

Compressor Energy Systems, Inc., and installed by the shipbuilder, Houma Fabricators. The hose was allegedly manufactured by the Gates Corporation and supplied by Hart Industries, Inc.

The Plaintiff also alleged in the original Complaint that this Court had subject matter jurisdiction pursuant to 28 U.S.C. §1333 and designated the claim as arising under the Court's admiralty and maritime jurisdiction pursuant to Federal Rule of Civil Procedure 9(h). The original Complaint sought repair and detention damages as a result of the fire under a theory of maritime tort.

After a period of discovery, the defendants filed motions for summary judgment asserting that breach of a shipbuilding contract did not fall within this court's maritime jurisdiction, and further, that the Plaintiff had no cause of action against the Defendants based on maritime products liability within the meaning of *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).

Before the Court had the opportunity to rule on the various motions for summary judgment, Seacor filed a motion seeking leave to amend its original complaint to assert various additional federal and state law causes of action against the defendants for maritime tort, negligent provision of erroneous advice, intentional and/or negligent misrepresentation, fraud, breach of warranty, redhibition and breach of contract. Seacor contemporaneously filed a Petition for Damages in state court in Baton Rouge alleging these same causes of action. In the Amended Complaint, Seacor now alleges diversity of citizenship as a basis for subject matter jurisdiction, in addition to jurisdiction based on admiralty and maritime claims.

8

Magistrate Judge Shushan denied the Plaintiff's motion to amend on the grounds that it was not timely filed and that such new allegations would require significant further discovery, for which there was insufficient time before trial under the existing scheduling deadlines. The Magistrate's order left open the possibility to reconsider the motion in the event that the Plaintiff was granted a continuance of the March 12, 2001 trial date.

Subsequently, Seacor filed a motion to continue the trial, which was granted, and the new trial was set for June 11, 2001. Based on the new trial date, the Plaintiff requested the Magistrate to reconsider the denial of the motion to amend because adequate time was now available to conduct discovery on the new causes of action. Subsequently, this Court denied the defendants' motions for summary judgment on the grounds that they were premature because the Plaintiff was seeking leave to amend his complaint. The Magistrate granted the Plaintiff leave to amend his complaint and the new allegations in the Amended Complaint are now before the Court. As discussed below, these new claims are ripe for consideration after adequate discovery, are without legal or factual basis with regard to Houma Fabricators, and are subject to dismissal by summary judgment.

## II.   DISCUSSION.

### A.   Standard for Summary Judgment.

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions

on file together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[1]

The principal purpose of summary judgment is to isolate and terminate claims and offenses that are factually unsupported.[2]  A party seeking summary judgment bears the initial responsibility of informing the court as to the evidence which demonstrates the absence of a genuine issue of material fact.[3]  If there is a complete failure of proof concerning an essential element of the non-moving party's case as to which they will bear the burden of proof at trial, summary judgment should be granted.[4]  The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment.  The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.[5]  A fact is <u>material</u> when it may affect the outcome of the suit under the governing law.  A <u>genuine</u> issue over such a fact is created when "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.[6]

The burden of establishing the lack of a genuine issue of fact is on the party moving for summary judgment.[7]  When the non-moving party has the ultimate burden of persuasion at trial, the movant has the initial burden of production in a motion for summary judgment.  If this burden of production is satisfied by the moving party, then the burden of production shifts to the non-moving party to demonstrate that there exists a genuine issue

---

[1] Fed. R. Civ. P. Art. 56(c).

[2] *Celotex Corp. v. Caltrett*, 477 U.S. 321, 106 S.Ct. 2548, 2553 (1996).

[3] *Id.*, 106 S.Ct. at 2553

[4] *Id.* at 2552.

[5] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 247, 106 S.Ct. 2505, 2510 (1986).

