U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   MAR 0 5 2001
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC. | CIVIL ACTION |
| -versus- | NO:       00-0166 |
| HOUMA FABRICATORS, A DIVISION<br>OF LOR, INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC., AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPARE LEROI | SECTION:   "S"<br><br>MAG:       "1" |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant Air Compressor Energy Systems, Inc. ("ACES") filed it original Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment with this Honorable Court on February 13, 2001. ACES specifically adopts and reurges all of the arguments made in said Motion and Memorandum as if included in extenso herein. Since that time counsel for ACES has received its copy of the continuation of the Rule 30 (b)(6) deposition of Mr Gary Kaser which supports the testimony of ACES president Mr. Ron Naquin that ACES was unaware of any alleged defect or problem with the hose which is the focal point of this litigation.

On page 8 of it Memorandum in Support of Motion for Summary Judgment, filed with this Honorable Court on February 13, 2001, ACES, in addressing the Claims for Relief stated by plaintiff

1

Fee
Process
X Dktd
CtRmDep
Doc.No.

Seacor states that:

> Seacor next alleges that "Some or all of the defendants, including LeRoi, were aware before the fire that the hydraulic hose was defective and/or that it was chemically incompatible with the Hydraulic oil specified for use in the compressor," and that "Defendants acquired this knowledge after the hose and compressor had been sold and delivered but substantially before the fire." As demonstrated above, the subject hose was neither defective nor was the oil specified and actually used in the subject compressor incompatible, so none of the defendants could have known of a problem which did not exist. Further, there is absolutely no evidence that ACES new of any alleged defect prior to the fire even if one had existed, and Seacor can offer no evidence to the contrary. Rather, all of the evidence elicited during the lengthy discovery which has been conducted in this case indicates that ACES was aware of no potential defect of the hose or alleged incompatibility of the oil prior to the fire, and Seacor can produce no evidence to the contrary. *See* Deposition of Ron Naquin at page 17, attached as Exhibit "G." In addition, Seacor can offer no evidence to refute the testimony of Ron Naquin, the president of ACES, that ACES did not install or change the hose in question. *See* Exhibit "G" at page 25.

*See* Memorandum in Support of Motion for Summary Judgment filed with this Honorable Court February 13, 2001, at page 8. Since this Memorandum in Support of Motion for Summary Judgment was filed with this Honorable Court, counsel for ACES has received it copy of the continuation of the Rule 30(b)(6) deposition of Gary Kaser, a corporate representative of defendant Compair LeRoi. In his deposition, Mr. Kaser states the following:

Q. Okay. The notice that you sent out, whether it was dated 4/22 or 5/4, I forget what the proper term for it is , but anyway the –

A. The G-N-C?

Q. Yeah. Is that the first communication you had with ACES regarding the, quote, potential problem?

A. That was after.

Q. Right. After the fire. But that notice didn't come out until after the fire.

A. That notice did not come out until after the producer's rice.

Q. right. And after the Galaxie as well.

A. I'm not certain, I'd have to look at the dates.

Q. The Galaxie was what? 1/30/99?

Mr Wallace:

Right.

Q. The notice that you sent out of the potential incompatibility was dated either 4/22 or

5/4/99, whichever one you look at.

A. Uh-huh.

Q. Had you communicated any potential problem of this type to ACES about this potential

problem before that notice was sent out?

A. No.  Not that I recall.

*See* Deposition of Gary Kaser attached to this Amended Memorandum in Support of Motion for

Summary Judgment as Exhibit "A' at pages 152 and 153.  Thus the above cited testimony of Mr.

Kaser confirms that ACES had no notice of the alleged potential hose problem until months after the

occurrence of the fire aboard the Galaxie.  As pointed out in the Memorandum in Support of Motion

for Summary Judgment file by ACES with this Honorable Court on February 13, 2001, the

Restatement (Third) of Products Liability, adopted recently by the United States Fifth Circuit Court

of Appeals, provides as follows:

> **§ 10.   Liability of Commercial Product Seller or Distributor for Harm Caused
> by Post-Sale Failure to Warn**
>
> (a)      One engaged in the business of selling or otherwise distributing products is
> subject to liability for harm to persons or property caused by the seller's

failure to provide a warning after the time of the sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.

(b)    A reasonable person in the seller's position would provide a warning after the time of sale if:

(1)    the seller knows or reasonably should know that the product poses a substantial risk of harm to persons and property; . . .

As pointed out above, ACES was not made aware of any alleged defect in the subject hose until some three months after the fire, therefore ACES cannot have a duty to warn of any alleged defect of which it had no knowledge, even if such a defect had existed, and it did not. The above quoted deposition testimony of Mr. Kaser confirms that ACES was not appraised of any alleged potential defect in the subject hose until some three months after the Galaxie fire. As Mr. Naquin testified in his deposition which was quoted in the Memorandum in Support of Motion for Summary Judgment filed with this Honorable Court February 13, 2001. This testimony of Mr. Kaser confirms that ACES had no knowledge of any alleged defect in the subject hose until well after the fire and therefore, ACES had no duty to warn as the above quoted portion of the Restatement (Third) of Products Liability makes clear. Therefore, Seacor cannot have a viable claim against ACES for breach of a duty to warn of an alleged potential defect in the subject hose of which it was not aware and could not have been aware, because as the testimony of Mr. Kaser proves, ACES was not made aware of the alleged potential defect until months after the fire aboard the Galaxie occurred.

For this reason, as well as the reasons presented to this Honorable Court in the Memorandum in Support of Motion for Summary Judgment filed by ACES on February 13, 2001, this Honorable Court should grant ACES' Motion for Summary Judgment, dismissing plaintiffs' claims against defendant ACES with prejudice and at plaintiff's cost.

Respectfully submitted,

_____
ROBERT J. YOUNG, JR. (#13763)
C. BLASE McCARTHY, JR. (#25789)
**YOUNG, RICHAUD & MYERS**
1100 Poydras Street
1515 Energy Centre
New Orleans, Louisiana 70163
*Attorney for Defendant, Air Compressor*
*Energy Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on all counsel of record by

depositing same in the U.S. Mail, postage prepaid and properly addressed this 2nd day of March,

2001.

_____
C. BLASE McCARTHY, JR.

Case 2:00-cv-00166-MVL    Document 133    Filed 03/05/2001    Page 6 of 8

GARY KASER                    Multi-Page™        SEACOR vs. Houma Fabricators
January 24th, 2001

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            EASTERN DISTRICT OF LOUISIANA
 3
 4    ................................
 5    SEACOR MARINE, INC. AND          *   CIVIL ACTION
      SEACOR OFFSHORE, INC.            *
 6                                     *   NO. 00-0166
      VERSUS                           *
 7                                     *   SECTION "S"(1)
      HOUMA FABRICATORS, A DIVISION    *
 8    OF L.O.R., INC., AIR             *
      COMPRESSOR ENERGY SYSTEMS,       *
 9    INC., DRESSER INDUSTRIES,        *
      INC., AND LEROI, INTERNATIONAL   *
10    INC., D/B/A COMPAIR LEROI        *
      ................................
11
12
13
14
15        30(b)(6) deposition of CompAir LeROI through
16   its designated representative, GARY KASER, taken in the
17   above-entitled cause before Cathy L. Logan, a Certified
18   Court Reporter, authorized to administer oaths of
19   witnesses, pursuant to Section 961.1 of Title 13 of the
20   Louisiana Revised Statutes of 1950, as amended,
21   pursuant to the following stipulation, given at the
22   offices of CHAFFE, McCALL, PHILLIPS, TOLER & SARPY,
23   2300 Energy Centre, 1100 Poydras Street, New Orleans,
24   Louisiana 70163-2300, on Wednesday, the 24th day of
25   January, 2001.
```

Page 2

```
 1   APPEARANCES:
 2
 3   REPRESENTING SEACOR MARINE, INC. AND SEACOR OFFSHORE,
 4   INC.:
 5
 6        HARRIS & RUFTY
 7        BY: ALFRED J RUFTY, III, ESQ.
 8        Suite 1510 CNG Tower
 9        1450 Poydras Street
10        New Orleans, Louisiana 70112
11        Telephone: (504) 525-7500
12        Fax: (504) 525-7222
13
14
15   REPRESENTING COMPAIR LeROI:
16
17        CHAFFE, McCALL, PHILLIPS, TOLER & SARPY
18        BY: CAMPBELL E. WALLACE, ESQ.
19           IVAN M. RODRIGUEZ, ESQ.
20        2300 Energy Centre
21        1100 Poydras Street
22        New Orleans, Louisiana 70163-2300
23        Telephone: (504) 585-7500
24        Fax: (504) 585-7075
25
```

Page 3

```
 1   REPRESENTING COMPRESSOR ENERGY SYSTEMS, INC.:
 2
 3        YOUNG, RICHAUD & MYERS
 4        BY: C. BLASE McCARTHY, ESQ.
 5           ROBERT J. YOUNG, JR., ESQ.
 6        1515 Energy Centre
 7        1100 Poydras Street
 8        New Orleans, Louisiana 70163-1515
 9        Telephone: (504) 585-7750
10        Fax: (504) 585-7776
11
12
13   REPRESENTING HART INDUSTRIES, INC.:
14
15        HULSE & WANEK
16        BY: RANDALL L. KLEINMAN, ESQ.
17        1010 Common Street, Suite 2800
18        New Orleans, Louisiana 70112-2401
19        Telephone: (504) 524-6221
20        Fax: (504) 529-4106
21
22
23
24        Reported by CATHY L. LOGAN, Certified Court
25   Reporter in and for the State of Louisiana.
```

Page 4

```
 1            S T I P U L A T I O N
 2
 3        IT IS STIPULATED AND AGREED by and among counsel
 4   for the parties hereto that the 30(b)(6) deposition of
 5   CompAir LeROI through its designated representative,
 6   GARY KASER, may be taken for all purposes permitted in
 7   accordance with the Federal Rules of Civil Procedure,
 8   at the time and place hereinabove recited;
 9        That all formalities, save reading and signing of
10   the original transcript, are hereby specifically
11   waived;
12        That all objections, save objections as to the
13   form of the question and responsiveness of the answer,
14   are reserved until such time as this deposition, or any
15   part thereof, is used or sought to be used in evidence
16   at the time of the trial of the matter.
17
18            ..oOo..
19
20        Cathy L. Logan, Certified Court Reporter in and
21   for the State of Louisiana, officiated in administering
22   the oath to the herein witness.
23
24
25
```

DEFENDANT'S
EXHIBIT
"A"

Case 2:00-cv-00166-MVL   Document 133   Filed 03/05/2001   Page 7 of 8

GARY KASER                    Multi-Page™              SEACOR vs. Houma Fabricators
January 24th, 2001

Page 149

1  It was in his prior deposition.

2  A. I think it was in my prior deposition.

3  Q. Do you recall the precise words used?

4  A. I think I put it in my prior deposition what he

5  said. I think the words were that the hose did not

6  blow apart.

7  Q. Sitting here today, do you recall those precise

8  words being used?

9  A. No, I don't.

10  Q. At the time of your previous deposition did you

11  recall those precise words being used?

12  A. Yes, I did.

13  (Whereupon there was discussion had outside

14  the hearing of the reporter.)

15  MR. WALLACE:

16  Mr. Kaser mentioned that Joe Farrah was

17  there as well.

18  MR. RUFTY:

19  Excuse me?

20  MR. WALLACE:

21  At the Busch inspection Joe Farrah was

22  there. I don't think he was there on the vessel

23  inspection itself.

24  Q. (BY MR. RUFTY) During which inspection was it

25  that you spoke with Busch? Inspection of what?

Page 150

1  A. It was a -- and again I'm not sure who set the

2  inspection up. I believe it was SEACOR had him do an

3  inspection of the failed hose.

4  Q. Where were you at the time?

5  A. In his office.

6  Q. Are you saying in Busch's office?

7  A. Uh-huh. Yes.

8  Q. Who else was present?

9  A. Joe Farrah and another individual who had

10  arranged for the test, and I believe he was the SEACOR

11  attorney but I'm not sure. I don't remember what his

12  name was.

13  Q. Anyone else?

14  A. No.

15  MR. KLEINMAN:

16  Can I ask my one question?

17  MR. RUFTY:

18  Sure. Go ahead.

19  EXAMINATION BY MR. KLEINMAN:

20  Q. What's the ignition temperature for the SSL-50

21  fluid?

22  A. We have an MSDS sheet here. The flash point is

23  four hundred seventy-five degrees Fahrenheit and the

24  fire point is five hundred and twenty-five degrees

25  Fahrenheit.

Page 151

1  MR. KLEINMAN:

2  Thank you. That's it for me.

3  MR. RUFTY:

4  Off the record.

5  (Discussion off the record.)

6  EXAMINATION BY MR. McCARTHY:

7  Q. First of all, just because I'm a slow writer,

8  you said the flash point was four seventy-five and the

9  ignition point was five twenty-five?

10  A. That's correct, yeah. Four seventy-five and

11  five twenty-five.

12  MR. RUFTY:

13  It's on Exhibit G-2, for the record.

14  Q. (BY MR. McCARTHY) Prior to the installation of

15  the subject compressor, serial number 124, into the

16  GALAXIE, did you have any conversations, you being in

17  this case LeROI, with Houma Fabricators --

18  A. No.

19  Q. -- concerning that compressor?

20  A. Not to my knowledge, no.

21  Q. Are you familiar with a company called Stewart

22  Stephenson (assumed spelling)?

23  A. Stewart & Stephenson? I'm not sure which one

24  you're referring to, but there's a Stewart & Stephenson

25  that is a distributor of ours in Texas.

Page 152

1  Q. Okay. There is a company called Stewart &

2  Stephenson, which may or may not be the same company,

3  I'm not sure, which has offices here in the New Orleans

4  area.

5  A. I don't know.

6  Q. Did you have any conversations regarding the

7  subject compressor prior to its installation into the

8  GALAXIE with Stewart & Stephenson?

9  A. No. Absolutely not.

10  Q. Okay. You had said earlier that you do not

11  inventory the WE150 units, you build them as per order;

12  is that right?

13  A. Build them as per ordered, especially those

14  because they're special modules, they're not a standard

15  pack.

16  Q. Okay. The notice that you sent out, whether it

17  would be dated 4/22 or 5/4, I forget what the proper

18  term for it is, but anyway the --

19  A. The G-N-C?

20  Q. Yeah. Is that the first communication you had

21  had with A-C-E-S regarding the, quote, potential

22  problem?

23  A. That was after.

24  Q. Right. After the fire. But that notice didn't

25  come out until after the fire.

**Page 153**

1 A. That notice did not come out until after the

2 Producers Rice.

3 Q. Right. And after the GALAXIE as well.

4 A. I'm not certain, I'd have to look at the dates.

5 Q. The GALAXIE was what? 1/30/99?

6 MR. WALLACE:

7 Right.

8 Q. (BY MR. McCARTHY) The notice that you sent out

9 of the potential incompatibility was dated either 4/22

10 or 5/4/99, whichever one you look at.

11 A. Uh-huh.

12 Q. Had you communicated any potential problem of

13 this type, or communicated to A-C-E-S about this

14 potential problem before that notice was sent out?

15 A. No. Not that I recall.

16 MR. McCARTHY:

17 Okay. I think I'm done.

18 MR. WALLACE:

19 I don't have any questions.

20 MR. RODRIGUEZ:

21 No.

22 MR. RUFTY:

23 I'd just like to reserve the right to

24 ask further questions as appropriate, subject to any

25 objections you may have which we can fight about,

**Page 154**

1 concerning these new documents that I've seen today

2 that I have not had a chance to thoroughly digest.

3 MR. WALLACE:

4 I understand you're reserving your

5 rights. I don't consent to it. I object.

6 (Whereupon the deposition was concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page 155**

1

2

3

4

5 WITNESS' CERTIFICATE

6

7 I, GARY KASER, do hereby certify that the

8 foregoing testimony was given by me, and that the

9 transcription of said testimony, with corrections

10 and/or changes, if any, is true and correct as given by

11 me on the aforementioned date.

12

13 GARY KASER

14

15

16 Date

17

January 24th, 2001
18 Date taken

19

20

21

22

23 ( ) No corrections

24 ( ) Corrections attached

25

**Page 156**

1 REPORTER'S CERTIFICATE

2 I, Cathy L. Logan, a Certified Court Reporter

3 in and for the State of Louisiana, do hereby certify

4 that the foregoing deposition of GARY KASER was taken

5 before me at the time and place hereinabove mentioned,

6 and that said witness was first duly sworn to tell the

7 truth, the whole truth and nothing but the truth in

8 answer to the questions as propounded; said deposition

9 further being taken by me in computer shorthand and

10 thereafter transcribed under my supervision; that the

11 foregoing pages contain a true and correct

12 transcription of said testimony to the best of my

13 ability and understanding.

14 I further certify that I am not of counsel, nor

15 related to any of the parties to this cause, nor in the

16 employ of any of them; and that I am in no way

17 interested in the result of said cause.

18

19

20 CATHY L. LOGAN
21 Certified Court Reporter

22

23

24

25