

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2001 MAR -5 PM 4: 05
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC.<br><br>          Plaintiffs<br><br>VERSUS<br><br>HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC., AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPAIR LEROI<br><br>          Defendant | * * * * * * * * * * * * * * * | CIVIL ACTION<br><br>NO.:  00-0166<br><br>SECTION: "S" (1) |

\* \* \* \* \* \* \* \*

## MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME plaintiffs, SEACOR Marine, Inc. and SEACOR Offshore, Inc., and respectfully MOVE for the entry of a partial summary judgment against defendant, Houma Fabricators, on the grounds and for the reasons stated in the accompanying memorandum.

1

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this 2nd day of March, 2001.

_____
ALFRED J. RUFTY III

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SEACOR MARINE, INC. AND** | * | **CIVIL ACTION** |
| **SEACOR OFFSHORE, INC.** | * | |
| | * | **NO.:  00-0166** |
| **Plaintiffs** | * | |
| | * | **SECTION: "S" (1)** |
| **VERSUS** | * | |
| | * | |
| **HOUMA FABRICATORS, A DIVISION** | * | |
| **OF L.O.R., INC., AIR COMPRESSOR** | * | |
| **ENERGY SYSTEMS, INC., DRESSER** | * | |
| **INDUSTRIES, INC. , AND LEROI** | * | |
| **INTERNATIONAL, INC. D/B/A** | * | |
| **COMPAIR  LEROI** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| *   *   *   *   *   *   *   * | | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the motion of plaintiffs to continue trial will be brought on for hearing on the 7$^h$ day of March, 2001 at 10:00 o'clock a.m.

New Orleans, Louisiana, this _____ day of March, 2001.

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC. | * <br> * <br> * | CIVIL ACTION <br><br> NO.:   00-0166 |
| Plaintiffs | * <br> * | SECTION: "S" (1) |
| VERSUS | * <br> * | |
| HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC. , AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPAIR  LEROI | * <br> * <br> * <br> * <br> * <br> * <br> * | |
| Defendant | * <br> * | |
| *   *   *   *   *   *   * | * | |

### MEMORANDUM IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

This memorandum is respectfully submitted by plaintiffs, SEACOR Marine, Inc. and SEACOR Offshore, Inc., in support of their motion for a partial summary judgment against defendant, Houma Fabricators, a division of L.O.R., Inc. ("Houma").

1

As explained below, under the Shipbuilding Contract for the construction and sale of the GALAXIE, Houma is obligated to indemnify SEACOR "against all loss ... and expense, including attorneys' fees, howsoever arising, ... in any way directly or indirectly connected with the activities and services of [Houma] or ... [its] subcontractors." Because Seacor's losses arose from deficiencies in the vessel constructed and sold by Houma under the contract, SEACOR's losses certainly are "directly or indirectly connected" to Houma's work under the contract. SEACOR therefore is entitled to a partial summary judgment that the contract's indemnification clause unambiguously requires Houma to indemnify SEACOR against any fire losses that SEACOR proves were caused by a defective engine room component.

Additionally, SEACOR requests a partial summary judgment that Houma is subject to a redhibition claim as the "manufacturer" of the GALAXIE and that, as such, Houma is conclusively presumed to have been aware of any defects in the vessel at the time of its delivery.

## I. *PERTINENT FACTS*

The GALAXIE was manufactured by Houma Fabricators pursuant to a "Shipbuilding Contract" that it entered into with Waveland Marine. [See Exhibit "A"]. As is undisputed, Waveland's rights and interest in the contract were validly assigned to SEACOR through an assignment agreement dated January 3, 1997. [See Exhibit "B"].

Houma engaged various subcontractors to provide equipment to be integrated into the vessel. Among the equipment purchased from outside vendors for integration with the vessel was an air compressor manufactured by Comp Air LeRoi. The air compressor was purchased by Houma from Air Compressor Energy Systems (a LeRoi distributor). [See Exhibit "C"]. The air compressor contained a flexible rubber hose believed to have been manufactured by the Gates Corporation and distributed to compressor manufacturer LeRoi by Hart Industries.

On January 30, 1999, the GALAXIE experienced an engine room fire. SEACOR's experts have determined that the source of the fire was a defective rubber hose and fitting assembly on the air compressor within the engine room. As a result of the fire, SEACOR incurred damages of roughly $400,000 in repairing the damaged engine room and in loss of revenue during the vessel's period of inactivity while undergoing repairs.

Under the Shipbuilding Contract, Houma was obligated to indemnify SEACOR against all losses even indirectly related to Houma's work under the contract. In relevant part, the indemnification clause (Article XVII) provided:

> ..... ***BUILDER hereby agrees to indemnify, defend and hold harmless OWNER***, . . . against any and all claims, demands or causes of action, for damages or injury to any person . . . or any property, and ***against all loss, liability and expense, including attorney's fees, howsoever arising***, whether or not based in whole or in part on any negligent act or omission of owner, or whether or not based in whole or in part on fault or strict liability or unseaworthiness attributed to OWNER, ***in any way directly or indirectly connected with the activities and services of BUILDER, or any of BUILDER's agents, employees,***

3

*subcontractors or invitees.* Further, BUILDER shall not be required to defend, hold harmless and indemnify OWNER for any claims caused solely by an unseaworthy condition which occurs after the delivery provided for in Article IX. This shall not in any way affect any of the warranty provisions set forth in Article XII hereinabove.

## II. *ARGUMENT*

### A. The Contract's Indemnification Clause Unambiguously Requires Houma To Indemnify SEACOR Against Any Fire Losses Arising From Defective Engine Room Components

Under the express language of the contract's indemnification clause, SEACOR is entitled to indemnification "against all loss . . . and expense, including attorney's fees, howsoever arising, . . . in any way directly or indirectly connected with the activities and services of [Houma] or any of [its] . . . subcontractors."

The phrase "all loss ... and expense including attorneys' fees, howsoever arising" plainly encompasses SEACOR's losses here. SEACOR's losses consist of (1) the cost of repairing the vessel after the fire, (2) loss of the vessel's revenue during the repair period, and (3) attorneys' fees. There is simply no question that each of these components fits easily within the plain-English phrase "all loss ... and expense, including attorneys' fees, howsoever arising."

As is equally clear, any fire losses that resulted from Houma's delivery of a defective vessel would constitute losses that are "directly or indirectly connected with the activities and services of [Houma], or ... [its] subcontractors." The "activities and services" conducted by Houma under the contract were, after all, the manufacture and sale of the vessel. If the

4

vessel was defective, and the defect caused the fire, the resultant losses surely bear a connection "directly or indirectly" to Houma's activities as the manufacturer and seller of the vessel. SEACOR therefore is entitled to a ruling that it is entitled to indemnification from Houma under the contract's indemnity clause for any losses proven at trial to have resulted from the delivery by Houma of a vessel with a defective engine room component.

Houma raises two objections. First, Houma argues that the final phrase of the indemnification clause defeats liability in this case. That final sentence states: "This shall not in any way affect any of the warranty provisions set forth in Article XII hereinabove." Under Houma's interpretation, this sentence subordinates the indemnity right to the warranty clause and means that indemnification would be owed here only for losses that were also recoverable under the warranty provisions of Article XII. Because the fire occurred outside the warranty period, Houma maintains, no rights exist under the indemnification clause.

This reasoning is flawed. The final sentence of the indemnification clause says nothing remotely close to Houma's interpretation of it. The final sentence merely states that "this" (i.e. foregoing text from the indemnification clause) "shall not in any way affect" the warranty provisions appearing earlier in the contract. The language is clear.

It is also irrelevant, for SEACOR does not contend that the indemnification provision "affects" the warranty provisions in any way. Indeed, we rely not at all on the warranty provisions; we rely on the indemnification provision, the plain terms of which entitle

5

SEACOR to indemnification for losses arising from a defective component on the vessel. The final sentence of the clause says nothing to the contrary.

Houma further argues that, regardless what the final sentence says, it was *intended* to limit the scope of indemnifiable losses to those recoverable under the warranty provision. This argument also fails. Under established interpretive rules, the Court may go beyond the four corners of the contract to ascertain the parties' intent only if the contract is ambiguous on its face. This contract is not ambiguous. To be ambiguous, the contract language must be susceptible of two or more reasonable interpretations, one of which favors Houma.

Yet by no reasonable interpretation do the words of the indemnification clause state that SEACOR's right to indemnification is limited to losses compensable under the warranty clause. The final sentence certainly cannot be read as saying this. In fact, Houma's interpretation is the *obverse* of what the sentence actually says. Whereas it actually says "indemnity clause shall not affect warranty provisions," Houma reads it to mean "warranty provisions shall affect (i.e. limit) indemnity clause." Houma's interpretation is unreasonable. The clause is not ambiguous, and the Court has neither the need nor the sanction to go beyond the contract language in search of its meaning.

Houma also contends that the indemnification clause was not meant to compensate SEACOR for its owns losses ("first-party claims") but rather merely for its liability to others ("third-party claims"). Again, however, this interpretation is at odds with language of the indemnity clause itself. The clause explicitly obligates Houma to indemnify SEACOR

6

"against all loss, liability and expense, including attorney's fees, howsoever arising, . . . in any way directly or indirectly connected with the activities and services of [Houma] . . ." The clause draws no distinction between first-party and third-party claims. No words in the clause even hint at such an intent.

Had Houma desired that the indemnification clause cover only third-party claims, it easily could have drafted the clause to so state. But the clause does not so state. SEACOR is entitled to have the indemnification clause enforced as written. And, as written, the clause unambiguously calls for Houma to indemnify SEACOR here.

### B. *Redhibition*

SEACOR also requests a partial summary judgment declaring that Houma is a "manufacturer" within the meaning of the redhibition articles under the Louisiana Civil Code and, further, that Houma is accordingly presumed to have known of any defects in the vessel at the time of its delivery.

Louisiana law entitles SEACOR to this relief. Article 2520 of the Louisiana Civil Code defines the redhibition warranty as follows:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain recission of the sale.

7

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

As official Revision Comment (c) to this article specifies, "the warranty against redhibitory vices can be avoided only by an *express and explicit waiver*." See Revision Comment (c); see also *Williams v. Ring Around Products, Inc.*, 344 So.2d 1125 (La.App. 3rd Cir. 1977). The Shipbuilding Contract contains no such waiver.

As the company that designed, manufactured and sold the GALAXIE, Houma qualifies as a "manufacturer" under the redhibition articles. In past cases, Louisiana courts have held that shipyards which design, build, and sell vessels are "manufacturers" subject to a claim for breach of the warranty of redhibition. See, e.g., *Poche v. Bayliner Marine Corp.*, 632 So.2d 1170 (La.App. 5th Cir. 1994) and *Morvant v. Himel Marine, Inc.*, 520 So.2d 1194 (La. App. 3d Cir. 1988).

Houma tries to soft-peddle these cases out of existence, but it cannot. These cases establish that a vessel manufacturer who sells a vessel with a defect is liable as a "manufacturer" in redhibition. Houma can cite no case involving a vessel manufacturer that held to the contrary. Under Louisiana law, Houma therefore is subject to a claim in redhibition.

8

The Louisiana Civil Code further provides that manufacturers are conclusively presumed to have knowledge of any redhibitory defect in the thing at the time of the sale. Article 2545 is quite explicit in this regard, stating in pertinent part:

> A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

The presumption of a manufacturer's knowledge is, moreover, irrebuttable. Leaving no doubt on this point, the official Revisions Comments to Article 2545 state at paragraph (b):

> Thus, regardless of what his actual knowledge may be, a manufacturer is deemed to be in bad faith in selling a defective product. Thus, under this article, since a manufacturer is presumed to know of the defects in the things he sells, he can never be in good faith if a defect in fact exists.

SEACOR's experts have pinpointed the source of the fire as a defective hose on the air compressor unit within the vessel's engine room. Although the compressor had been subjected to just 28.5 hours of running time since the vessel was delivered to SEACOR, pressurized hydraulic oil was permitted to escape the hose due to a product defect, thereby triggering the fire.

We realize, of course, that defendants may have their own theories as to what caused the fire and that this is a factual inquiry. But that is no cause for denying this motion, for we do not seek a ruling that Houma is liable or even that a defect existed in the hose at the time of delivery. Those factual questions will be addressed at trial. What we seek, rather, is a partial summary judgment on matters of law – namely, first, that Houma will owe SEACOR contractual indemnification under the contract's indemnity clause if, indeed, the fire arose

9

from a defective engine room component; and second, that Houma is subject to a redhibition claim as a "manufacturer" within the meaning of the redhibition articles. These questions of law are appropriate for summary judgment, as Houma agrees. Obtaining a ruling on these legal questions substantially before trial will streamline the issues, let the parties know where they stand with respect to their potential liabilities, and greatly enhance settlement prospects.

### III. *CONCLUSION*

For these reasons, SEACOR respectfully submits that its motion for a partial summary judgment against Houma should be granted.

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and SEACOR Offshore, Inc.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this 2nd day of March, 2001.

_____
ALFRED J. RUFTY III

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED