FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
MAR 06 2001
2001 MAR -6 PM 2: 26
LORETTA G. WHYTE
CLERK

146845                                                                         0207-5994

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO. 00-0166    SECTION S (1) |
| HOUMA FABRICATORS, A DIVISION<br>OF LOR, INC., AIR COMPRESSOR<br>INDUSTRIES, INC., AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPARE LEROI | JUDGE LEMMON<br><br>MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES Defendant, Houma Fabricators, a Division of LOR, Inc. ("Houma Fabricators"), and in opposition to the Motion for Partial Summary Judgment filed by Plaintiffs, Seacor Marine, Inc., and Seacor Offshore, Inc., ("Seacor"), submits the following arguments and authorities:

I.   **FACTS.**

Local Rule 56.1 provides that a statement of uncontested material facts shall accompany every motion for summary judgment. The Plaintiff has omitted this statement from its Motion for Partial Summary Judgment. Houma Fabricators cannot therefore

1

comply with Local Rule 56.2E&W, which requires the party opposing summary judgment to submit a statement controverting the movant's allegations of material fact.

Secondly, this Motion for Partial Summary Judgment was received by Houma Fabricators on March 2, 2001 at 5:48 p.m., not allowing sufficient time under the Local Rules for consideration prior to the hearing date on March 7, 2001. With the Court's permission, Counsel for Houma Fabricators reserves the right to amend or supplement its Memorandum as necessary. We simply wanted to place this Memorandum in the Court's hands prior to the hearing in order to quickly address the contentions of Seacor.

Finally, Houma Fabricators denies and/or controverts certain of the "Pertinent Facts" listed in Seacor's Memorandum in Support of Motion for Partial Summary Judgment as follows: (1) the Plaintiff has failed to prove that the source of the fire in the engine room of the M/V GALAXIE was a defective rubber hose and fitting assembly on the air compressor; (2) proof of damages and lost revenue has not been established; and (3) Houma Fabricators was not obligated to indemnify Seacor for all losses related to the work performed under the Shipbuilding Contract.

Rather, the application of the uncontested facts to the unambiguous provisions of the Shipbuilding Contract requires the granting of Houma Fabricator's Motion for Summary Judgment as demonstrated below.

II.  DISCUSSION.

   A. *East River.*

Houma Fabricators has addressed the issue of the *East River* doctrine[1] and the absence of a cause of action in maritime tort in its pending Motion for Summary Judgment. The Plaintiff has adopted by reference the briefs previously filed in opposition to other Motions for Summary Judgment filed in this action on the same issue. However, to place matters in perspective, it should be observed that the Plaintiff has urged this Court to abandon the well-established U.S. Supreme Court precedent enunciated in *East River* and hold a manufacturer liable in maritime tort for a commercial product injuring itself. We continue to feel that *East River* is dispositive of Seacor's claims in all respects, even those now asserted under the Indemnity provision, with the result being that Seacor's claims should be dismissed.

Next, the Plaintiff has requested that the Court consider any owner-purchased components incorporated by the builder into the vessel prior to delivery as "other property" excluded from the *East River* doctrine and subject to tort damages. However, the Plaintiff has given this Court neither precedent nor policy to deviate so drastically from established reasoning. The Supreme Court has determined that "holding a manufacturer liable in tort for injury to the product itself is not justified" and such damage "is most naturally understood as a warranty claim"[2] cognizable under state law.[3] The *East River* Court recognized that parties to a commercial transaction are quite able to allocate the potential

---

[1] *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986).
[2] *Id.*
[3] *Id.* at fn.7.

3

risks through the negotiation process and the purchase of insurance.[4] In fact, this claim by Seacor is clearly insured by its hull and machinery policy of insurance, which responds for property damage to the vessel in the event of an insured peril such as "fire". Thus, we can anticipate this claim is really a subrogation claim by Seacor's hull insurer trying to recover for a payment that is clearly a hull insurance loss.

Houma Fabricators and Seacor bargained for the terms of the Shipbuilding Contract and, now that a loss has occurred, the Plaintiff wants to renegotiate the terms of the deal through this court action. However, neither federal nor state law will provide Seacor any relief. The warranty had expired at the time of the fire and Seacor's insurers will have to bear the risk of loss.

### B. Seacor takes the Indemnity language out of context to avoid the warranty restrictions.

In its Memorandum, Seacor neglects to address the warranty language in the Shipbuilding Contract and instead leaps straight to the indemnity section, taking certain language entirely out of context and warping it to a frame that it does not fit. The Plaintiff would have the Court believe that Article XVII, relating to "Insurance and Indemnity", is controlling as to the risk of loss. However, this reasoning ignores the entire structure and purpose of the contract. The contract must be read as a whole, not as an isolated provision, ignoring other phrases and provisions which give it true meaning.

The document at issue is a contract for the construction of a vessel. The Shipbuilding Contract governs the entire relationship of the parties from signing to sailing, with the object of the contract the delivery of the vessel in exchange for payment. The

---

[4] *Id.* at 872.

sequence of the provisions demonstrates their relative importance and, to a large extent, the progression of anticipated events.

First, Houma Fabricators agreed to build a vessel of particular proportions as more fully described in plans and specifications approved by Seacor. Then, a price and terms of payment were established. Next, Articles IV and V allowed for modifications to the equipment and vessel. Article VI established the vesting of title to the vessel during the construction process as payments were made. VII and VIII allowed the parties to identify the materials and hull to which title vested. Article IX then specified the time of delivery and that risk of loss transferred to Seacor the moment delivery occurred.

The passage of risk of loss at delivery is one of the most important clauses in the contract. For example, in *Walter v. Marine Office of America*,[5] the construction of a fishing vessel was almost completed, when it overturned and sank in Bayou Lafourche on its way to a final outfitting. The vessel owner paid for the salvage and repair of the vessel and then looked to his builder's risk insurers for reimbursement.[6] Coverage was denied on the grounds that "delivery" to the owner had taken place at the time of the casualty, and these policies had therefore expired.[7] The Fifth Circuit reversed the traial court's confirmation of the denial of coverage. Judge John R. Brown found that there had been no delivery because the work had not been completed by the shipyard, and the "builder's risk" policies were clearly intended to cover all risks until the vessel was completed.[8] Because delivery

---

[5] 537 F.2d 89 (5th Cir. 1976).
[6] *Id.* at 93.
[7] *Id.* at 91.
[8] *Id.* at 95.

was the key point of time as to when builder's risk insurance lapsed, and there was no "delivery", the policies were found to cover the loss as they were in full force and effect.

Under the terms of the Shipbuilding Contract, Article VI, Houma Fabricators retained the risk of loss up until the time the vessel was delivered to or accepted by Seacor. The risk of loss then passed to Seacor under Article IX when the vessel was delivered to Seacor at Houma Fabricators' shipyard. This explicit language cannot be ignored as Seacor suggests.

The Shipbuilding Contract also provided in Article XI that Seacor could inspect the vessel at all times during construction. Further, under Article I, the vessel was required to be delivered to Seacor with all regulatory certificates and inspections. Therefore, the contract envisioned both the buyer and independent authorities inspecting the work as it progressed and prior to delivery. After final acceptance and payment, the primary purpose of the Shipbuilding Contract was accomplished. The vessel had been completed, payment had been made, and the risk of loss had been transferred to Seacor.

Other portions of the remainder of the contract essentially deal with potential disputes. The most important of these provisions occurs immediately after the articles relating to inspection and acceptance of the vessel: the warranty clause found in Article XII. That provision is clear and unambiguous as to the obligations of Houma Fabricators as to the final construction of the vessel, the rights available to Seacor, and the limitations of those rights, both in terms of time and content. Clearly, the warranty period for defects in the vessel is to extend no longer than one year following delivery. *East River* specifically states that the damage to a product itself is understood as a warranty claim. It is not a claim resting in products liability. This decision discusses public policy and the law

of warranty in depth.[9]  Nowhere in the decision is a single reference to indemnity as an alternative remedy to maritime tort.  Yet, Seacor would have the Court believe that the general indemnity language supersedes the express warranties.

The warranty in the Shipbuilding Contract lasted for one year from date of delivery and was the only section of the contract to specifically cover defects in material or workmanship in the construction of the vessel.  Any claim for defects in material or workmanship must be made pursuant to that warranty article.  Now that one year has passed, Seacor wishes to ignore the warranty provision, and relies on the indemnity section instead.  If the indemnity section was to be given the expansive meaning that Seacor would have, the warranty section would be superfluous.  This interpretation is illogical and unreasonable.

For another example of how Seacor would have the Court wear blinders in its interpretation of the indemnity obligation, it should be noted that the contract provision is entitled "<u>Insurance </u>and Indemnity."  Seacor only refers to the indemnity language in its memorandum.  However, the contract article itself primarily contemplates insuring against certain risks with the appropriate coverages: a builder's risk policy, workers' compensation and comprehensive general liability.  The builder's risk policy is essentially property damage coverage for a project under construction, which reimburses the owner for accidental loss regardless of fault.  It is not permanent insurance and only lasts for the course of the construction.[10]  The workers' compensation coverage clearly covers injuries

---

[9] *East River*, 476 U.S. at 872-875.
[10] *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F. 3d 909, 914 (5th Cir. 1997); Also see *Village of Kiryas Joel Local Development Corp. v. Insurance Co. of North*

to employees. The CGL policy is intended to cover claims made <u>against</u> the insured by a third party.[11] Essentially, when a contractor damages his property and that of another's, two policies are required to both replace the property and protect against third party claims: builder's risk and CGL.[12]

A discussion of the difference between CGL insurance and builder's risk insurance, and the effect of both coverages, is found in *Data Specialties, Inc. v. Transcontinental Insurance Co.*[13] There, the U.S. Fifth Circuit Court of Appeals addressed a situation where plaintiff was attempting to convert a CGL policy into a builder's risk policy. The Fifth Circuit observed:

> Normally a party will have two primary insurance needs: Insurance against loss of his property and insurance against liability for the claims of others. When a contractor negligently causes an accident damaging his own property and that of others, he needs two separate policies to collect for his lost property and to be protected against claims of others whose property he damaged. The CGL policy covers the contractor for its tort liability. Builders' risk insurance, however, provides property damage for a project under construction. This coverage reimburses the owner, or any party with an insurable interest such as a mortgage holder, for accidental loss, damage, or destruction of the property, regardless of fault. "Builders' risk is not permanent insurance. It is issued to insure a building 'only during the course of the construction' " period and perhaps for a short additional period after the construction is completed.[14]

---

*America*, 996 F.2d 1390, 1392 (2nd Cir. 1993); *Walter v. Marine Office of America*, 537 F.2d 89, 95 (5th Cir. 1976).
[11] *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F. 3d at 914.
[12] *Id.*
[13] *Id.*
[14] *Id.*

It is apparent from this coverage scheme that the insurance and indemnity obligation only lasted through delivery, when risk of loss passed to Seacor and its own insurers. If the M/V GALAXIE was damaged during construction, Houma Fabricators and its insurers would be obliged to repair the damage under the builder's risk policy. If a person was injured during construction, either the CGL policy or the workers' compensation insurance would cover the loss. If a third party's property was damaged, the CGL would apply. Neither the insurances nor the indemnity obligation last for all time, as Seacor would have the Court believe. These are clearly limited by the object of the contract--delivery of the vessel.

After delivery, the purchaser is limited to the warranty specified in Article XII. However, this is not an unlimited warranty. It lasts for a period of one year and does not cover defects due to wear and tear or misuse.

As a demonstration of how the warranty operates, an anecdote regarding a claim by Seacor is most appropriate under the circumstances and will be established through trial testimony. Before the expiration of the one year warranty period (prior to the fire) Seacor returned the M/V GALAXIE to Houma Fabricators alleging a defect in one of the thrusters that was causing a severe vibration. After investigation, it was determined that that Seacor's employees had used the thrusters to keep the vessel maintained against the bank of a shallow waterway. This action resulted in the propeller blades of the thruster churning mud, which caused a misalignment. Although Seacor had first made a claim under the warranty, it withdrew the claim when misuse of the vessel was brought to light.

Seacor has admitted that it does not (nor can it) rely on the warranty provision in any way. Clearly, the warranty has expired through passage of time. The Plaintiff relies

9

instead solely on the indemnity obligation and would persuade the Court to ignore the plain meaning of the final sentence of the indemnity clause: "This shall not in any way affect any of the warranty provisions set forth in Article XII above." The plain meaning of this language is clear: the indemnity will not enlarge or limit, expand or contract, or "in any way affect" the warranty. As explained above and in Houma Fabricators' supporting Memorandum to its Motion for Summary Judgment, Louisiana law requires the provisions of a contract to be read in light of one another.[15] The only way to do so is to read the indemnity as lasting through delivery and the warranty extending beyond. The Plaintiff would have the warranty nullified to create a cause of action where there presently is none.

### C. A contract to build is not cognizable in redhibition.

Seacor first asserts that only an express waiver can avoid the warranty against redhibitory vices. The Plaintiff then observes that no such waiver is found in the Shipbuilding Contract. This is true, but irrelevant. It still remains that redhibition only applies to contracts for the sale of goods, not contracts to build.[16] The Plaintiff has not opposed this assertion, but simply reiterated pleasure-craft sales cases already distinguished by Houma Fabricators. Further, Seacor asserts that Houma Fabricators is a manufacturer within the meaning of the redhibition statutes. However, it is only a "seller" who is deemed to know that the thing he sells has a redhibitory defect when he is the

---

[15] La C.C. Art. 2050.
[16] *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. 1981), *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d 559 (La. App. 3d Cir. 1981); *Yeargain v. Blum,* 144 So.2d 756 (La. App. 1962).

manufacturer of the thing.[17]  Because Houma Fabricators is not a seller, the redhibition articles do not apply.[18]  Therefore, no irrebuttable presumption arises regarding a manufacturer's knowledge of a defect, so as to create liability for attorney fees.  The redhibition articles simply do not apply to this agreement so aptly named the "Ship<u>building</u> Contract."

### III. CONCLUSION

The Plaintiff has failed to create a genuine issue of material fact regarding Houma Fabricators' Motion for Summary Judgment, which should be granted as a matter of law.  Seacor has also failed to establish its entitlement to partial summary judgment on the issues of indemnity or redhibition.  The facts and legal authorities support the position that Seacor is limited to a claim sounding in breach of warranty under state law.  However, under the plain and unambiguous terms of the Shipbuilding Contract, the warranty has expired and Seacor's claims should be dismissed with prejudice.

Respectfully submitted

_____
RONALD A. JOHNSON, T.A. (#7329)
ROBERT H. WOOD (#23598)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
One Shell Square,
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone (504) 528-3001
Attorneys for Houma Fabricators,
A Division of LOR, Inc.

---

[17] La. C.C. Article 545.
[18] Also see *Austin v. North American Forest Products*, 656 F.2d 1076, 1083 fn. 10 (5th Cir. 1981).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record, either by hand delivery, facsimile, or by placing the same in the United States mail, properly addressed and postage prepaid, this __6th__ day of March, 2001.

_____