FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 15  PM 3:11

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SEACOR MARINE, INC. AND               *           CIVIL ACTION
SEACOR OFFSHORE, INC.
                                      *           NO.  00-0166
VERSUS
                                      *           SECTION 'S' (1)
HOUMA FABRICATORS, A DIVISION
OF L.O.R., INC., ET AL                *

*    *    *    *    *    *    *    *    *    *    *

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes defendant Hart

Industries, Inc., and requests that this Honorable Court issue summary judgment in its favor,

dismissing all claims against it with prejudice, on the ground that there are no claims against it

which are cognizable in admiralty, all as is more fully set forth in the attached memorandum in

support of motion for summary judgment.

RANDALL L. KLEINMAN (#7445)
JOHN A. STEWART, JR. (#8164)
HULSE & WANEK
1010 Common Street, Suite 2800
New Orleans, LA 70112
(504) 524-6221

CERTIFICATE OF SERVICE

I do hereby certify that I have on this _14_ day of
_March_, 2001, served a copy of the foregoing
pleading on counsel for all parties to this proceeding, by mailing same
in the United States Mail, properly addressed and first class postage
prepaid.

Fee/
Process

83-8923

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SEACOR MARINE, INC. AND          *              CIVIL ACTION
SEACOR OFFSHORE, INC.
                                 *              NO.  00-0166
VERSUS
                                 *              SECTION 'S' (1)
HOUMA FABRICATORS, A DIVISION
OF L.O.R., INC., ET AL           *

*    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDMENT

SEACOR Marine, Inc. and SEACOR Offshore, Inc. ("SEACOR") allege that a

fire occurred in the engine room of the M/V GALAXIE on January 30, 1999.  It is claimed that

the fire was caused by a defective hose manufactured by Gates Corporation which had been

placed on an air compressor manufactured by CompAir/LeRoi ("LeRoi").  The compressor had

been purchased from LeRoi by Air Compressor Energy Systems, Inc. ("ACES"), then re-sold by

ACES to Houma Fabricators, Inc. ("Houma").  It is claimed that movant, Hart Industries,

provided the hose to LeRoi.

Hart Industries maintains that this Honorable Court does not have admiralty

-1-

jurisdiction by virtue of the <u>East River S.S. Corp. v. Transamerica Delaval</u>, 476 U.S. 858 (1986) case.

THE <i>EAST RIVER</i> DECISION

The <u>East River</u> decision held that a manufacturer in a commercial relationship has no duty under a negligence or a products liability standard to prevent a product from injuring itself. When the only damage claimed by the plaintiff is economic, a manufacturer has no duty under either a negligence or strict products liability theory to prevent the product from injuring itself. The Court noted that contractual remedies only apply under those circumstances.

The Fifth Circuit Court of Appeals has held that the lack of admiralty jurisdiction extends to suppliers of component parts of the allegedly defective product. See, for example, <u>McDermott, Inc. v. Clyde Iron</u>, 979 F.2d 1068 (5th Cir. 1992) where it was held that the manufacturer of a crane hook, a component part, was not liable to the owner of the crane for damage sustained by the crane when the hook failed. The Court reasoned that the object of the bargain between the purchaser of the crane and the crane manufacturer was the manufacture, design and sale of a completed crane. The defective crane hook was part and parcel of the contract to build the crane. See also <u>Nicor Supply Ship Associates v. General Motors</u>, 876 F.2d

-2-

501 (5th Cir. 1989) in which the owner of a vessel damaged as a result of a fire allegedly caused by a defective engine brought suit against the shipbuilder as well as against the manufacturer and distributor of the engine. The Court held that the owner of the vessel was barred from recovering in tort from the shipbuilder as well as from the engine's manufacturer absent a contractual agreement to do so.

Finally, the Court's attention is invited to Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925 (5th Cir. 1987), in which the Fifth Circuit refused to allow the purchaser of a vessel to recover under maritime products liability theories against the designer of an allegedly defective steering mechanism which caused damages to other components of the vessel. One of the issues in the Shipco 2295, Inc. decision was a clarification of what is meant by the term "product" in the East River case. The Fifth Circuit held there was no rational reason to give the buyer greater rights to recover economic damages against a manufacturer/designer of a component part than the law allows against the builder of the vessel. The buyer ordinarily has little interest in how or where individual components are obtained. The bargain is typically for a completed vessel, as is the case here.

For purposes of this motion only, and without prejudice to its right to contest the

presence of a Hart-supplied hose onboard the vessel at trial,[1] Hart maintains that any hose

allegedly supplied by it was a component part subject to the precepts of East River as interpreted

by the Fifth Circuit Court of Appeals.

THE <em>SARATOGA FISHING</em> DECISION

Hart is informed that SEACOR will claim that the stern thruster it purchased for

installation onboard the vessel prior to its delivery constitutes "other property" under East River

and Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 117 S.Ct. 1783 (1997).

Fortunately, the Supreme Court's holding in Saratoga Fishing is clear:

> "We conclude that equipment added to a product after the
> Manufacturer (or distributor selling the initial distribution chain)
> has sold the product to an Initial User is not part of the product that
> itself caused physical harm.  Rather, in East River language, it is
> other property." 117 S.Ct. 1789.

The object of the contract between Houma Fabricators and SEACOR in this case

was a fully operational vessel.  Under Saratoga Fishing, the completed vessel itself, including the

stern thrusters required for the vessel to fulfill its purpose, is clearly the product to which the

economic loss rule of East River applies.

---

[1]The records maintained by CompAir/LeRoi indicate that no such hose was actually shipped to ACES.
Instead, hard piping was used.

Whether the stern thruster was supplied by SEACOR or by Houma Fabricators is irrelevant as the primary consideration behind the economic loss rule was present, namely, SEACOR had an opportunity to negotiate as part of its contract the allocation of liability between Houma Fabricators and itself as respects damage to the stern thruster. See Article XII of the Contract in which Houma Fabricators assumes responsibility for defects "...in material or workmanship in the construction of the Vessel..." for a period of one year. The warranty does exclude owner-supplied equipment from its reach. The warranty therefore covers the stern thruster, bringing into play the <u>East River</u> rule.

## CONCLUSION

Inasmuch as the only claims made against Hart Industries, Inc. in this case are those made by virtue of CompAir/LeRoi's third party complaint which invoked Rule 9(h) of the Federal Rules of Civil Procedure, tendering Hart Industries, Inc. as a plaintiff directly to SEACOR, and because it is clear that there is no maritime cause of action against Hart, it is clear

-5-

that Hart Industries, Inc. is entitled to a full dismissal with prejudice from all claims made by all

parties against it in this matter.[2]

RANDALL A. KLEINMAN (#7445)
JOHN A. STEWART, JR. (#8164)
HULSE & WANEK
1010 Common Street, Suite 2800
New Orleans, LA 70112-2401
(504) 524-6221

CERTIFICATE OF SERVICE

I do hereby certify that I have on this _____14_____ day of
_____March_____, 2001, served a copy of the foregoing
pleading on counsel for all parties to this proceeding, by mailing same
in the United States Mail, properly addressed and first class postage
prepaid

[2]SEACOR did not name Hart Industries, Inc. as a defendant in its First Supplemental and Amending
Complaint.

-6-

83-8923

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC. | * | CIVIL ACTION |
| | * | NO.  00-0166 |
| VERSUS | | |
| | * | SECTION 'S' (1) |
| HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., ET AL | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## STATEMENT OF UNCONTESTED MATERIAL FACTS
## IN SUPPORT OF MOTION FOR SUMMARY JUDMENT
## PURSUANT TO LOCAL RULE 56.1

Now comes Hart Industries, Inc. and lists the following uncontested material facts in support of its motion summary judgment:

1. The third party complaint filed by LeRoi International, Inc., d/b/a CompAir/LeRoi against Hart Industries was filed pursuant to Federal Rule 14(c), resulting in a tender directly to plaintiffs, SEACOR Marine, Inc. and SEACOR Offshore, Inc.  Pursuant to Rule 14(c), this action has proceeded as if plaintiffs had commenced it directly against Hart Industries, Inc.

2. At all pertinent times, SEACOR Offshore, Inc. and SEACOR Marine, Inc., plaintiffs, as well as third party plaintiffs, LeRoi International, Inc., d/b/a CompAir/LeRoi, have alleged that the fire subject of this litigation was caused in whole or in part as a result of a defective hose allegedly supplied by Hart Industries, Inc. to LeRoi International, Inc., d/b/a

-1-

CompAir/LeRoi.

      3.  At all pertinent times, SEACOR Marine, Inc. and SEACOR Offshore, Inc.,

plaintiffs, have claimed that they purchased the vessel from its builder, Houma Fabricators, Inc.

      4.  At all pertinent times, the compressor which plaintiffs, SEACOR Marine, Inc.

and SEACOR Offshore, Inc. have claimed was the cause of the fire was a component part of the

original construction of the vessel.

      5.  At all pertinent times, it is alleged and admitted solely for the purposes of this

motion for summary judgment that the hose allegedly supplied by Hart Industries, Inc. was a

component part of the compressor which was supplied to plaintiffs by LeRoi International, Inc.,

d/b/a CompAir/LeRoi.

      6.  The vessel was constructed pursuant to a contract assigned to SEACOR

attached as Exhibit "A".

RANDALL L. KLEINMAN (#7445)
JOHN A. STEWART, JR. (#8164)
HULSE & WANEK
1010 Common Street, Suite 2800
New Orleans, LA 70112
(504) 524-6221

CERTIFICATE OF SERVICE

I do hereby certify that I have on this *14* day of
_____ *March* _____, 2001, served a copy of the foregoing
pleading on counsel for all parties to this proceeding, by mailing same
in the United States Mail, properly addressed and first class postage
prepaid.

# SHIPBUILDING CONTRACT

This agreement (this "Agreement") is made by and between Waveland Marine Service, Inc., 115 Landry Street, Patterson, Louisiana (hereinafter referred to as "OWNER") and Houma Fabricators, A Division of L.O.R., Inc. (Georgia), a Georgia Corporation with offices at 1100 Oak Street, Houma, Louisiana (hereinafter referred to as BUILDER").

## WITNESSETH:

## ARTICLE I.

### VESSEL CONSTRUCTION

BUILDER agrees to construct at its yard at Houma, Louisiana, and to test, complete, and deliver afloat dock side at its yard to OWNER, or its nominee and/or assignee, the following described vessel:

One (1) Offshore Supply Vessel, measuring Two Hundred Feet (200') in length overall, Forty-Four Feet (44'0") in molded breadth and Sixteen Feet (16'0") in molded depth (hereinafter the "Vessel"). The Vessel is to be estimated, proposed, and negotiated for construction in accordance with guidance plans furnished by the BUILDER for said purpose. Construction is to be in accordance with final construction plans and specifications prepared by the BUILDER and approved by OWNER. The final construction plans are referred to hereinafter as the "Plans", and the final specifications are referred to hereinafter as the "Specifications". A copy of the Plans and of the Specifications are attached hereto and made a part hereof.

43274_1
File 10167-8



The Plans and Specifications are to be identified by the signature of designated representatives of OWNER and BUILDER.

The Plans and Specifications, upon completion and approval, so identified, are made a part of this Agreement. Any conflict of the requirements of the this Agreement, the Specifications, or the Plans shall have preference first by terms of this Agreement, second by the Specifications, and thirdly by the Plans.

BUILDER agrees to furnish all plant, labor, tools, equipment, and materials necessary for the construction of the Vessel.

The Vessel, when delivered, shall have the following certificates, all of which shall be procured by BUILDER at BUILDER's expense:

(a) Two Tonnage Certificate (Regulatory and ITC-International);

(b) Master Carpenter's Certificate;

(c) All United States Coast Guard Certificates, for inspected vessels under Subchapter L, needed for mineral industry in the Gulf of Mexico;

(d) Any additional equipment or services required to obtain such certificates will be furnished by BUILDER at BUILDER's sole expense;

(e) The Vessel is to be A.B.S. Load Lined, and A.B.S. Classed;

(f) United States Coast Guard Certificate of Documentation; and

(g) Stability Letter with a loading diagram with 2 ft.,
4 ft., 6 ft., 8 ft., 10 ft. VCG.

## ARTICLE II.

### PRICE

In consideration for performance of this Agreement by
BUILDER, OWNER agrees to pay BUILDER as the price the following sum
of FIVE MILLION SEVEN HUNRDED FORTY-SIX THOUSAND EIGHT HUNDRED
SEVENTY-THREE AND 11/100 ($5,746,873.11) Dollars (the "Price").

It is specifically understood and agreed that the Price
will be increased or decreased in strict accordance with the
provisions of Article V hereof, concerning alliterations or changes
(the "Contract Modifications").

## ARTICLE III.

### TERMS OF PAYMENT

The Price set forth in Article II shall be paid by OWNER
to BUILDER, in accordance with the following schedule of progress
payment milestones:

(1)  5% - Signing of contract or within 5 days thereaf-
ter:

$287,343.65

(2)  15% - Start of Construction, loft, layout, fabrica-
tion of frames and bulkheads.

$862,030.97

(3)  20% - Upon fabrication of modules and module plat-
ing:

$1,149,374.62

(4)   15% - Upon erection of hull modules on launch site:

$862,030.97

(5)   20% - Upon erection of hull modules on launch site,
completion of structural welding, and tank testing:

$1,149,374.62

(6)   15% - Upon launch:

$862,030.97

(7)   10% - Upon final acceptance prior to vessel depart-
ing the BUILDER's yard:

$574,687.31

It is agreed that payments of milestone progress payments #2 through #6 made by OWNER to BUILDER within ten (10) days of the BUILDER submitting an invoice to the OWNER, shall be considered timely payments. Milestone progress payments #1 and #7 are to be paid as stipulated on the schedule in Article III.

ARTICLE IV.

OWNER FURNISHED EQUIPMENT

All OWNER furnished equipment must be furnished as stated complete, for application intended, certified for service intended and delivered F.O.B. BUILDER's yard at 1100 Oak Street in Houma, Louisiana, in a timely manner as not to delay the progress of the work.

ARTICLE V.

ALTERATIONS OR CHANGES

If during construction of the Vessel, OWNER desires to make any additions to, deductions from, or alterations in the

Drawings  and/or  Specifications,  OWNER's  Representative
_Danny Fetterman_____ shall give notice in writing to
the Vice President of Marine Operations of the BUILDER or Project
Manager, H. Lawson Hitt, II of the BUILDER, specifying in detail
the changes proposed by OWNER, including the new detailed Plans
and/or Specifications where required.

The OWNER has the option to furnish various items for the
Vessel as outlined in the Specifications and in the Quotation
Letter of May 22, 1996. In the event the OWNER chooses to furnish
any of the items, the BUILDER shall credit the OWNER for the cost
of the said item as reflected in the Specifications, plus 10%. The
OWNER shall have the option to supply but not be limited to the
following items:

   a)   Two EMD 16-645E Main Engines with accessories;

   b)   Two (2) Reintjes WAF 1941 Marine Gears with acces-
        sories;

   c)   Two (2) Detroit Diesel 6-V71, 99 KW Generators with
        accessories;

   d)   One (1) Detroit Diesel 6-V71 Bowthruster Engine
        Coupled to One (1) Twin Disc MG 509 Marine Gear
        with accessories;

   e)   One (1) Detroit Diesel 6-71 Bulk Mud/Liquid Mud
        Drive Engine complete with accessories.

Changes proposed by OWNER must be mutually agreed upon by
OWNER and BUILDER, and BUILDER shall have no obligation to perform
said changes unless a Contract Modification is signed by the OWNER

43274_1
File 10367-1

and the Vice President of Marine Operations of the BUILDER, and said Contract Modification must specify:

(a)  Details of change proposed, including reference to new Plans and/or Specifications, if any;

(b)  Any increase or decrease in the Price because of the cost or savings of the change ordered; and

(c)  The number of days by which the delivery date of the Vessel shall be increased or decreased because of the changes.

ARTICLE VI.

TITLE

Title to the Vessel, to the extent completed, and title to all work, materials and components performed on, installed in or placed on board the Vessel or otherwise delivered to BUILDER's yard or fabricated by the BUILDER shall vest in OWNER immediately upon completion of such work, delivery to BUILDER's yard of materials or fabrication of such components, and payment for same by OWNER. Title to all materials located and components fabricated at BUILDER's yard and all materials and components of BUILDER located elsewhere, for use in the performance of the construction of the Vessel, shall also vest in OWNER to the extent that same have been paid for by OWNER, regardless of whether such materials or components have been installed in or placed on board the Vessel; provided, however, that except as may be otherwise provided for in this Agreement, the risk of loss or damage to such materials, components, work and the Vessel shall remain the liability of

BUILDER, and OWNER shall not be deemed to have waived its rights to require BUILDER to replace, at BUILDER's sole expense, defective, damaged or destroyed workmanship or material, and to deliver the Vessel with the work thereon properly completed as provided for in this Agreement. BUILDER shall retain title to such components, materials and completed work to the extent what such components, work and material have not been paid for by OWNER. Notwithstanding the foregoing, BUILDER shall remain liable for the risk of loss of all workmanship and components and materials if the Vessel is not delivered to or accepted by OWNER.

ARTICLE VII.

HULL NUMBER

A.    The BUILDER shall assign a hull number to the Vessel.

B.    The BUILDER shall affix a plaque showing the name of the BUILDER, the hull number, and the parish in which the Vessel is to be constructed, to the keel of the Vessel, when laid, so as to be clearly visible at all times during the performance of the work and until the decking is laid. At such time as the decking is laid, the aforementioned plaque shall be removed and permanently affixed to the weather deck so as to be clearly visible at all times during continuance of the work and after completion.

C.    The BUILDER shall mark or stamp on all materials, title to which is in the OWNER, the hull number of the Vessel of which such materials will form a part, upon the delivery of such materials to the BUILDER's yard.

D.    The BUILDER shall mark or stamp on all components, title to which is in the OWNER, the hull number of the Vessel of which such components will form a part, upon commencement of the work hereunder or fabrication of such components.

## ARTICLE VIII.

### UCC FINANCING STATEMENT

BUILDER shall execute and duly file a Uniform Commercial Code financing statement satisfactory in form and substance to OWNER confirming the provisions set forth in this Agreement regarding title in OWNER to the work, materials and components. Upon delivery of the Vessel and payment in full of the Price as provided in this Agreement, OWNER shall terminate such UCC financing statement.

## ARTICLE IX.

### DELIVERY OF VESSEL

The Vessel shall be delivered F.O.B. BUILDER's slip in Houma, Louisiana, on or before 330 calendar days from the signing of this Agreement.

It is specifically understood that delivery of the Vessel within a thirty (30) days grace period after the above specified date shall be considered as timely delivery.

BUILDER agrees to complete and deliver the Vessel to the OWNER free and clear of all liens, claims, or other encumbrances to OWNER, afloat in a seaworthy condition and ready and fit for the service intended.  The Vessel will be delivered to the OWNER at a safe berth floating alongside BUILDER's yard, Houma, Louisiana.

43774_1
F:\ 10167-1

-8-

OWNER agrees to accept delivery when so tendered, such delivery also transferring to OWNER risk of loss.

All agreements of the BUILDER concerning time and dates of delivery under the provisions of this Agreement shall be subject to "Force Majeure", which terms is hereby declared to include all actions whatsoever (except inclement weather of the ordinary seasonable nature) beyond the control of the BUILDER, among which, but not exclusive of others, are the following: Acts of God, war between the United States and other Foreign country; civil war; riot or insurrection in the United States, preparations for war; requirements, urgency, or intervention of civil, naval or military authorities of other agencies of Government; arrests and restraints of rulers and people; blockades, embargoes; vandalism, sabotage; epidemics, strikes, lockouts, or other industrial disturbances; earthquakes, landslides, floods; hurricanes and cyclonic storms; damage by lightening, explosions, collisions, strandings, fires; delays in delivery of materials which BUILDER by reasonable precaution cannot avoid (provided that BUILDER will use diligence in the event it becomes aware of any possible delay to obtain such materials from another manufacturer or supplier; government priorities; delays of carriers by land, water, or air; delays of subcontractors of non delivery of all OWNER furnished material and equipment, if applicable and delays due to changes authorized by the OWNER pursuant to Article V hereof.

Promptly upon learning of any "Force Majeure" event which may affect the date of delivery, BUILDER shall notify OWNER in

writing and shall furnish an estimate of the extent of the probable delay.

## ARTICLE X.

### TAXES

BUILDER shall pay all local, state and federal taxes, workmen's compensation, security or old age benefits, of any nature and any other taxes, changes, assessments and contributions of any kind now or hereinafter imposed upon, or with respect to or measured by, materials and labor utilized in the construction of the Vessel hereunder, or the wages, salaries, or other remuneration's paid to persons employed in connection with the performance of this Agreement, except on the work, materials and components, title to which has been transferred to OWNER by the provisions of Article VI hereinabove.

## ARTICLE XI.

### INSPECTION, ACCESS and TESTS

OWNER and OWNER designated representatives shall be given a reasonable opportunity to inspect the Vessel at all times during construction, in order to determine compliance of materials, workmanship, and detail of construction, provided that only the OWNER and/or its designated representative shall be authorized to deal and consult with BUILDER's Vice President for Marine Operations and/or Project Manager, who is hereby designated as BUILDER's representative in matters involving any changes and additional costs.

43774_1
Fik 1⊡67-4

-10-

OWNER shall make inspections promptly, and upon completion of the Vessel shall promptly accept the Vessel, if in accordance with the Plans and Specifications.

ARTICLE XII.

WARRANTY

BUILDER warrants that the work to be performed under this Agreement shall, at the time of delivery:

(1)  Fully conform to the requirements of the Plans and Specifications and Plans;

(2)  Be of first class workmanship and quality;

(3)  Be free of all defects in material and workmanship; and all material shall be new and unused; and

(4)  Be fit for the purpose for which intended.

If any defects in material or workmanship in the construction of the Vessel under normal conditions of use and service, other than those defects which are due to fair wear, and tear, or misuse, be discovered within 1 year (365 days) after delivery of the Vessel by BUILDER to OWNER, such defects shall be corrected by BUILDER, or the defective parts shall be replaced by the BUILDER at such place as the parties shall mutually agree; provided, however, that in the instance of equipment purchased by BUILDER from others and incorporated in the Vessel, the responsibility of the BUILDER for defects in such equipment shall be limited to the usual guarantee or warranty extended by the manufacturer's supplier of such equipment. The BUILDER, however,

in no way assumes liability, nor shall be held accountable for consequential damages of any nature.

The OWNER shall notify the BUILDER in writing of any defects found in the workmanship during the warranty period, promptly after discovery thereof, and upon such notification, BUILDER shall have the right, at its own expense, to make an investigation of the reported defect before corrective work is undertaken.

### ARTICLE XIII.

### DEFAULT

In the event OWNER does not take delivery of the Vessel within thirty (30) days of the Delivery Date, the BUILDER shall have the option forthwith to terminate this Agreement, by giving written notice of its intention so to do. Any termination of this Agreement made pursuant to the provisions of this Article shall not relieve the party receiving such notice from any accrued obligations hereunder due and owing at the date of such termination.

### ARTICLE XIV.

### EFFECT OF WAIVER

No waiver by either party hereto of any default by the other in the strict and literal performance of or compliance with any provisions, conditions, or requirement herein shall be deemed to be a waiver of strict and literal performance of and compliance with any other provision, condition, or requirement herein, nor to be a waiver of, or in any manner release such other from, strict

compliance with any provision, condition, or requirement in the future.

### ARTICLE XV.

### ASSIGNMENT

This agreement and the benefits of any payments made hereunder may be assigned by OWNER without the consent of BUILDER, and title to the Vessel and materials entering into the construction thereof vested in OWNER may be transferred at any time to any individual, firm, or corporation which it may designate, provided the OWNER guarantee the performance of all its obligations hereunder by such assignee, and provided further that such assignment of transfer shall not in any way violate any law of the United States of America or any rule or regulation issued or promulgated by any department, agency, or instrumentally of the United States Government. BUILDER agrees to execute any documents required to effectuate any such assignment or transfer and the documentation of the completed vessel. This agreement shall not be assignable by BUILDER without the consent of OWNER.

### ARTICLE XVI.

### SHIPPING ACT, 1916

OWNER warrants that it is a citizen of the United States within the meaning of the Shipping Act, 1916, as amended (46 U.S.C. §801, et seq.), and that it is qualified to enter into this agreement and to take to the Vessel to be constructed hereunder and that the provisions of the Shipping Act, 1916, as amended, imposing restrictions upon transfer to persons not citizens of the United

States any proclamations, orders or regulations thereunder, are inapplicable.

## ARTICLE XVII.

### INSURANCE AND INDEMNITY

A.    BUILDER shall procure a Builder's Risk Policy covering Hull and all of the equipment and materials to be incorporated into the Hull (including OWNER furnished equipment) to its full value.  In the event of any partial loss(es), the proceeds of said policy covering said partial loss(es) shall be paid directly to BUILDER and used by BUILDER in the repair or replacement of the damaged areas.  In the event that a "Constructive Total Loss" (as that term is defined in the Builder's Risk Policy) should occur subsequent to the Hull being substantially complete, OWNER shall be reimbursed out of the proceeds of such policy of all progress payments previously made to BUILDER and for the cost of any OWNER furnished equipment or materials destroyed as a result of such Constructive Total Loss.  All other proceeds of the policy shall be paid to BUILDER and OWNER, as their interests may appear.  BUILDER and Owner shall be named assured on said Builder's Risk Policy.

B.    Notwithstanding any transfer of title as a result of OWNER's periodic payments as provided in Article III hereinabove and the transfer of title as provided in Article VI hereinabove, BUILDER hereby agrees to indemnify, defend and hold harmless OWNER, its officers, employees, agents, and affiliates from and against any and all claims, demands or causes of action, for damages or

injury to any person (including death or any survivor's action) or any property, and against all loss, liability and expense, including attorneys' fees, howsoever arising, whether or not based in whole or in part on any negligent act or omission of OWNER, or whether or not based in whole or in part on fault or strict liability or unseaworthiness attributable to OWNER, in any way directly or indirectly connected with the activities and services of BUILDER, or any of BUILDER's agents, employees, subcontractors or invitee. However, BUILDER shall not be required to defend, hold harmless and indemnify OWNER for any claims caused solely by the negligence of OWNER or any subcontractor hired directly by OWNER. Further, BUILDER shall not be required to defend, hold harmless and indemnify OWNER for any claims caused solely by an unseaworthy condition which occurs after the delivery provided for in Article IX. This shall not in any way affect any of the warranty provisions set forth in Article XII hereinabove.

BUILDER further agrees to procure and maintain, at its sole cost and expense, insurance to fully cover all of its obligations set forth in this Agreement, and to have all of its insurance endorsed to name OWNER as an additional insured, with waiver of subrogation in favor of OWNER. This shall include, but not be limited to, the following insurance:

> (1) Workman's Compensation Insurance at statutory amounts, with Longshoreman and Harbor Worker's Compensation Act coverage and Employer's Liability Insurance (including Jones Act) in the amount of at

least $1 million, with such insurance endorsed to
provide waiver of subrogation in favor of OWNER.

(2) Comprehensive General Liability coverage against
damage to property, personal injury and/or death of
at least $10 million, properly endorsed to have any
"watercraft exclusion" deleted and to remove any
such other impediment to coverage as an additional
insured for OWNER.

All such insurance shall be considered primary to any
insurance carried by OWNER, and any "other insurance" clauses are
to be deemed deleted as to OWNER. Further, all deductibles shall
be the sole responsibility of BUILDER.

ARTICLE XVIII.

MEDIATION AND ARBITRATION

A.    All disputes arising in connection with Agreement or
having a significant relation to this Agreement, regardless of the
label attached to the dispute, shall be finally settled under the
Commercial Arbitration Rules of the American Arbitration Associa-
tion (hereinafter "AAA") by one mediator, or if necessary, by one
or three arbitrator(s) appointed pursuant to those Rules.

B.    For purposes of this Agreement, mediation shall be
mandatory and any of the AAA's rules requiring the consent of both
parties for mediation shall be deemed satisfied and/or waived, upon
submission of a dispute to the AAA. If mediation fails to resolve
this dispute, then the parties agree to appoint one arbitrator to
decide their dispute, or, failing agreement on one arbitrator to

have their dispute decided by three arbitrators appointed in accordance with the AAA's rules.

C.   For purpose of this Agreement, any mediation or arbitration shall be conducted pursuant to the substantive laws of Louisiana and the United States of America, with allowance for standard custom and practice in the industry.  The mediator and/or arbitrator(s) shall have the authority to adopt this Agreement and to make a partial arbitral award if warranted.

ARTICLE XIX.

AGREEMENT EMBODIES ALL AGREEMENTS

This Agreement embodies all agreements between the parties hereto and any promises, agreements, representatives, or obligations which may have been previously made or undertaken by either party and not set out herein are canceled and shall be of no further force or effect.

ARTICLE XX.

CONSTRUCTION OF AGREEMENT

This contract Agreement shall be constructed according to the laws of the State of Louisiana.

IN WITNESS WHEREOF, the OWNER and BUILDER cause this Agreement to be executed in quadruplicate by their duly authorized officer, each officer signing the Agreement at the place of his domicile and causing to be placed beside his name the date on which he signed the Agreement and the signature of a witness.  This

agreement becomes effective on the date on which either officer signs the Agreement.

WAVELAND MARINE SERVICE, INC.
P.O. Drawer 189
115 Landry Street
Paterson, LA 70392-0189

DATE: _May 30, 1996_            By: _O.C. Felt____

                                    F. C. FELTERMAN
                                    President

WITNESS: _Richard C. Inling_


HOUMA FABRICATORS, A Division of
  L.O.R., Inc. (Georgia)
1100 Oak Street
Houma, LA 70363

DATE: _May - 30 TH 1996_        By: _O.E. Monnier Jr.___

                                    O. E. MONNIER, JR.
                                    Vice President

WITNESS: _H Lowry KH___

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SEACOR MARINE, INC. AND                    *                    CIVIL ACTION
SEACOR OFFSHORE, INC.
                                           *                    NO. 00-0166
VERSUS
                                           *                    SECTION 'S' (1)
HOUMA FABRICATORS, A DIVISION
OF L.O.R., INC., ET AL                     *

*    *    *    *    *    *    *    *    *    *    *

## NOTICE OF HEARING

TO:
Campbell E. Wallace, Esq.                          Ronald A. Johnson, Esq.
Chaffe, McCall, Phillips, Toler                    Johnson, Johnson, Barrios & Yacoubian
  & Sarpy                                          701 Poydras Street, Suite 4900
1100 Poydras Street, Suite 2300                    New Orleans, LA 70139
New Orleans, LA 70163-2300
                                                   Craig R. Nelson, Esq.
Rufus C. Harris, III, Esq.                         Ward Nelson
Alfred J. Rufty, III, Esq.                         1539 Jackson Avenue, 6th Floor
HARRIS & RUFTY                                     New Orleans, LA 70130
1450 Poydras Street, Suite 1510
New Orleans, LA 70112

Robert J. Young, Jr., Esq.
Young, Richaud & Myers
1100 Poydras Street, Suite 1515
New Orleans, LA 70163

PLEASE TAKE NOTICE THAT a hearing will take place on Hart Industries,

Inc.'s motion for summary judgment on the ____4th____ day of ____April____, 2001 at

____10____ a.m., or as soon thereafter as counsel may be heard.

_____
RANDALL L. KLEINMAN (#7445)
JOHN A. STEWART, JR. (#8164)
HULSE & WANEK
1010 Common Street, Suite 2800
New Orleans, LA 70112-2401
(504) 524-6221

CERTIFICATE OF SERVICE
I do hereby certify that a copy of the foregoing
pleading has been served upon all parties through their
attorney(s) of record by:  ☐ transmitting same via
facsimile, ☐ by hand, and/or ☑ depositing same in the
United States mail, properly addressed and post-
pre-paid this 14 day of March
2001.