905-6587



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC., et al. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO.: 00-0166 |
| | * | |
| HOUMA FABRICATORS, a division of | * | SECTION: "S" |
| L.O.R. INC., et al. | * | |
| | * | MAGISTRATE: (1) |

* * * * * * * * * * * * * * * * * * * * * * *

**MOTION FOR SUMMARY JUDGMENT**

FILED: MARCH _____, 2001    _____
                              DEPUTY CLERK

Defendant, The Gates Rubber Company (hereinafter "Gates"), moves for a summary judgment dismissing it from this lawsuit on the ground there is no evidence or proof that Gates manufactured the hose plaintiff and third-party plaintiffs attempt to make the subject of their product liability claims against it. Attached hereto as Exhibit "A" is the Affidavit of Michael A. Cottrell who, as Vice-President, Engineering Worldwide Hose and Connectors, has examined the remains of the alleged hydraulic hose which allegedly was involved in the fire made the subject of this lawsuit. Attached to Cottrell's Affidavit as Exhibits "1" and "2" are photographs of subject hose provided to him by plaintiffs. Also attached as Exhibit "B" is the deposition testimony of Roger Hart, attached as Exhibit "C" is the deposition of Ron Keen, attached as Exhibit "D" is the deposition of Ron Naquin, attached as Exhibit "E" is the deposition of Daniel Felterman,

attached as Exhibit "F" is the deposition of Clayton Breaux and, attached as Exhibit "G" is the deposition of Clay Stribling.

Because there are no identifying characteristics of this hose to identify who the manufacturer of same was, Gates submits it is entitled to a summary judgment as no product it manufactures or sells can be identified as being a cause of subject accident much less even existing on the M/V GALAXIE at the time of the fire made the subject of this lawsuit. Accordingly, it must be dismissed as a defendant.

New Orleans, Louisiana. March 16, 2001.

Respectfully submitted,

Craig R. Nelson, (#8755)
Ward Nelson, LLC
Sixth Floor, 1539 Jackson Avenue
New Orleans, Louisiana
(504) 561-5000

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this ___ day of _____, 2001, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by the United States mail, properly addressed, and first class postage prepaid.

_____

## NOTICE

**PLEASE TAKE NOTICE** of **April 4, 2001** at **10:00 a.m.** The Gates Rubber Company will bring this motion on for hearing before the Court or as soon thereafter as practicable.

New Orleans, Louisiana. March 16, 2001.

Respectfully submitted,

Craig R. Nelson, (#8755)
Ward Nelson, LLC
Sixth Floor, 1539 Jackson Avenue
New Orleans, Louisiana
(504) 561-5000

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC., et al. | * | CIVIL ACTION |
| | * | |
| Versus | * | NO.: 00-0166 |
| | * | |
| HOUMA FABRICATORS, a division of | * | SECTION "S" |
| L.O.R., INC., et al. | * | |
| | * | MAGISTRATE (1) |

* * * * * * * * * * * * * * * * * * * * * * * *

### STATEMENT OF UNCONTESTED MATERIAL FACTS

FILED: MARCH _____, 2001          _____
                                             DEPUTY CLERK

The Gates Rubber Company ("Gates"), defendant herein, respectfully submits the following uncontested material facts in support of its motion for summary judgment:

1. LeRoi manufactured the compressor that allegedly contained the rubber hose which ruptured and caused the fire.

2. ACE was a local distributor of LeRoi products.

3. Houma Fabricators obtained the compressor from ACE and installed it on Seacor's vessel.

4. Hart Industries, Inc. is a supplier of hoses from various manufacturers, including but not limited to Gates.

1

5. The hose itself contains no identifying characteristics which would indicate that Gates manufactured the hose.

6. Gates' Vice-President, Engineering Worldwide Hose and Connectors, Mr. Michael A. Cottrell, cannot determine whether Gates had manufactured the hose. *See*, affidavit of Cottrell, exhibit A.

7. Hart's president, Mr. Roger Hart, has no knowledge as to the manufacturer or make of the hose involved in the fire aboard the M/V GALAXIE. *See* deposition of Hart, p. 63, exhibit B.

8. Mr. Hart does know of at least seven (7) other manufacturers who make fittings like the hose assembly involved in the fire on the M/V GALAXIE. *Id.* at 63-64.

9. The designation "2405-13/8" on the fitting does not impart any information regarding the manufacturer of the hose involved in the fire. *Id.* at 76.

10. LeRoi's representative and director of engineering, Mr. Ron Keen, does not know what type of hose was on the compressor. *See* deposition of Keen, p. 19, exhibit C.

11. ACE's president, Mr. Ron Naquin, does not know who manufactured the hose that was on the LeRoi compressor at the time of the fire. *See* deposition of Naquin, pp. 66, 87, 94, 133-134, exhibit D.

12. None of plaintiff's representatives and employees can identify the manufacturer of the hose it alleges to have caused the fire. *See* deposition of Daniel C. Felterman, pp. 128, 139, exhibit E; deposition of Seacor's general manager of the offshore supply vessel division Clayton Breaux, p. 352, exhibit F; and, deposition of Seacor's vessel manager Clay Stribling, p. 19, exhibit G.

New Orleans, Louisiana. March 16, 2001.

Respectfully submitted,

Craig R. Nelson (La. Bar No. 8755)
Ward Nelson, L.L.C.
1539 Jackson Avenue
New Orleans, Louisiana 70130
(504) 561-5000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by facsimile and by placing same in the United States mail, postage prepaid and properly addressed, this ___ day of _____, 2001.

Craig R. Nelson

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC., et al. | * | CIVIL ACTION |
| | * | |
| Versus | * | NO.: 00-0166 |
| | * | |
| HOUMA FABRICATORS, a division of | * | SECTION "S" |
| L.O.R., INC., et al. | * | |
| | * | MAGISTRATE (1) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF GATES'**
**MOTION FOR SUMMARY JUDGMENT**

FILED: _____        _____
                                                                    DEPUTY CLERK

**MAY IT PLEASE THE COURT:**

This memorandum is respectfully submitted on behalf of The Gates Rubber Company ("Gates") in support of its motion for summary judgment to dismiss plaintiff's and third-party claims against it.

**I.     Factual Background**

This suit involves a property damage claim by Seacor Marine, Inc. ("Seacor") for damages sustained by its vessel, the M/V GALAXIE in a fire which started in the engine room. Plaintiff has alleged that a flexible rubber hose attached to a compressor ruptured and spewed oil onto the hot engine and/or compressor, which then ignited. Plaintiff initially named Houma Fabricators, Air Compressor Energy Systems, Inc. ("ACE"), Dresser Industries, Inc., and LeRoi International, Inc. d/b/a Compair LeRoi ("LeRoi"). LeRoi manufactured the compressor that allegedly contained the rubber hose which ruptured and caused the fire. ACE was a local distributor of LeRoi products. Houma Fabricators obtained the compressor from ACE and

1

installed it on Seacor's vessel. LeRoi then filed a third-party complaint against Gates and Hart Industries, Inc. ("Hart"), alleging that Gates manufactured the hose and that Hart sold the hose which at some point was installed and replaced the hard piping on the LeRoi compressor.

There is absolutely no evidence identifying Gates as the manufacturer of the ruptured hose. The hose itself contains no identifying characteristics which would indicate that Gates manufactured the hose. Gates' Vice-President, Engineering Worldwide Hose and Connectors, Mr. Michael A. Cottrell, personally examined the remnants of the hose at issue in this litigation, and could not determine whether Gates had manufactured the hose. *See*, affidavit of Cottrell, exhibit A.

Likewise, Hart's president, Mr. Roger Hart, testified at his deposition that he had no knowledge as to the manufacturer or make of the hose involved in the fire aboard the M/V GALAXIE. *See* deposition of Hart, p. 63, attached hereto as exhibit "B". Mr. Hart then proceeded to name seven other manufacturers–which he noted was only a few–who made fittings like the hose assembly involved in the fire on the M/V GALAXIE. *Id.* at 63-64. Later, he confirmed that the designation "2405-13/8" on the fitting does not impart any information regarding the manufacturer of the hose involved in the fire. *Id.* at 76.

Similarly, LeRoi's representative and director of engineering, Mr. Ron Keen, admitted in his deposition that he did not know what type of hose was on the compressor. *See* deposition of Keen, p. 19, attached hereto as exhibit "C". Nor did ACE's president, Mr. Ron Naquin, know who manufactured the hose that was on the LeRoi compressor at the time of the fire. *See* deposition of Naquin, pp. 66, 87, 94, 133-134, attached hereto as exhibit "D". Finally, none of plaintiff's representatives and employees could identify the manufacturer of the hose it alleges to have caused the fire. *See* deposition of Daniel C. Felterman, pp. 128, 139, attached hereto as exhibit "E"; deposition of Seacor's general manager of the offshore supply vessel division Clayton Breaux, p. 352, attached hereto as exhibit "F"; and, deposition of Seacor's vessel manager Clay Stribling, p. 19, attached hereto as exhibit "G". By contrast, no one has yet to

2

identify positively that the ruptured hose was manufactured by Gates. Accordingly, Gates should be dismissed from the litigation.

II.     **Legal Argument and Authorities**

The Fifth Circuit has recognized the importance of summary judgments in the conflict of product liability litigation. In the *en banc* decision of *Little v. Liquid Air Corp.*, 37 F.3d 1069 14,081 (5th Cir. 1994), the court stated, "We emphasize that summary judgment should be granted and will be affirmed by this court when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict. We thus reject the reasoning of the panel and affirm the district court." In *Fontenot v. Upjohn, Co.*, 780 F.2d 1190, 1195 (5th Cir.1986), the court directly addressed the use of summary judgment in products liability cases, stating:

> The crucial question to the court is whether there is a "genuine issue" of fact concerning any initial element of the claim on which judgment is being sought. If the moving party can show that there is no evidence whatsoever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a fruitless exercise, baited for an inevitable result, but at a continued expense for the parties, the preemption of a trial date that might have been used for other litigants waiting impatiently in a judicial queue and a burden on the court and the taxpayer.

The claims against Gates are based solely on the premise that Gates is the manufacturer of a defective hose that caused damage. The Fifth Circuit has recognized that under Louisiana product's liability law, a plaintiff cannot prove any set of facts that would entitle it to relief without identifying the particular manufacturer of the product purported to have caused the damage. *Jefferson v. Lead Industries Association, Inc.*, 106 F.3d 1245 (5th Cir. 1997). The Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La.Rev.Stat. Ann. § 9:2800.52 (West 1988); *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir.1995); *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 706 (5th Cir.1995). A plaintiff may not recover from a manufacturer for damage *1251 caused by a product on the basis of any theory of liability not set forth in the

3

LPLA. La.Rev.Stat. Ann. § **9:2800.52** (West 1988). The LPLA provides that a manufacturer of a product is liable to a claimant for damage "proximately caused" by a characteristic of the product that rendered it "unreasonably dangerous" when the damage arose from a reasonably anticipated use of the product by the "claimant or another person or entity." *Id.* at § 9:2800.54A. A claimant may prove that the product was "unreasonably dangerous" only under one of the following four theories: (1) that it was unreasonably dangerous in construction or composition; (2) that it was unreasonably dangerous in design; (3) that it was unreasonably dangerous because of inadequate warning; or (4) that it was unreasonably dangerous because of nonconformity to an express warranty. *Id.* at § 2800.54(B)(1-4). Thus, the elements of a products liability cause of action under the LPLA are proof of the following:

> 1. that the defendant is a manufacturer of the product;
> 2. that the claimant's damage was proximately caused by a characteristic of the product;
> 3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and
> 4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Id.* § at 2800.54.

Plaintiff's obligation to identify the manufacturer of the allegedly defective product is inherent in the LPLA's requirement that plaintiff prove proximate causation. *Jefferson v. Lead Industries Association, Inc.*, 106 F.3d 1245 (5th Cir. 1997) (opinion by J. Vance, incorporated by reference and attached to the Fifth Circuit's opinion as Appendix A). The statute provides in Section 2800.54(A) that

> the **manufacturer** of a product shall be liable to a claimant for damages *proximately caused* by a characteristic of the product .... (emphasis added).

Section 2800.54(D) states that plaintiff has the burden of proving the elements of Subsection 2800.54(A). Plaintiff thus has the burden of proof that a manufacturer's product proximately caused its damages. In addition, the statute provides that the LPLA "establishes the exclusive theories of liability for manufacturers for damage *caused* by their products." *Id.* at § 2800.52

4

(emphasis added). Further, Judge Vance noted that Louisiana jurisprudence–both before and after the adoption of the LPTA–requires the identification of a product's manufacturer in product liability cases.[1]

In a case factually similar to the instant case, the Fifth Circuit affirmed a directed verdict for a defendant, based on the lack of evidence that it had manufactured an allegedly defective steel cable. *Aymond v. Texaco, Inc.*, 554 F.2d 206 (5th Cir. 1977). There, an injured plaintiff and two defendants asserted claims against Jones & Laughlin Steel Corporation, alleging its liability as a manufacturer of the broken cable. The court explained that to establish Jones & Laughlin's liability as a manufacturer, the plaintiff and third-party plaintiffs had to prove that: (1) Jones & Laughlin was the manufacturer; (2) the cable was defective; (3) the defect caused Aymond's injuries. *Id.* at 210-211. The court then examined the evidence–or lack thereof–regarding the identity of the manufacturer, and stated:

> The cable could not be traced directly to the Jones & Laughlin Supply Division's local store in Morgan City, Louisiana, and no evidence was presented that the store was the drilling contractor's sole supply source for the type of 7/8 cable which failed. The Morgan City store, itself only a part of a subsidiary of defendant Jones & Laughlin Steel Corporation, did sell 7/8 cable to the contractor during a period before the accident. However, cable sold by the store was unmarked as to manufacturer, and the store's cables were manufactured by other entities in addition to Jones & Laughlin. The store's records indicated that all cables sold to Falcon in the period before the accident were from manufacturing sources other than Jones & Laughlin. Conjectures about the possibility that Jones & Laughlin manufactured the particular cable are supported by a logic that is

---

[1] *See Fricke v. Owens-Corning Fiberglas Corp.*, 618 So.2d 473, 475 (La.App.1993) (pre-1988 accident) (affirming summary judgment and noting, "we cannot abandon general rule of products liability requiring identification of the product with the manufacturer"); *Harrison v. Gulf S. Beverages, Inc.*, 438 So.2d 261, 262 (La.App. 4th Cir.), *writ denied,* 443 So.2d 582 (La.1983); *Simms v. Baton Rouge Coca-Cola Bottling Co.*, 469 So.2d 52, 54 (La.App. 1st Cir.1985), *writ denied,* 470 So.2d 882 (La.1985); *Roberts v. Louisiana Coca-Cola Bottling Co.*, 566 So.2d 163, 167 (La.App. 4th Cir.1990). Cases involving post-1988 accidents include *Baldwin v. Kikas*, 635 So.2d 1324, 1327 (La.App. 4th Cir.1994), *writ denied,* 643 So.2d 144 (La.1994) (affirming summary judgment because of insufficient evidence of identity of manufacturer or seller); *see also Maldanado v. State Through Dept. of Transportation*, 618 So.2d 537, 538-39 (La.App. 4th Cir.1993), *writ denied,* 623 So.2d 1309 (La.1993) (proof of identity of manufacturer is element of plaintiff's claim).

5

> linked only tenuously if at all, to evidence. An absence of "substantial evidence" on this one element of manufacturer's liability suffices to support a directed verdict.

*Id.* The evidence in the instant case is similarly tenuous. Like the cable in *Aymond*, the rubber hose in the instant case is unmarked. Gates is not the sole supply source for the hose that allegedly ruptured in the instant case. There is no proof that this hose is the original hose outfitted onto the compressor with the Gates fittings. There are no records indicating where this particular rubber hose was purchased or who manufactured it. Accordingly, the claims against Gates should be dismissed.

A similar lack of evidence led a Louisiana appellate court to grant a writ of certiorari and enter summary judgment for a defendant who could not be identified as the manufacturer in *Maldanado v. State, through DOTD*, 618 So.2d 537 (La. App. 4th Cir. 1993). In that case, the plaintiff who was injured after being placed in handcuffs sued the police officer, the state, and Smith & Wesson, alleging that Smith & Wesson defectively designed and manufactured the handcuffs. Smith & Wesson filed a motion for summary judgment after the depositions of both plaintiff and the arresting officer had been taken, interrogatories, requests for production of documents and requests for admissions had been propounded. It argued that the only persons who might know the manufacturer of the handcuffs used during the plaintiff's arrest were the arresting officer and the plaintiff. Both of these witnesses admitted under oath that they did not know who manufactured the handcuffs. Based on this state of the evidence, the court ordered summary judgment in favor of Smith & Wesson. Similar testimony exists in the instant case. As noted in the statement of the facts above, not a single witness has been able to identify the manufacturer of the hose that allegedly ruptured in the instant case. Because Gates cannot be identified as the manufacturer, it is due to be dismissed from this litigation.

### III.  Conclusion

In conclusion, no party has come forward with any evidence to identify Gates as the manufacturer of the hose that allegedly ruptured and caused the fire on the M/V GALAXIE. Because identity of the manufacturer is an essential element to imposing liability on Gates,

6

plaintiff has the burden of establishing this element by a preponderance of the evidence. Without any evidence whatsoever, plaintiff cannot hope to carry this burden, and its claim against Gates should be dismissed.

Respectfully submitted,

Craig R. Nelson (La. Bar No. 8755)
Ward Nelson, L.L.C.
1539 Jackson Avenue
New Orleans, Louisiana 70130
(504) 561-5000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by facsimile and by placing same in the United States mail, postage prepaid and properly addressed, this 16 day of March, 2001.

Craig R. Nelson

7

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED