FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 28 PM 1:08

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SEACOR MARINE, INC. AND** | * | CIVIL ACTION |
| **SEACOR OFFSHORE, INC.** | * | |
| | * | NO.: 00-0166 |
| Plaintiffs | * | |
| | * | SECTION: "S" (1) |
| **VERSUS** | * | |
| | * | |
| **HOUMA FABRICATORS, A DIVISION** | * | |
| **OF L.O.R., INC., AIR COMPRESSOR** | * | |
| **ENERGY SYSTEMS, INC., DRESSER** | * | |
| **INDUSTRIES, INC. , AND LEROI** | * | |
| **INTERNATIONAL, INC. D/B/A** | * | |
| **COMPAIR LEROI** | * | |
| | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \*

### SEACOR'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO HOUMA'S SSUMMARY JUDGMENT MOTION

In accordance with the Court's request at the recent hearing of March 7, 2001, SEACOR respectfully submits this supplemental memorandum in support of its motion for

1

a partial summary judgment against defendant, Houma Fabricators, a division of L.O.R., Inc. ("Houma"), and in opposition to Houma's motion for summary judgment.

### A. Houma Owes SEACOR Indemnity Under the Plain Language of the Contract's Indemnity Clause

At the recent hearing, Houma presented a tortured interpretation of the indemnity clause in the Shipbuilding Contract. Houma argued from concepts of title, warranty, and risk of loss that its indemnity obligation ceased the moment of the vessel's delivery to SEACOR. Yet there was one sure sigh that Houma's indemnity-clause interpretation was wrong: It utterly ignored the language of the indemnity clause!

This was for good reason, for the language of the clause plainly calls for Houma to indemnify SEACOR against all losses arising from defects existing in the vessel at the time of delivery.

In another sure sign that its indemnity-clause argument is wrong, Houma now rejects the very interpretation that it advanced at the hearing. At the hearing, Houma claimed that its contractual indemnity obligation ceased entirely at the moment of the vessel's delivery to SEACOR. Based on that contention, Houma urged that its indemnity obligation accordingly does not apply where, as here, a pre-delivery defect is alleged to have caused a post-delivery loss.

The Court seemed skeptical and essentially asked: How can indemnity be owed only for pre-delivery losses when the language of the clause points not to the time of the loss but rather to the time the defect arose (pre-delivery versus post-delivery) as the determining

factor in whether indemnity is owed? Houma had no real answer. But still Houma held its ground and reiterated the view that indemnity is not owed for post-delivery losses.

Since the hearing Houma's interpretation has changed. Houma now concedes that it would owe indemnity for post-delivery losses *to third parties* – only not, it now says, for post-delivery losses *to SEACOR's own property*. Our response is the same: READ THE CONTRACT.

Nowhere in the words of the contract can this distinction be found. In clear and explicit language, the contract states that Houma owes SEACOR indemnity "against all loss ... and expense, ... howsoever arising, ... in any way directly or indirectly connected with the activities and services of [Houma] or ... [its] subcontractors." In accordance with the plain and ordinary meaning of these words, if (as SEACOR maintains) the GALAXIE fire loss resulted from a defective condition present in the vessel at the time of delivery, then SEACOR is entitled to indemnification under this clause.

Houma does not explain how its (new) interpretation can be squared with the words of the indemnity clause. Houma does not tell this Court how it can ignore that plain language in favor of Houma's intricate construct based on title, warranty, and risk of loss concepts. Again, this is for good reason, for the law is clear: the contract is the law between the parties, and the unambiguous language of the indemnity clause should be enforced as written.

Having no basis in the contractual language for its views, Houma instead purports to rely on "logic and common sense." Of course, Houma said the same thing at the hearing about its last interpretation. It is not, as Houma suggests, preposterous that Houma should

3

have agreed to indemnify SEACOR against losses caused by Houma's provision of a defective vessel. As between a ship manufacturer/seller and an innocent purchaser, it is perfectly fair and appropriate that the loss be borne by the maker and seller of the defective vessel. Houma's appeal to fairness and logic is thus misplaced, and it certainly does not justify ignoring the plain language of the indemnity clause.

If anything, it is Houma's interpretation that clashes with common sense. Houma maintains that the act of the vessel's delivery marked both the transfer from Houma to SEACOR of the risk of loss associated with the vessel and the expiration of the indemnity right as to SEACOR's property losses. Thus, under Houma's view, the indemnity right was essentially meaningless, ceasing to exist at the very moment that the risk of a property loss passed to SEACOR (which is to say, at the very moment that the indemnity right may have been needed).

Although Houma now concedes that the indemnity right extends to losses occurring after delivery when SEACOR is liable to third parties, Houma still clings to the notion that the indemnity right dies at delivery with respect to losses to SEACOR's own property. But on what basis does Houma divine one time limitation for third-party claims and another for first-party claims? There assuredly is no language in the indemnity clause that supports this random line-drawing. Nor does Houma cite any law that would dictate the result it advocates. Houma's interpretation is at odds with the unambiguous language of the contract and it should be rejected.

In weaving its intricate argument, Houma also states that SEACOR incorrectly alleged at the hearing that the contract was drafted by Houma. This argument is misleading and wrong. In fact, it was *Houma's counsel* who stated on the record at the hearing that the Shipbuilding Contract was drafted by Houma and is one of its standard contractual forms. Houma is not even consistent in its about-face, writing at page 15 of it post-hearing memorandum that the indemnity language "*may have been* supplied by SEACOR" and at page 19 that the indemnity language "*was* drafted by SEACOR." Both statements are unsupported and are directly at odds with the representations of Houma's counsel at the hearing. But no matter.

The Court's mission is the same, regardless who drafted the clause. Under Louisiana Civil Code Article 2046:

> When the words of a contract are clear and explicit and lead to
> no absurd consequences, no further interpretation may be made
> in search of the parties' intent.

As Revision Comment (b) to this article makes clear, "When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit." Moreover, the interpretation of an unambiguous contract is a question of law for the Court. *See e.g. Brown v. Drilling, Inc.*, 630 So.2d 741, 749 (La. 1994). Here, the language of the indemnity clause is clear and leads to no absurd consequences, and it accordingly should be enforced as written. In the guise of interpreting a contract, a court should not re-write its terms. Yet that is precisely what Houma asks of this Court.

Next, Houma claims that SEACOR's interpretation of the indemnity clause would "render[] the [one-year] warranty limitation meaningless." [See Houma's Supplemental Memorandum at 12]. This is incorrect. The twelve-month time limitation in the warranty clause has had its full effect: namely, it has prevented SEACOR from pursuing an express warranty claim.

But that has nothing to do with SEACOR's rights and Houma's obligations under the indemnity clause. The indemnity clause is an entirely separate provision that contains no specific time limitation. (It imposes a reasonable limit, rather, by excluding from its scope losses from defective conditions that did not exist at delivery). There is no basis in law or in the contract for imposing upon the indemnity clause a twelve-month time limitation that appears nowhere in its terms.

Grasping at straws, Houma even seeks support at page 18 of its memorandum from *East River* for its indemnity clause interpretation, suggesting that the case somehow limits a plaintiff's contract-based claims for a defective product to a claim for breach of warranty (to the exclusion, it is suggested, of a claim under a contractual indemnification clause). This is not a serious argument. *East River* does not even concern contract claims, much less does it repudiate one contract-based remedy in favor of another.

In short, there is one critical fact that Houma continues to ignore but cannot escape: the plain words of the indemnity clause entitle SEACOR to indemnity for the losses alleged here and, since the language is unambiguous, SEACOR is entitled to have this language enforced as a matter of law.

## B. Redhibition

Houma has not and cannot deny that the only Louisiana cases on point have ruled that a vessel manufacturer/seller – such as Houma – is subject to a claim in redhibition and qualifies as a "manufacturer" within the meaning of the redhibition articles.[1] On this issue of Louisiana law, the federal courts should enforce Louisiana law in accordance with the holdings of Louisiana courts. See, e.g., *Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221 (1949) (Judicial decisions are "laws of state" within meaning of Rules of Decisions Act); *Reynolds v. State of Georgia*, 640 F.2d 702,703 (5th Cir. 1981) ("Federal courts are not designed to serve as additional appellate reviewers of state court judgments").

Although these holdings – vessel manufacturer/seller liable in redhibition – are clear, the doctrinal analysis that Houma wishes to substitute in its place is not. Houma employs a three-factor test from the *Duhon* case[2] but, as explained in a Louisiana Law Review article[3] there are various other tests that have been employed by Louisiana courts to ascertain whether a contract is one of sale or one to build. The "fundamental obligation test" essentially asks whether the fundamental object of the contract was that the purchaser wished to pay for a service to be performed or instead wished to be provided with a completed thing. The mere fact that services were performed in connection with the provision of a thing is not

---

[1] See *Poche v. Bayliner Marine Corp.*, 632 So.2d 1170 (La.App. 5th Cir. 1994); *Morvant v. Himel Marine, Inc.*, 520 So.2d 1194 (La.App. 3rd Cir. 1998).

[2] *Duhon v. Three Friends Homebuilder Corp.*, 396 So.2d 559 (La.App. 3rd Cir. 1991).

[3] See L. Ayres, "a distinction between a building contract and a sale," 47 La. L.R. 821 (March 1997).

determinative. As the court explained in *Rasmussen v. Cashio Concrete Corp.*, 484 So.2d 777, 778 (La.App. 1st Cir. 1996):

> We recognize that a defect in installation results from an inadequate performance of a service. But this fact does not transform the transaction in question from a sale into a contract to do. The primary object of the agreement between the parties was the provision of a functioning sewer treatment plant.

The *Rasmussen* court thus held that a redhibition claim could be asserted for defects in the sewer treatment plant, notwithstanding that the performance of the contract entailed the provision of substantial services by the seller. Here, as well, the fundamental thing that SEACOR was after through its contract with Houma was a completed vessel in exchange for a fair price. Under this analysis, the contract should be regarded one of sale.

Another test that has been employed is the "value test," which asks "whether the labor as opposed to the incorporated materials, constitutes the principal value of the contract." *Blue v. Schoen*, 556 So.2d 1364, 1367 (La.App. 5th Cir. 1990). It makes equal sense here to say that the chief value to SEACOR under this contract was the incorporation of the materials that comprised the ship as it does to draw the contrary conclusion.

As recognized in another law review article,[4] "the lines of demarcation between contracts of sale and building contracts have been hotly contested and never have been particularly clear in the jurisprudence."[5]

---

[4] *B. Schewe*, "Obligations: Developments in the Law (1983-84), a faculty symposium, 45 La. L. Rev. 447 (November, 1984).

[5] *Id.* at p. 456.

Whereas the analytical framework on this issue is fuzzy, the holdings of Louisiana courts on the precise issue presented here – whether a vessel manufacturer/seller is subject to a redhibition claim – are clear. Because the Louisiana appellate courts have ruled that a vessel manufacturer/seller is subject to a claim in redhibition, SEACOR respectfully submits that this Court should follow those holdings as the law of Louisiana.

### C. A Motion Pertaining To Article 2524 Is Not Before The Court

In its post-hearing memorandum, Houma also alleges (without supporting citation) for the first time that SEACOR has no claim against it under the implied-warranty provisions of Louisiana Civil Code Article 2524. But that issue is not before the Court. Neither Houma's summary judgment motion nor SEACOR's cross-motion say a thing about Article 2524. (Although Article 2524 was briefly mentioned at the hearing, it was discussed with reference to SEACOR's claims against the now settled-out defendants on the discrete issue of whether SEACOR could maintain a claim against them under this article without privity of contract. That issue obviously does not apply to Houma.) Because Houma has not requested relief with respect to SEACOR's Article 2524 claim, SEACOR will not now address that claim for the first time in this post-hearing supplemental memorandum.

### D. The Stern Thruster

Although defense counsel at the recent hearing suggested that SEACOR had made a warranty claim with respect to the stern thruster, there is no evidence before the Court to this effect. The excerpts from the deposition of Houma's president, Butch Monier, attached to Houma's post-hearing memorandum merely allege that, at one point early in the vessel's life,

SEACOR brought the vessel to Houma saying that it was experiencing vibration at the stern thruster and that, after an inspection, SEACOR asked Houma to conduct repairs and send SEACOR the bill. [See Monnier Deposition, pp. 104-05 (attached as Exhibit "1" to Houma's Post-Hearing Memorandum)].

At the recent hearing, Houma's counsel also incorrectly suggested that the stern thruster fell within its warranty, citing to the provision in the warranty clause regarding equipment purchased from others and integrated into the vessel by Houma. What Houma's counsel failed to acknowledge, however, it that this clause states merely that Houma will honor the warranty of the separate-seller when *Houma* had purchased the equipment from the third party.[6] Houma plainly did not extend warranty protection to equipment purchased separately *by SEACOR*. Because the stern thruster was not purchased from Houma under the Shipbuilding Contract and does not fall within that contract's warranty protection, the policy rationale for *East River* does not apply, further illustrating why the tort bar does not apply to a claim for damage to the stern thruster.

The critical fact regarding the stern thruster is that it unquestionably was purchased from a third-party – not from Houma – and it therefore constituted "other property" from that which was sold to SEACOR under the contract. Defendants have cited no case in the history of maritime jurisprudence in which property purchased from a third-party (and integrated

---

[6] See Shipbuilding Contract at ¶ 12 (attached as Exhibit "A" to SEACORs's Initial Memorandum In Support).

into the vessel or other product) was held to be subject to the *East River* tort bar. This court should not be the first.

### E. Conclusion

For these reasons, and those previously expressed, the Court should deny Houma's motion for summary judgment and should grant SEACOR's motion for a partial summary judgment that Houma is liable – in accordance with the terms of the indemnity clause – for all losses arising from defective conditions existing in the vessel at the time of its delivery to SEACOR. The Court also should rule that Houma is subject to a claim in redhibition as the "manufacturer" of the vessel.

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this 2nd day of March, 2001.

_____
ALFRED J. RUFTY III