FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 APR -2 PM 3:50

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC.<br><br>Plaintiffs<br><br>VERSUS<br><br>HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC., AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPAIR LEROI<br><br>Defendant | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>NO.: 00-0166<br><br>SECTION: "S" (1) |

\* \* \* \* \* \* \* \*

### MEMORANDUM OF SEACOR IN
### OPPOSITION TO GATES' SUMMARY JUDGMENT MOTION

This memorandum is respectfully submitted by plaintiffs, SEACOR Marine, Inc. and SEACOR Offshore, Inc. in opposition to the motion for summary judgment filed by the Gates Company.

1

This matter involves a fire that erupted in the engine room of SEACOR's vessel GALAXIE on January 30, 1999. SEACOR's experts have pinpointed the source of the fire as a failure at the flexible hose on a compressor within the engine room.

The manufacturer of the compressor, CompAir LeRoi, has testified through its corporate representatives that flexible hoses manufactured by Gates were used exclusively on its compressors. LeRoi's purchaser, Air Compressor Energy Systems ("ACES"), has testified that this compressor unit was received from LeRoi with the flexible hose in place.

As result of the fire, SEACOR sustained losses in excess of $400,000, consisting of repair costs and loss of profits due to the vessel's unavailability to its long-term charterer during the period of repairs.

Gates has not yet submitted to deposition in this case. Plaintiffs scheduled the corporate deposition of Gates for February 12, 2001. As the enclosed correspondence reflects, SEACOR adopted the 30(b)(5)(6) notice that had previously been sent to Gates by LeRoi. [See Exhibit "A"], and this was agreed to by Gates' counsel. Just days before the scheduled deposition, however, Gates' counsel advised that the Gates corporate representative suddenly was unavailable for the scheduled date and would not appear. [See Exhibit "B"]. Rather than seek redress from the Court at that time, SEACOR cooperated and agreed to rescheduled the deposition for March 23, 2001.

In an effort to ensure that Gates' corporate deposition was conducted in an orderly fashion, SEACOR's counsel made a point to remind Gates' counsel well in advance of the

2

deposition date that Gates was expected to produce the documentation requested in the Rule 30(b)(5) portion of the deposition notice. This was reiterated in writing in a telefax of March 20, 2001. [See Exhibit "C"].

But Gate's counsel advised that he would not comply with the 30(b)(5) document request. The reason: in Gates' counsel's view, it was not necessary to produce documents relating to Gates' hoses inasmuch as Gates hoses because maintains its hose was not involved. In a phone conversation the day before the scheduled deposition, Gates' counsel confirmed there would be no meaningful document production. Not wishing to engage in a fruitless endeavor, we accordingly canceled the deposition and advised that, if Gates did not agree within a week to produce substantial documentation, we would have no alternative but to seek assistance from the Court. [See Exhibit "D"].

**Argument**

To prevail on summary judgment, Gates must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Gates has not come close to demonstrating the absence of material issue of fact. Contrary to Gates' assertion, the testimony of the knowledgeable witnesses establishes that the hose involved in the fire was a Gates hose. The Gates hose was a component of the LeRoi compressor placed aboard the GALAXIE. LeRoi's purchaser, ACES, testified that

it received the compressor from LeRoi with the flexible hose in place. [See *ACES Deposition*, pp. 14, 30, 71 (Exhibit "E")]. Referring to the "Important Service Notice" issued by LeRoi recalling flexible hoses due to defects, ACES confirmed that the hose on the compressor received from LeRoi was designated as LeRoi part no. 73-951. [*Id.* at 14, 30 (Exhibit "E")]; see also *Important Service Notice* (Exhibit "F"].

It is undisputed that LeRoi part no. 73-951 corresponds exclusively to the Gates C5C flexible hose. Such was the testimony of LeRoi's corporate representative, Ron Keen:

> Q: ... Was the Gates C5C used in applications for 73-951 series hose?
>
> A:  Yeah, yes it was. [*Keen Deposition*, p. 107 (Exhibit "G")].

This was confirmed by LeRoi's Gary Kaser. When asked if the LeRoi 73-951 part number corresponded to hoses of various manufacturers or merely to a single manufacturer, Kaser responded that it corresponds to Gates hoses that LeRoi purchased from Gates' distributor, Hart Industries. [*Kaser Deposition*, p. 48 (Exhibit "H")]. When later asked, "Is it your understanding that LeRoi part designation 73-951 correlates to the Gates C5C [hose]?", Kaser responded "I believe that is correct." [*Id.* at 115].

This was further confirmed by Hart's corporate representative, Roger Hart. [See *Hart Deposition*, p. 17-18 (LeRoi part no. 73-951 correlates to Gates C5C hose) (Exhibit "I")]. Indeed, Hart testified that his company supplied between eight hundred and twelve hundred Gates hoses to LeRoi in the 1990's to be used as LeRoi part no. 73-951. [*Id.* at 69].

Taken together, this testimony establishes that the hose aboard the vessel at the time of the fire was a Gates hose. There is, in fact, no evidence suggesting that the flexible hose was from a different manufacturer. With the evidence thus establishing that the hose *was* a Gates hose, it is ludicrous for Gates to suggest that it is entitled to a summary judgment that the hose *was not* a Gates hose. At the very least, there is a genuine issue of material fact in this regard, which precludes summary judgment.

This is particularly true considering that Gates has wrongfully prevented plaintiffs from obtaining deposition testimony and documents from the Gates Company. But for Gates last-minute cancellation of its own long-scheduled deposition on one occasion and its subsequent refusal to provide plainly discoverable documentation on the re-scheduled date, plaintiffs would by now have had the opportunity to delve into Gates' corporate records to further substantiate that its hose was present.

Until Gates provides the requested documents and submits to deposition, as it is required to do under the Federal Rules of Civil Procedure, its motion for summary judgment is surely premature. Even without that discovery, however, there is already substantial testimony to establish that a Gates' hose was on the compressor at time of the fire. At the very least, there is a genuine issue of material fact in this regard.

For these reasons, SEACOR respectfully submits that Gates' motion for summary judgment should be denied.

Respectfully submitted:

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ___2___ day of April, 2001.

_____
ALFRED J. RUFTY III

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**