[6] *Id.,* 106 S.Ct. at 2512.

for trial.[8]  When the burden of persuasion at trial is upon the non-moving party, the movant may satisfy its burden of production in two ways: by either submitting affirmative evidence that negates an essential element of non-moving party's claim, or demonstrating that a non-moving party's evidence is insufficient to establish an essential element of its claim.  If the party who has the burden of proof at trial cannot produce sufficient evidence to support its claim, trial would be useless and the moving party is entitled to judgment as a matter of law.[9]

In the present case, the issue of Houma Fabricators' liability to Seacor is ripe for determination by this court.  Written discovery has been exchanged between all the parties, corporate depositions of Seacor, Houma Fabricators, ACES, and CompAir/LeRoi.  The Plaintiffs have produced their expert reports. The documents and testimony establish that there is a complete absence of evidence to support any allegation of liability in maritime tort, redhibition, breach of warranty, or breach of contract.  Consequently, Houma Fabricators has satisfied its burden of production and the burden shifts to Seacor to produce evidence that there is a genuine issue for trial.  Because Seacor will be unable to produce such evidence, trial is useless and Houma Fabricators' Motion for Summary Judgment should be granted.

### B.    East River Doctrine and Maritime Tort.

The motion for summary judgment previously urged by Houma Fabricators rests on the maritime products liability doctrine enunciated in *East River S.S. Corp. v.*

---

[7] *Celotex*, 106 S.Ct. at 2556.
[8] *Id.* at 2556-2557.
[9] *Id.* at 2557.

*Transamerica Delaval, Inc.,*[10] which held that a plaintiff may not maintain a tort cause of action under admiralty law when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss.[11]  In other words, if a vessel (the product) is damaged by the malfunction of its own equipment, the vessel owner may not recover against the vessel builder or the manufacturers of the vessel's component parts in tort.  The vessel owner is limited to contractual claims arising under state law based on breach of warranties.

In the instant matter, because Seacor is claiming damage to the engine room caused by failure of the vessel's original equipment, its claim should be barred under the *East River* doctrine: the only injury sustained was to the vessel itself.  The present case is virtually indistinguishable from *Shipco 2295, Inc. v. Avondale Shipyards, Inc.,*[12] in which the Fifth Circuit Court of Appeals ruled that a completed vessel was the object of a shipbuilding contract and would be considered the "product" under the *East River* doctrine, so that the shipbuilder was immune from tort liability for damage caused to the vessel by the breakdown of a component part. [13]  Consequently, the maritime tort claim against Houma Fabricators should be dismissed.  Seacor's claim is for damage to the vessel caused by a component part.  Houma Fabricators is a shipbuilder, and Seacor is limited to a state law cause of action for breach of warranty, if one exists under the contract.

---

[10] 476 U.S. 858 (1986).
[11] *Id.* at 895.
[12] 825 F.2d 925 (5th Cir. 1987).
[13] *Id.* at 928.

The Supreme Court has established that one of the only exceptions to the *East River* doctrine is when a defective product causes damage to "other property."[14]   It has since been held that equipment or other items added to a vessel <u>after</u> the initial sale constitute this "other property" for which a plaintiff may recover in tort.[15]

The Plaintiff has asserted in various pleadings that the original Shipbuilding Contract did not include the purchase and installation of the stern-thruster engine, so that Houma Fabricators would be liable for any damage to this "other property" under the exception to the *East River* doctrine.

First, there is no evidence of any kind that suggests that Houma Fabricators was negligent, so as to bring the "other property" exception into consideration.   Houma Fabricators did not manufacture or distribute the hose or compressor and had no knowledge of any potential incompatibility.[16]   Next, the stern-thruster engine does not qualify as other property within the meaning of *East River*.

The uncontested facts demonstrate that the original Shipbuilding Contract did not include the installation of a stern-thruster engine, but did envision the customer's desire to make alterations or changes during construction.[17]   The Shipbuilding Contract also allowed the customer to independently purchase component parts of the vessel to avoid the ten percent markup the shipbuilder would otherwise earn on those parts. [18]   In August 1996, less than three months after the signing of the Shipbuilding Contract, Waveland/Galaxie Marine requested that the M/V GALAXIE plans be modified to include a

---

[14] *East River,* 476 U.S. at 867.

[15] *Saratoga Fishing Co. v. J. M. Martinac & Co.*, 520 U.S. 875 (1997).

[16] Exh. 4, Affidavit of Butch Monnier.

[17] Exh. 1, Shipbuilding Contract, Article V; Exh. 4, Affidavit of Butch Monnier.

dynamic positioning system and stern-thruster engine, in addition to the two main engines and bow-thruster engine already specified in the plans.[19]  Therefore, the stern-thruster was included within the contract and was not "other Property" contemplated by *East River.*  The completed vessel, including stern-thruster engine, was delivered to Seacor in November 1997. [20]

In *Saratoga Fishing Company,* the Supreme Court limited a plaintiff's tort recovery to the loss of "*extra equipment* (a skiff, a fishing net, spare parts) *added* by the initial user after the first sale and then resold as part of the ship . . ." to the plaintiff.[21]  The Court stated "that the 'product itself' consists *at least* of a ship as built and outfitted by its original manufacturer and sold to an initial user." [22]

Regardless of whether Seacor purchased the stern-thruster engine directly or through the shipbuilders, it is undisputed that it was installed by Houma Fabricators prior to the vessel's delivery to Seacor, and was a part of the vessel as built and outfitted by the original manufacturer.  The stern-thruster was also negotiated into the contract long before construction was completed.

An illustration of the "other property" concept is demonstrated by *Transco Syndicate # 1, Ltd., v. Bollinger Shipyards*, in which a plaintiff/vessel owner recovered against an engine manufacturer for damages to the vessel caused by a fire resulting from a defective fuel hose.[23]  The engine that contained the defective hose had been installed by the

---

[18] Exh. 1, Shipbuilding Contract Article V; Exh. 4, Affidavit of Butch Monnier.
[19] Exh. 3, Change Order Request; Exh. 4, Affidavit of Butch Monnier.
[20] Exh. 5, Engineer's Log; Exh. 4, Affidavit of Butch Monnier.
[21] *Id.* at 877 (emphasis in original).
[22] *Id.* (emphasis in original).
[23] 1 F.Supp.2d 608 (E.D. La. 1998).

shipyard, Bollinger, pursuant to a contract to refurbish the entire vessel. The engines had been acquired by the vessel owner through separate contract with the engine supplier. The shipyard was dismissed from the lawsuit when no party filed an opposition to its motion for summary judgment. However, the district court held the engine manufacturer liable to the vessel owner because the damage to the vessel constituted damage to other property within the meaning of *East River.* In its decision, the Court found the object of the contract between those two parties was the purchase of the engines, not the construction of the vessel. Unlike the plaintiffs in *East River* and *Shipco,* who had purchased a single product with integrated parts from the vessel's manufacturer, this vessel owner purchased the engines and the vessel separately from different suppliers at different points in time. Any damage caused by the engines to the vessel was, therefore, damage to other property.[24]

In the instant matter, the object of the Shipbuilding Contract is "to construct . . . and to test, complete, and deliver afloat dock side at its yard to OWNER . . . One (1) Offshore Supply Vessel . . . ."[25] The vessel is therefore the "product" under the *East River* Doctrine. The compressor is a component part that caused damage to the product itself, including the stern-thruster engine and the other component parts installed into the completed product by Houma Fabricators prior to delivery of the vessel to Seacor. If the loss had occurred within the warranty period or before delivery, would potentially have a claim against Houma Fabricators. However, Seacor cannot revert to a tort claim simply because the warranty period has expired and after the risk of loss has passed.

---

[24] *Id.* at 613
[25] Exh. 1, Shipbuilding Contract, Article I.

Further, the equipment at issue here could hardly be categorized as "extra" within the meaning of *Saratoga Fishing Co.* (skiff, netting and spare parts) or even *Nicor Supply Ships Assocs. v. General Motors Corp.* (seismic equipment).[26]  The stern-thruster is a substantial piece of equipment which, as explained in the Houma Fabricators corporate deposition, required significant modification to the vessel's stern skeg before it could be installed.  It is a large piece of equipment which was installed before the deck was placed over the engine room, and is an integral part of the vessel's permanent equipment.[27]  Consequently, the stern-thruster engine does not even arguably fall into the "extra equipment" category because it is an integral part of this ship's propulsion system.

Seacor has also urged in the Amended Complaint that a second exception to the *East River* doctrine arises when a manufacturer of a product discovers a manufacturing defect after the product has been placed in the stream of commerce and fails to warn the consumer or otherwise take action to prevent harm.  The Plaintiff bases this theory on dicta by the Fifth Circuit in *Nicor Supply Ships* in which the Court of Appeals observed that there might be a possible exception to *East River* when a manufacturer discovers a defect <u>after</u> manufacture, so that the negligent conduct occurs separate and apart from the manufacturing process.[28]

The Plaintiff has alleged that the hydraulic hose with which the compressor was originally equipped was not compatible with the type of hydraulic lubricant specified by the manufacturer.  This incompatibility could purportedly cause premature deterioration of the hose, resulting in fire.  Seacor claims that even though CompAir/Leroi learned of the

---

[26] 876 F. 2d 501 (5th Cir. 1989).
[27] Exh. 4, Affidavit of Butch Monnier.

incompatibility and potential fire hazard in July 1998 from the hose supplier, Hart Industries, no action was taken to notify purchasers until April 1999. In the meantime, the fire took place aboard the M/V GALAXIE. The Plaintiff maintains that the failure to warn purchasers of this potential problem supports its claims for maritime tort (failure to warn after manufacture), negligent provision of erroneous advice, intentional and/or negligent misrepresentation and fraud.

Since the Plaintiff first attempted to file the Amended Complaint, the parties have learned through discovery that the allegedly faulty Gates C5C hose was fully compatible with the SSL-50 hydraulic oil used in the compressor.[29]  However, even assuming that such a condition existed and caused the fire, Houma Fabricators played no part in these events.  It did not manufacture, test or assemble the hose or compressor, but simply installed the completed compressor package into the vessel.[30]  The Plaintiff has failed to establish any evidence that Houma Fabricators had any knowledge of the alleged hose defects until after the fire occurred.[31]  Without knowledge of the condition or involvement in the manufacturing process, Houma Fabricators cannot be liable to Seacor under these various theories of recovery in tort.  Houma Fabricators had no duty to warn of a condition of which it had no knowledge.  Houma Fabricators did not provide any erroneous advice, if such a cause of action even exists.  Houma Fabricators made no intentional and/or negligent misrepresentation and did not commit any fraud.

---

[28] *Id.* at 504.
[29] See Motion for Summary Judgment filed by CompAir/LeRoi in which Houma Fabricators joins and adopts by reference.
[30] Exh. 4, Affidavit of Butch Monnier.
[31] Exh. 4, Affidavit of Butch Monnier.

Under the *East River* doctrine and principles of maritime tort jurisdiction, the Amended Complaint of Seacor should be dismissed for lack of subject matter jurisdiction[32] and failure to state a cause of action. There is no question of material fact in dispute and the Motion for Summary Judgment of Houma Fabricators should be granted.

### C.    Redhibition

In the Amended Complaint, the Plaintiffs have alleged diversity jurisdiction to include claims arising under state law. The Amended Complaint alleges that the hydraulic hose contained a redhibitory defect—presumably the incompatibility with the hydraulic oil. As CompAir/LeRoi has established in their Motion for Summary Judgment, there was no incompatibility between the hose and oil. The Plaintiffs are therefore mistaken about the cause and origin of the fire. If the Plaintiffs cannot prove a redhibitory defect existed, then they fail to state a cause of action in redhibition and this claim must be dismissed. However, even if the cause of the fire was such an incompatibility, the Plaintiffs fail to state a cause of action because a redhibition claim must be based on a contract of sale, not a contract to build.

The Plaintiffs' claim in redhibition is based on Louisiana Civil Code Article 2520. Redhibition is defined as the avoidance of a sale on account of a vice or defect in the thing sold, which renders it either useless or so defective that it must be presumed that the buyer would not have purchased the article if the vice had been known. A seller who knew

_____

[32] The Motion for Summary Judgment filed by Air Compressor Energy Systems, Inc., alleges that there is no diversity jurisdiction to support Seacor's claims. Houma Fabricators adopts those arguments by reference. Without diversity jurisdiction, and without a maritime tort cognizable under federal admiralty jurisdiction, this court has no subject matter jurisdiction over the Plaintiffs' claims and the matter should be dismissed accordingly.

of the defect in the article at the time of the sale and fails to declare it is liable for the restitution of the purchase price and all associated expenses, including attorneys' fees and damages.[33] If the seller did not know of the vice at the time of the sale, he is only bound to repair it.[34] However, a manufacturer of the defective article is <u>presumed</u> to know of any defect in those things made by him and is therefore deemed to be in bad faith in selling a defective product.  Consequently, a manufacturer is liable to the seller for any damages paid to the purchaser and is also directly liable to the purchaser for all damages and attorneys' fees.[35]

There are some examples in which sellers of boats have been held liable in redhibition. In *Poche v. Bayliner Marine Corp.*[36] and *Morvant v. Himel Marine, Inc.,*[37] the buyers of recreational boats took delivery of completed vessels that failed to perform according to the advertised specifications. In both cases the plaintiffs successfully rescinded the sales based on causes of action in redhibition.  However, the redhibition claims were based on contracts for the sale of goods.

Louisiana jurisprudence supports the position that there is a significant difference between a contract for the sale of goods and a contract for construction.  In order for a party to bring a redhibitory action under Louisiana law, the underlying transaction must be

---

[33] LSA-C.C. Article 2545.
[34] LSA-C.C. Article 2531.
[35] LSA-C.C. Article 2545; *Rey v. Cuccia,* 298 So.2d 840 (La. 1974).
[36] 632 So.2d 1170 (La. App. 5th Cir. 1994).
[37] 520 So.2d 1194 (La. App. 3d Cir. 1988).

a sales contract.[38]  The articles on redhibition only apply to contracts for sale and not to construction contracts.[39]

A contract of sale is an agreement where one person gives a thing for a price and the other gives the price in order to have the thing itself.[40]  A contract to build is essentially an undertaking to complete a building or work for a certain stipulated price by agreeing to furnish the work and industry and/or the materials necessary for the completion of the job.[41]  There are three determining factors that are indicative of a contract to build: (1) the buyer has some control over the specifications of the object; (2) contract negotiations take place before the object is constructed; and (3) one party will not only supply materials but will also furnish the skill and labor to build the desired object.[42]

In *Duhon*, the buyer of a house sued the contractor for various defects in construction.  After allowing the contractor several attempts to fix the defects, the purchasers filed a suit in redhibition demanding a rescission of the sale.  The trial court dismissed the action on the grounds that the plaintiff had no cause of action in redhibition because the contract was one for construction of the house rather than a contract of sale as required by the redhibition articles.[43]

The Shipbuilding Contract that is the subject of this suit is a contract to build because Waveland/Seacor exerted control over the details of the construction of the M/V

---

[38] *Gulf States Utility Company v. Ecodyne Corp.*, 635 F.2d 517 (5th Cir. 1981).
[39] *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d 559 (La. App. 3d Cir. 1981).
[40] LSA-C.C. Art. 2439.
[41] LSA-C.C. Art. 2756 and 2757.
[42] *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d at 560-61, citing *Kegler's Inc. v. Levy,* , 239 So.2d 450 (La. App. 4th Cir. 1970), and *Airco Refrigeration Service, Inc. v. Fink,* 242 La. 73 134 So.2d 880 (1961).

GALAXIE through discussions and negotiations relating to the vessel plans, specifications and its overall cost.[44]  Secondly, the negotiations over the shipbuilding contract took place before the commencement of the vessel's construction and prior to delivery, as evidenced by the schedule of payments contained in the Shipbuilding Contract.[45]  Finally, it was contemplated that Houma Fabricators would supply the materials, skill and labor in order to construct the vessel as evidenced by Article I of the Shipbuilding Contract.[46]  All three elements of a building contract are therefore satisfied within the meaning of *Duhon, supra.* The Shipbuilding Contract at issue is a contract to build a vessel, not for the sale of completed goods.  Consequently, the Plaintiffs have failed to state a cause of action sounding in redhibition and this averment should be dismissed.

### D.    Breach of Warranty.

In the Amended Complaint, the Plaintiff has also alleged a breach of warranty by Houma Fabricators.  The builder's warranty in the Shipbuilding Contract for the M/V GALAXIE provides as follows:

> The BUILDER warrants that the work to be performed under this Agreement shall, at the time of delivery:
> 1)    Fully conform to the requirements of the Plans and Specifications and Plans;
> 2)    Be of first class workmanship and quality;
> 3)    Be free of all defects in material and workmanship; and all material shall be new and unused; and
> 4)    Be fit for the purpose for which intended.
> If any defects in material or workmanship in the construction of the vessel under normal conditions of use in service, other than those defects which are due to fair wear and tear or misuse, be discovered

---

[43] *Duhon,* 396 So. 2d at 559; also see *Harris v. Williams*, 679 So.2d 990 (La. App. 2d Cir. 1996).
[44] Exh. 1, Shipbuilding Contract, p. 1; Exh. 4, Affidavit of Butch Monnier.
[45] Exh. 1, Shipbuilding Contract, p. 1; Exh. 4, Affidavit of Butch Monnier.
[46] Exh. 1, Shipbuilding Contract, p. 1; Exh. 4, Affidavit of Butch Monnier.

within one year (365 days) after delivery of the vessel by BUILDER to owner, such defects shall be corrected by BUILDER, or the defective parts shall be replaced by the BUILDER at such place as the parties shall mutually agree; provided, however, that in the instance of the equipment purchased by BUILDER from others and incorporated in the Vessel, the responsibility of the BUILDER for defects in such equipment shall be limited to the usual guaranty or warranty extended by the manufacturer's supplier of such equipment. The BUILDER, however, in no way assumes liability, nor shall be held accountable for consequential damages of any nature.[47]

The vessel logs indicate that Houma Fabricators delivered the M/V GALAXIE to Seacor Marine on November 26, 1997.[48] Under the terms of the contract, the risk of loss passed to Seacor Marine upon delivery of the vessel.[49] Because the engine room fire occurred on January 30, 1999, some 14 months after delivery, the vessel was out of warranty and all risk of loss had passed under the explicit terms of the contract. Seacor therefore fails to state a cause of action in breach of warranty.

## E. Indemnity.

Finally, the Amended Complaint has alleged that, notwithstanding the expiration of the warranty period and the passing of the risk of loss, Houma Fabricators somehow still owes a duty of indemnity to Seacor. Consequently, it is alleged that Houma Fabricators has breached the terms of the contract. This allegation is completely meritless, as will shown below.

Article XVII of the shipbuilding contract provides for insurance and indemnity obligations:

b.      Notwithstanding any transfer of title as a result of OWNER's periodic payments as provided in Article III hereinabove and the

---

[47] Exh. 1, Shipbuilding Contract, Article XII, p. 11-12.
[48] Exh. 5, Engineer's Log; Exh. 4, Affidavit of Butch Monnier.
[49] Exh. 1, Shipbuilding Contract, Art. IX, p. 8.

transfer of title as provided in Article VI hereinabove, BUILDER hereby agrees to indemnify, defend and hold harmless OWNER, its officers, employees, agents, and affiliates from and against any and all claims, demands or causes of action, for damages or for injury to any person (including death or any survivor's action, or any property, and against all loss, liability and expense, including attorneys' fees, howsoever arising, whether or not based in whole or in part on any negligent act or commission of OWNER, or whether or not based in whole or in part on fault or strict liability or unseaworthiness attributable to OWNER, in any way directly or indirectly connected with the activities and services of BUILDER, or any of BUILDER's agents, employees, subcontractors or invitee. However, BUILDER shall not be required to defend, hold harmless and indemnify OWNER for any claims caused solely by the negligence of OWNER or any subcontractor hired directly by OWNER. Further, BUILDER shall not be required to defend, hold harmless and indemnify OWNER for any claims caused solely by an unseaworthy condition which occurs after the delivery provided for in Article IX. **This shall not in any way affect any of the warranty provisions set forth in Article XII hereinabove.** [50]

Additionally, this article requires Houma Fabricators to obtain a builder's risk policy, workmen's compensation insurance and comprehensive general liability coverage naming Waveland/Seacor as additional assured with waiver of subrogation and watercraft exclusion deleted.[51]

The Shipbuilding Contract also provides that its construction shall be in accordance with the laws of the State of Louisiana.[52]  The Louisiana Civil Code Articles govern the interpretation of contracts.  The primary factor in interpreting a contract is the common intent of the parties.[53]  When the terms of the contract are clear and explicit, those words will be the best evidence of the parties intent.[54]  A provision that is capable of having

---

[50] Exh. 1, Shipbuilding Contract Article XII(B), p. 14-16 (emphasis added).
[51] Exh. 1, Shipbuilding Contract, Article XII(A) and (B)(1-2), p. 14-16.
[52] Exh. 1, Shipbuilding Contract, Article XX, p. 17.
[53] LSA-C.C. Art. 2045.
[54] LSA-C.C. Art. 2046.

different meanings must be interpreted so that the provision remains effective.[55]  The various provisions in a contract must be interpreted so that each provision is given the meaning suggested by the contract as a whole.[56]  If there is some doubt as to the meaning of a provision the court can look to other factors such as equity, common usages, the conduct of the parties and similar contracts between those two parties.[57]

Indemnity is generally defined as "a duty to make good any loss, damage, or liability incurred by another."[58]  In its broadest reading, the language of the indemnity provision of the Shipbuilding Contract appears to obligate Houma Fabricators to indemnify Seacor against "all loss . . . howsoever arising."  Seacor would have the court believe that this indemnity obligation extends to any conceivable event and for all time.  However, the indemnity obligation is not so broad as that.  It does <u>not</u> apply to claims caused solely by the negligence of Seacor or its subcontractors or for claims caused by an unseaworthy condition which occurs <u>after</u> delivery.  The provision also requires the loss to be connected with the activities and services of Houma Fabricators or its subcontractors.  Finally, and most importantly, the plain language of the article states that the indemnities shall <u>not</u> in any way affect the warranty provisions.  In other words, any indemnity will not broaden or expand the warranty.  Any indemnity will therefore be superceded by the warranty and its limitations.  Since the warranty only lasts 365 days after delivery, indemnity would be limited to that time frame.

---

[55] LSA-C.C. Art. 2049.
[56] LSA-C.C. Art. 2050.
[57] LSA-C.C. Art. 2053.
[58] *Black's Law Dictionary* (7th Edition 1999).

24

Houma Fabricators asserts Seacor's claim is for an allegedly unseaworthy condition that arose <u>after</u> delivery and is therefore barred by the express language of the indemnity provision. Assuming, for the sake of argument only, that the compressor was unseaworthy as a result of a hose that failed, that unseaworthy condition did not arise until after delivery had occurred and the risk of loss was transferred under Shipbuilding Contract Article IX.

In the event the Court determines that the hose was an unseaworthy condition that occurred <u>before</u> delivery and only manifested itself later, such a condition would only be covered by the warranty section of the contract and Seacor is now barred from recovery. The warranty of seaworthiness is an implied warranty that the vessel is reasonably fit for its intended purpose.[59] Shipbuilding Contract Article XII provides an express warranty of seaworthiness that extends for a period of one year from delivery. However, the indemnity provision expressly states that it will have no effect on the warranty provisions of the contract. To read the indemnity provision as extending Seacor's liability for an unseaworthy condition beyond the warranty period would be to effectively nullify the language of the warranty provision. Such an interpretation is not permitted under Civil Code Article 2049, which requires a contractual provision to be interpreted so that it remains effective.

Next, a reading of the indemnity provision as a whole and in context with the rest of the contract demonstrates that the indemnity obligation does not encompass property damage claims brought by Seacor itself regarding the object of the contract. The indemnity obligation relates to claims brought by third-parties <u>against</u> Seacor. This is

demonstrated by a review of the indemnity provision itself and the fact that Seacor's own negligence is not covered by the indemnity provision. The totality of the obligation is to "indemnify, defend and hold harmless" Seacor. This language presupposes third party action triggering the necessity for a defense. Further the duty is to indemnify "from and against any and all claims, demands or causes of action." This language would again appear to indicate some activity—a claim, demand or court action—by a third party against Seacor for which Houma would assume ultimate responsibility. The indemnity duty applies to injury to any person or property "and against all loss, liability and expense, including attorneys' fees, howsoever arising . . . ." The totality of this language would also suggest a third party connection when read in conjunction with the claims and demand phrase previously noted.

Finally, the indemnity is limited in several respects: (1) it must be connected with the activities or services of Houma Fabricators or its subcontractors; (2) it does not apply to claims solely caused by Seacor's negligence or that of Seacor's subcontractors; and (3) it does not apply to claims caused by an unseaworthy condition arising after delivery. Obviously, the indemnity provision is not unlimited in scope and does not apply to all losses.

A review of the contract in its entirety shows that the claims now alleged by Seacor are already contemplated within provisions other than the section governing indemnity. Prior to delivery of the vessel, the risk of loss remained with Houma Fabricators under Shipbuilding Contract Art. VI. The risk of loss of the vessel was passed to Seacor at delivery on November 27, 1997 under Shipbuilding Contract Art. IX. Once that risk was

---

[59] *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539 (1960).

transferred, all that existed to protect Seacor for the loss of the vessel itself was the warranty obligation, which had expired by the time of the casualty. To construe the indemnity provision as protecting Seacor itself against the risk of the loss of the vessel after delivery and after expiration of the warranty period would render the provisions on transfer of risk and warranty ineffective. Under Civil Code Article 2049, the contractual provisions must be interpreted so that each provision is given the meaning suggested by the contract as a whole. If provisions are capable of having different meanings, they must be interpreted so they will be rendered effective.[60] The only interpretation that would give all the provisions meaning is to limit the application of the indemnity provision to third party claims against Seacor.

Finally, it should also be noted that the indemnity provision itself does not contain any express time limitation except that Houma Fabricators is not required to indemnify Seacor for an unseaworthy condition arising after delivery. However, an implied time limitation on indemnity should be read into the contract. Otherwise, to interpret the indemnity provision as being indefinite would also render the risk of loss and warranty provisions meaningless in contravention of Civil Code Art. 2049 and 2050. At most, the indemnity obligation would only last as long as the one year warranty. Consequently, Seacor's allegation regarding the indemnity provision is seriously flawed and should not survive summary judgment.

## III.  CONCLUSION

Seacor's claims against Houma Fabricators should be resolved via motion for summary judgment as there is no issue of material fact in genuine dispute and Houma

---

[60] LSA-C.C. Art. 2049.

Fabricators is entitled to judgment as a matter of law.  As a shipbuilder, Houma Fabricators is insulated from maritime tort liability under the *East River* doctrine.  Further, there is no evidence that Houma Fabricators had any notice of a defective condition in the hydraulic hose to create liability for failure to warn of a defect discovered after the manufacturing process.  Rather, Seacor is limited to pursuing a breach of warranty cause of action against Houma Fabricators and the term of the one year contractual warranty expired well before the engine room fire.  Finally, Houma Fabricators' indemnity obligation should not be construed as applying to Seacor's own claims for property damage or surpassing its one year warranty obligation.

For the above and foregoing reasons, the First Supplemental and Amending Complaint of Seacor Marine, Inc. and Seacor Offshore, Inc., should be dismissed for lack of subject matter jurisdiction and failure to state a cause of action in maritime tort, breach of warranty, breach of contract or redhibition.  There is no question of material fact in dispute and the Motion for Summary Judgment of Houma Fabricators should be granted.

Respectfully submitted

RONALD A. JOHNSON, T.A. (#7329)
ROBERT H. WOOD (#23598)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
One Shell Square,
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone (504) 528-3001
Attorneys for Houma Fabricators,
A Division of LOR, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO. 00-0166     SECTION S (1) |
| HOUMA FABRICATORS, A DIVISION OF LOR, INC., AIR COMPRESSOR INDUSTRIES, INC., AND LEROI INTERNATIONAL, INC. D/B/A COMPARE LEROI | JUDGE LEMMON<br><br>MAGISTRATE JUDGE SHUSHAN |

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE** the Motion for Summary Judgment filed by Houma Fabricators, A Division of LOR, Inc., shall be brought on for hearing by oral argument before this Court on the 21st day of February, 2001 at 10:00 a.m., or as soon thereafter as practicable.

Respectfully submitted,

_____
RONALD A. JOHNSON, T.A. (#7329)
ROBERT H. WOOD (#23598)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
One Shell Square,
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone (504) 528-3001
Attorneys for Houma Fabricators,
A Division of LOR, Inc.

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED