

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

MAY 10 2001
2001 MAY 10 AM 9: 54

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | CIVIL ACTION |
| VERSUS | NO. 00-0166    SECTION S (1) |
| HOUMA FABRICATORS, A DIVISION OF LOR, INC., ET AL | JUDGE LEMMON |
| | MAGISTRATE JUDGE SHUSHAN |

## REBUTTAL MEMORANDUM

NOW INTO COURT, through undersigned counsel, comes defendant, Houma Fabricators, A Division of LOR, Inc. ("Houma Fabricators"), and in rebuttal to the Supplemental Memorandum in Support of Motion for Partial Summary Judgment ("Supplemental Memorandum") filed by plaintiff, Seacor Marine, Inc. ("Seacor"), submits the following arguments and authority.

### 1.    PROCEDURAL BACKGROUND.

At the conclusion of the hearing on the Motions for Summary Judgment, the Court ordered all parties to file Supplemental Memoranda regarding certain issues addressed during oral argument.  Accordingly, the Court stated in its Minute Entry of March 7, 2001

2



Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc.No._____

that "post motion briefs are to be filed within ten days." Due to time constraints, counsel for Seacor and Houma Fabricators agreed to a one-day extension of time to file these additional briefs. Houma Fabricators filed its Supplemental Brief on March 22, 2001. Days passed and no brief was filed by Seacor. Finally, Seacor filed its Ex Parte Motion for Leave to File Supplemental Memorandum in Support of Motion for Partial Summary Judgment on March 27, 2001, only after having had the opportunity to review the brief filed by Houma Fabricators. Later, at the instruction of the Court, Seacor filed a Supplemental Memorandum Regarding Civil Code Article 2524 ("Article 2524 Memorandum").

Predictably, rather than addressing the questions of the Court, Seacor only uses its Memoranda as a means of rebutting the Supplemental Memorandum submitted by Houma Fabricators. Seacor does not use this briefing opportunity for purposes of providing the Court with significant additional legal authority. Rather, Seacor engages in unreasonable and vituperative remarks clearly intended to raise issues related to the character of counsel instead of the content of the briefs. Unfortunately, this case has been plagued by such tactics, which have only served to cause unnecessary expense and delay in the resolution of the legal issues, and to obscure a clearer understanding of the case's factual underpinnings. Houma Fabricators submits this Rebuttal Memorandum in an effort to clear up any unnecessary confusion created by Seacor's arguments.

## 2.    A TELLING LACK OF PRECEDENTIAL AUTHORITY.

At oral argument, the court questioned whether the parties had found any precedent for Seacor's rather unusual indemnity arguments. Counsel for Seacor stated that there were numerous case authorities to support its position. However, counsel for Seacor did not offer a <u>single</u> citation in that argument, and was directly challenged by

2

counsel for Houma Fabricators to find even one case in which an indemnity provision was found to supplant an express warranty and provide compensation for property damage occurring after a warranty period expired. Counsel for Seacor could not cite such a case at oral argument and has still not met that challenge. Counsel for Houma Fabricators submits that the reason for this lack of precedent is quite clear: Seacor's position is completely untenable, and therefore not the subject of any reported decision within the courts of law.

### 3. INSTEAD OF PROVIDING CLARITY, SEACOR MERELY ATTEMPTS TO CREATE CONFUSION.

In Section A of Seacor's Supplemental Memorandum, Seacor makes various assertions that Houma has contradicted itself on its interpretation of the indemnity duty. Seacor then proceeds to create considerable confusion regarding the basic contractual elements of title, warranty, and risk of loss.

All other considerations aside, the sole question presented to the Court under the circumstances of this case is quite simple: of the two parties to the Shipbuilding Contract, which party bears the risk of loss for property damage occurring as the result of an engine room fire more than twelve months after delivery of the vessel. The answer to that question is equally simple. Article IX of the Shipbuilding Contract transfers all risk of loss to Seacor after delivery of the vessel, with the exception of the one year warranty found within Article XII. Regardless of indemnity for third party claims, property loss occurring before delivery or any other irrelevant claim, Houma Fabricators has no liability to Seacor for property damage occurring more than one year after delivery of the vessel. This contract language is very clear and not susceptible to any other interpretation. All of the

3

other questions regarding pre-delivery loss and third party liability simply cloud the issue and are irrelevant for purposes of this Court's inquiry. The Shipbuilding Contract clearly states that risk of such loss passed to Seacor after delivery.

### 4.    REDHIBITION IS NOT APPLICABLE TO A BUILDING CONTRACT.

The plaintiff continues to seek inappropriate redress under the redhibition articles relating to the sale of goods, despite the fact that the contract at issue is obviously a building contract under Louisiana law. The thrust of Seacor's argument is that because Louisiana courts have at times used different tests to distinguish between building and sales contracts, the distinction between the two contracts is unclear. Consequently, the federal district court should not intrude in the domain of state law to resolve the question of which test should be employed. Therefore, the plaintiff suggests that this Court should not employ <u>any</u> test whatsoever, but merely rely on two cases in which redhibition was applied to completed vessel sales — a situation not present here.

First, the test employed in *Duhon v. Three Friends Home Builder Corp.*[1] "is a popular and well established means of distinguishing between a building contract and a sale."[2] "Arguably, the three factors of the *Duhon* test present more satisfying grounds for classification [than the value test or fundamental obligation test]."[3] Therefore, the district court can reasonably rely on the *Duhon* test as well grounded in Louisiana law.

Next, the plaintiff cites *Rasmussen v. Casio Concrete Corp.*[4] in support of its claim that the Shipbuilding Contract is for the sale of goods. However, that case has been criticized because "the court apparently preferred to 'bend' the [fundamental obligation]

---

[1] 397 So.2d 559 (La. App. 3 Cir. 1981).
[2] Lee H. Ayres, *The Distinction Between a Building Contract and a Sale*, 47 La. L. Review 821, 828 (1987).
[3] *Id.*

4

test to reach what it believed a more just result. *Rasmussen* illustrates the judiciary tendency towards a result oriented application of the fundamental obligation test."[5] Therefore, this Court should view the *Rasmussen* decision with considerable reservation. The fundamental obligation in a contract to <u>build</u> a ship is clearly an obligation to do.

Next, Seacor discusses the "value test" as a method to differentiate between the types of obligations. However, the factors used to perform the "value test" are not in evidence because no analysis of the relative cost of labor versus materials has been performed. What is absolutely clear is Seacor's misunderstanding of the "value test," which does not focus on the value a particular party places on the obligations, but whether the cost of labor (to do) outweighs the cost of the materials (to give).

However, the particular test employed to distinguish between the two types of contracts is irrelevant. The fact remains that the two cases relied upon by the plaintiff deal with the sales of <u>completed</u> pleasure craft. Such a fundamental distinction cannot be overlooked. Where the contract at issue is for the performance of an obligation to construct a vessel, redhibition does not apply. If the object of the contract is for the sale of a completed thing, the redhibition articles do apply.

For example, in *Tripod Boats, Inc. v. George Engine Co.,* the issue of the applicable prescriptive period caused the court to consider the differences between a sale of a vessel and a contract for vessel construction.[6] In this case, the vessel owner alleged in its original complaint that it was the "purchaser" of three vessels that had developed engine problems, resulting in downtime, repairs and other damages. The trial court granted the

---

[4] 484 So.2d 777 (La. App. 1st Cir. 1996).
[5] Lee H. Ayres at 823.
[6] 170 So.2d 238 (La.App. 4 Cir. 1964).

5

engine manufacturer's exception of prescription on the grounds that the complaint had been filed after the one year prescriptive period applicable to redhibition had elapsed.[7] The Plaintiff attempted to amend its complaint to allege a breach of a contractual relationship for the design and construction of the vessels so that the ten year prescriptive period would apply. The Fourth Circuit upheld the trial court's denial of leave to amend, finding that the testimony established that the first vessel was already built and afloat when it was bought, and the plaintiff merely had an option to purchase the remaining two vessels upon completion. The transaction was therefore a "purchase" of boats subject to the redhibition articles.[8]

The present case is not a purchase of a boat to which either redhibition or the other sales articles apply, but a contract for the construction of a vessel. The Plaintiff argues the applicability of the sales and redhibition articles simply because it alleged the breach of redhibition and Article 2524 warranties in its amended complaint. Similar to *Tripod Boats*, "the falsity of the allegation is at once apparent . . . ."[9]

### 5.    THE SHIPBUILDER'S WARRANTY APPLIES TO THE ENTIRE VESSEL.

In the Plaintiff's Supplemental Memorandum, it is alleged that Houma did not extend warranty protection to equipment purchased separately by Seacor and incorporated into the vessel. The equipment purchased by Seacor is therefore "other property" not subject to the *East River* doctrine. However, Seacor again reads one provision of the contract without regard to any other contractual provision so that its interpretive objective can be achieved. When one reads the contract in its entirety, it is

---

[7] *Id.* at 240-241.
[8] *Id.* at 242.
[9] *Id.*

6

clear that warranty protection was provided for the entire vessel regardless of whether the equipment was purchased by Seacor or Houma Fabricators, as long as the equipment was subject to a valid change order and incorporated into the contract.

Article I provided for a fully operational vessel according to the plans and specifications, which included all engines, compressors, etc. Article V allowed the vessel owner to furnish many of the propulsion components under a contract change order. Article VI retained all risk of loss to Houma Fabricator regardless of title to the property. Finally, Article XII provided a warranty for the vessel that extended not only to items built by Houma Fabricators, but also to <u>items built by other manufacturers and incorporated in the vessel</u>. The warranty in Article XII only refers to items "purchased" by the builder because the original contract, specifications and plans called for purchase and installation of <u>all</u> of the propulsion equipment by Houma Fabricators. The subsequent modification of those plans and specifications did not take the manufacturer's warranty away from the equipment, nor did it place the equipment outside the warranty of the Shipbuilding Contract. The warranty provision simply referred to the performance of the contract as originally envisioned under Article I and did not make any exception for change orders because such exception was unnecessary.

Seacor tries to make artificial distinctions to achieve its objectives. The only reasonable interpretation of the warranty is that Houma Fabricators warranted all portions of the vessel it manufactured and then incorporated the manufacturer's warranty for all portions of the vessel that were purchased from other vendors and incorporated into the vessel.

7

Finally, the *East River* "other property" exception does not apply to the stern thruster damage because the "product" is the entire vessel itself prior to delivery to the initial user. Although the Plaintiff attempts to dance around this bright line rule, it remains a stumbling block thwarting recovery.

**6.    CIVIL CODE ARTICLE 2524 IS NOT APPLICABLE TO A BUILDING CONTRACT.**

In its Supplemental Memorandum dated March 27, 2001, Seacor claims that the viability of its implied warranty claim is not before the Court and therefore refuses to address the issue. In its Article 2524 Memorandum filed on April 2, 2001, Seacor reverses its position and addresses the applicability of the Civil Code Article 2524 implied warranty. Therefore, we can probably assume that the implied warranty argument is properly before the Court and should be addressed.

The crux of Seacor's argument is that Louisiana Civil Code Article 2524 provides an implied warranty that a thing sold will be fit for ordinary use. Because the vessel was delivered with a "defective" compressor, the vessel was not reasonably fit for its ordinary use and Houma Fabricators is liable for the breach of an implied warranty. Typically, in its Article 2524 Memorandum Seacor misrepresents Houma Fabricators' arguments to avoid dismissal of its claim, and makes a thorough analytical hash in trying to stretch the applicability of Civil Code Article 2524.

It has already been established by Houma Fabricators that the codal articles relating to the sale of goods do not apply to building contracts. The topic of the distinction between sales and building contracts has been exhausted, and the exercise should not be repeated here. The Shipbuilding Contract at issue is an obligation to do, landing it

8

squarely within the articles on building contracts.  Building contracts have their own unique body of statutory and interpretive law that govern them.  However, Seacor continues to try to fit a square peg in a round hole by applying sales articles to a building contract, and demonstrates a fundamental misunderstanding of the legal principals involved in this case. The very language of the Civil Code demonstrates its inapplicability.  Article 2524 refers to sellers and buyers, not contractors and owners.  While the implied warranty of Article 2524 is marginally different from the redhibition warranties, that does not completely remove it from the ambit of the sales articles and extend it to building contracts.  Building contracts have their own statutory warranties arising under the building contract articles.  The only possible explanation for Seacor's fixation on Article 2524 is a fundamental misunderstanding of the applicable law and having mistakenly included that citation in the Amended Complaint.

The case relied upon by the plaintiff, *Hobbs Refrigeration & Air Conditioning, Inc. v. Poche*,[10] relates to the sale of an air conditioner and its subsequent failure.  *Hobbs* specifically refers to the sales and redhibition articles, which are patently inapplicable to the present case. *Hobbs* has nothing to do with a construction contract.

Building contracts come with their own statutory warranty arising out of Civil Code Articles 2762 and 2769.  Pursuant to Article 2762, a contractor is liable for any damages as a result of "badness of the workmanship."[11]  Article 2769 provides that a contractor is liable for damages for the losses ensuing from non-compliance with the contract.[12]

---

[10] 304 So.2d 326 (La. 1974).
[11] LSA-C.C. Art. 2762.
[12] LSA-C.C. Art. 2769: "If an undertaker fails to do the work he is contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."

For example, in *Wurst v. Pruyn* a home buyer brought a redhibition action against a seller for foundation problems as a result of defective soil on which the home was built. [13] The home-owners sued the contractor alleging that their home had fallen into ruin within the meaning of La. C.C. Art. 2762, and the contractor was therefore liable. As a defense, the contractor unsuccessfully asserted that the transaction was for the sale of a home rather than for a contract to build. If so, the one-year prescriptive period applicable to the redhibition articles would apply and the home-owner's action would have been barred.[14]

After a reversal of the trial court by the First Circuit Court of Appeals, the Louisiana Supreme Court revisited all of the legal issues raised at the trial level. First, the court determined that a vendor-vendee relationship had not existed between the contractor and home-owner because the underlying transaction was not a sale. The ten-year prescriptive period applicable to building contracts therefore applied. The court reviewed several facts that supported their conclusion that a contractor/owner relationship existed: (1) the agreement between the parties was made prior to commencement of construction; (2) the agreement allowed for modifications in the construction of the building at the request of the home-owner and (3) the agreement referred to the contractors as "builders" and the plaintiffs had negotiated with the defendants as builders of the home.[15] On the basis of these factors, the Court determined that the transaction was not a sale and that the redhibition articles did not apply.[16] Rather, Article 2762, relating to building contracts, applied to the underlying transaction. The question therefore, was whether the contractors

---

[13] 202 So.2d 268 (La. 1967).
[14] *Id.* at 270.
[15] *Id.* at 271.
[16] The elements applied by the Louisiana Supreme Court in this case are strikingly similar to the three factor test enumerated by the Third Circuit in *Duhon v. Three Friends Home Builders Corp.*, *supra*: the plaintiff had

were chargeable with "badness of workmanship" in the performance of the building contract.

In rendering a decision in favor of the home-owners, the Louisiana Supreme Court held that there is an implied obligation in every construction contract that the work must be done in "a good and workmanlike manner." Consequently, the court was of the opinion that Article 2762 imposed liability upon a contractor who knew or should have known by the exercise of reasonable care of the existence of a defective condition. However, the court made it clear that a contractor is not liable for latent defects unknown to the builder. Neither is the builder liable for natural causes, fortuitous events or causes over which the undertaker had no control. Instead, the contractor is liable for ruin brought about by the badness of workmanship when the contractor does not foresee what was reasonably foreseeable and preventable.[17] Because the contractors in *Wurst* should have known that the proximity of certain trees to the foundation of the building would cause settling and instability of the foundation, the contractors were liable for repairs.[18]

Other courts have followed this interpretation of Article 2769 that an implied warranty arises in construction contracts that the work will be performed in a good, workmanlike manner.[19] Therefore, before a contractor can be held liable for breach of such an implied warranty the plaintiff must establish "that the damages suffered by the obligee arose as a result of faulty workmanship or from the use of defective materials or

---

input into the specifications; the transaction was negotiated prior to construction; and the contractor provided skill and labor as well as materials in rendering performance. Also see Lee H. Ayres, *supra,* at 828 fn. 46.
[17] *Id.* at 272.
[18] *Id.* at 273.
[19] *Tiger Well Service, Inc. v. Kimball Production Company*, 343 So.2d 1153, 1157 (La. App. 3rd Cir. 1977).

Case 2:00-cv-00166-MVL     Document 190     Filed 05/10/2001     Page 12 of 22

equipment which the undertaker knew or should have known were defective."[20]  Clearly, under this standard of care, there must be some evidence of negligence in the performance of the work or selection of the materials or equipment and there cannot be liability as a matter of law or any kind of "strict liability" that would hold the contractor liable regardless of fault.[21]

Therefore, for an owner to recover against a contractor under the implied warranties of Articles 2762 and 2769, the plaintiff must prove by a preponderance of the evidence, either direct or circumstantial, the following three elements of proof:  (1) that defects exist; (2) that faulty materials or workmanship caused the defects; and (3) the cost of repair.[22]  However, the codal articles applicable to construction contracts do not create liability as a matter of law or strict liability.  It must also be shown that the defect arose as a result of faulty workmanship or from the use of defective materials or equipment that the contractor knew or should have known were defective.[23]

Under this standard of care, a contractor cannot be held liable for latent or hidden defects that are neither apparent nor reasonably discoverable by the builder during construction.[24]

Turning to the present case, Seacor contends that the fire was caused by the failure of a lube-oil compressor hose.  Although Houma Fabricators disputes that contention, we can assume (strictly for the sake of argument) that such a hose defect was the cause and origin of the fire in the engine room.  The plaintiff has no proof that Houma

---

[20] *Id.* at 1157-1158.
[21] *Id.* at 1158.
[22] *Melder v. Gassiott*, 436 So.2d 628, 629 (La. App. 3rd Cir. 1983).
[23] *Id.* at 630.
[24] *Harris v. Williams*, 679 So.2d 990, 994 (La. App. 2 Cir. 1996).

Fabricators knew or should of known of a defective condition in the hose or compressor that was received by Houma Fabricators as a single modular unit. It is Houma Fabricators' unchallenged contention that it never modified the compressor or the hose in any manner whatsoever prior to its installation on board the M/V GALAXIE. The compressor came equipped with the allegedly defective hose and there was no reasonable method for Houma Fabricators to determine whether every internal or external part of these component machines met their manufacturers' specifications or were otherwise fit for service. It is a matter of common logic that shipbuilders or any other construction company must depend on the expertise of the component manufacturers when installing the product. In the present case, the distributor/seller of the compressor, ACES, came on board after the compressor was installed by Houma Fabricators and thoroughly checked and ran the compressor to make sure it was in full working order.[25]

Therefore, the plaintiff is unable to prove by a preponderance of evidence that Houma Fabricators either knew or should have known of the hose incompatibility and without such proof, cannot be held liable for breach of an implied warranty under Articles 2762 or 2769. Rather, any defective condition in this hose should be considered a latent or hidden defect which was neither apparent to nor reasonably discoverable by Houma Fabricators during the construction process. Without such proof, Seacor cannot sustain its burden of proof at trial and its allegations of breach of an implied warranty should be dismissed with prejudice.

---

[25] See attached Exhibit A, Air Compressor Energy Systems, Inc., Work Order S4547, Oct. 24, 1997.

7. **SEACOR'S IMPLIED WARRANTY HAS BEEN EXPRESSLY DISCLAIMED AND THE MANUFACTURER'S EXPRESS WARRANTY HAS EXPIRED, LEAVING SEACOR WITHOUT RECOVERY UNDER WARRANTY OR INDEMNITY THEORIES.**

Houma Fabricators' warranty, as contained in the Shipbuilding Contract, provides that "in the instance of equipment purchased by BUILDER from others and incorporated in the vessel the responsibility of the BUILDER for defects in such equipment shall be limited to the usual guaranty or warranty extended by the manufacturer's supplier of such equipment."

It is uncontested that CompAir/LeRoi was the manufacturer of the rotary screw compressor model WE150SSII that was put into operation on board the M/V GALAXIE on October 24, 1997.[26]

The manufacturer's warranty provided that the compressor would be free from defects in materials and workmanship for a period of either twelve months from the startup date of the product or eighteen months after the original shipment date by LeRoi. The warranty limits LeRoi's obligation to repair or replacement. Most importantly, the warranty provides as follows:

> No claim for consequential or incidental damages based on warranty, tort or breach of contract shall be asserted by the owner or others at any time with respect to a non-conforming or defective air compressor, part or component; and no warranty claim shall be made by or on behalf of the owner, or accepted by LeRoi, after expiration of the applicable time periods . . . .[27]

This language constitutes an explicit waiver of implied/statutory warranties. By accepting the contract with Houma Fabricators, Seacor agreed to be bound by the

---

[26] See attached Exhibit B, fax memo to Gary Kaser from Ron Naquin dated February 10, 1999, advising CompAir/LeRoi of hose failure and warranty dates.
[27] See attached Exhibit C, LeRoi International Inc., Express Warranty, November 1, 1992.

manufacturer's warranty for the component parts. It is not against public policy in Louisiana for the parties to a contract to waive statutory warranties.[28] Although courts are sometimes reluctant to enforce warranty limitations on consumers, sophisticated parties to a commercial undertaking should be bound by their contracts.[29] In the commercial context, a waiver of warranty will be enforced as long as the waiver was express and unequivocal; resulted from mutual consent or a meeting of the minds; was made in good faith; and is consistent with public policy. [30] The above-quoted language is sufficiently express and unequivocal in stating that no warranty claim will be made after one year, regardless of whether the claim is couched in terms of warranty, contract or tort. Mutual consent and good faith can be presumed from the fact that two sophisticated parties negotiated and signed the contracts in consultation with their lawyers.[31] Consequently, Seacor has no further action under a warranty theory against Houma Fabricators. The express warranty ended twelve months after the startup date of October 24, 1997. With the express warranty ending on that date and all other warranties expressly waived, Seacor has no further contractual remedy for the losses resulting from the engine room fire.

Finally, Seacor has also claimed a right to recovery under a theory of indemnity under the "Insurance and Indemnity" section of the Shipbuilding Contract. However, the loss was occasioned by the failure of a compressor hose on a piece of equipment "purchased by BUILDER from others and incorporated in the vessel." Seacor's recovery under the Shipbuilding Contract is therefore limited to the warranty extended by the

---

[28] *Freeman v. Dept. of Highways,* 217 So.2d 166(La. 1968).
[29] *California Union Ins. Co. v. Bechtel Corp.*, 473 So.2d 861, 867-868 (La.App. 4 Cir. 1985).
[30] *FMC Corp. v. Continental Grain Co.,* 355 So.2d 953, 958 (La.App. 4 Cir. 1977).

component manufacturer. The manufacturer's warranty extended by LeRoi does not allow recovery for consequential or incidental damages based on tort, warranty or breach of contract and the replacement warranty is limited to one year. The failure of this component part completely precludes any claim based on any other theory of recovery, including indemnity. Therefore, the claim of Seacor for breach of an implied warranty or for indemnity must be dismissed with prejudice.

## 8.    CONCLUSION.

The Supplemental Memoranda submitted by Seacor merely attempt to create confusion of the issues to avoid dismissal rather than providing supporting authority. The Shipbuilding Contract is unambiguous regarding the passage of the risk of loss. The focal point of the transferal of that risk is the point of delivery, after which there is only a warranty obligation to encompass claims for property damage. All other arguments regarding indemnity and third party claims are irrelevant to the determination of that single issue. Because risk of loss had passed to Seacor, and the warranty had expired, Seacor has no recourse against Houma Fabricators for the property loss that is the subject of this litigation. Furthermore, the Shipbuilding Contract is clearly a contract to build a vessel and is not subject to the sales articles or the codal provisions on redhibition. Next, the warranty of the Shipbuilding Contract covers all equipment installed by the builder whether purchased by the builder or purchased separately by the vessel owner. The sternthruster is therefore not subject to the other property exception under the *East River* doctrine. Finally, the express warranty excludes any implied warranty theories arising under the building contract articles. Even if an implied warranty still applies, Seacor cannot

---

[31] *Id.*

16

demonstrate that Houma Fabricators knew or should have known of this alleged "defect" which was latent and not reasonably foreseeable and preventable. For these reasons, Houma Fabricators' Motion for Summary Judgment should be granted.

Respectfully submitted,

RONALD A. JOHNSON, T.A. (#7329)
JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
One Shell Square,
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
Telephone (504) 528-3001
Attorneys for Houma Fabricators,
 A Division of LOR, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record, either by hand delivery, facsimile, or by placing the same in the United States mail, properly addressed and postage prepaid, this _____ day of May, 2001.

17

FROM : AIR COMPRESSOR ENERGY SYSTEMS    FAX NO. : 225 272 1424         Feb. 10 1999 12:33PM P1

# AIR COMPRESSOR ENERGY SYSTEMS, INC

HOME OFFICE

P.O. BOX 80048
BATON ROUGE, LA 70898
PH. 225-272-2722
FAX 225-272-1424



NEW ORLEANS
PH. 504-348-2214
FAX 504-348-2224

LAFAYETTE
PH. 318-981-7370

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: **GARY KASER** | FROM: **RON NAQUIN** |
| FAX NUMBER: **1-937-492-3923** | DATE: **2/10/99** |
| COMPANY: **COMP AIR LEROI** | TOTAL NO. OF PAGES INCLUDING COVER: **1** |
| PHONE NUMBER: **1-800-445-3764** | PURCHASE ORDER NUMBER: **1-24415** |
| RE: **150SSM MODULES** | SENDER'S REFERENCE NUMBER: **4256X124** |

X URGENT    FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

Thank you for your help yesterday at Seacor Marine in Morgan City. I really appreciate you coming down on such short notice.

After we returned to my office we looked for the hose that failed and couldn't find it on our bill of materials. Now I know why, because it come from your plant with the module we ordered under the above purchase. The correct hose part # is 1-73-951-3. We ordered six (6) machines under this P.O. #, should we change out any of the other hoses, advise!

Please advise your personnel that your vendor needs to be notified of the failure of one of his hoses. Also review your warranty policy as this unit was delivered on 3/3/97 and put in service on 10/24/97 by A.C.E.S. at Houma Fabricators in Houma, La.

My attorney advised me that this unit is over one (1) year old and out of our standard warranty. Therefore we are not liable for any hose failures. However, we will attended the meeting on 2/18/99 at Seacor and take pictures of the compressor, separator and oil filter and advise you of our findings.

Thanks,

Ron

EXHIBIT
B

AIR COMPRESSOR
ENERGY SYSTEMS INC.
P.O. Box 80048
Baton Rouge, LA 70898

P.O. Box 732
Metairie, LA 70071

(504) 772-2772          (504) 347-2214

**WORK ORDER**

TO: W/V GALAXIE

EXHIBIT A

LAW OFFICES

## CHAFFE, McCALL, PHILLIPS, TOLER & SARPY, L.L.P.

2300 ENERGY CENTRE

1100 POYDRAS STREET

NEW ORLEANS, LOUISIANA 70163-2300

(504) 585-7000

FAX (504) 585-7075

www.chaffe.com

202 TWO UNITED PLAZA
8550 UNITED PLAZA BLVD
BATON ROUGE, LA 70808
(225) 922-4300
FAX (225) 922-4304

EDIFICIO EXA
PISO 10, OFIC PH 10
AVENIDA VENEZUELA ENTRE
CALLES EL RETIRO Y ALAMEDA
EL ROSAL
CARACAS, VENEZUELA
(011) (582) 952-2905
FAX (011) (582) 953-6516

## NEW ORLEANS OFFICE

Date:   April 27, 2001

Number of pages
including cover page:   3

To:   **Robert Wood**   **VIA FACSIMILE NO.: 528-3030**

Fax Number:

Client/Matter Number:   18924 *Seacor Marine*

From:   Campbell E. Wallace

Direct Dial Number:   (504) 585-7054

COMMENTS:

Attached is the warranty document in effect at the time the compressor was delivered in 1996.

Thanks,

CEW

## NOTE:  Primary Fax Number:  (504) 585-7075

This telefax transmission (and/or the documents accompanying it) may contain information belonging to the sender and it is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any reliance on the contents of this information is strictly prohibited  If you received this transmission in error, please notify us immediately at the telephone number listed above and return the transmission to us at the above address, marked to the attention of the Information Systems Department  Thank you.

489341_1

EXHIBIT

C

# LeROI INTERNATIONAL, INC.

## EXPRESS WARRANTY

## FOR ROTARY SCREW PRODUCTS USED IN INDUSTRIAL APPLICATIONS



EFFECTIVE 11-1-92

EXHIBIT

### LeROI INTERNATIONAL, INC.
### EXPRESS WARRANTY FOR ROTARY SCREW PRODUCTS
### USED IN INDUSTRIAL APPLICATIONS

LeROI International, Inc. ("LeROI") warrants that all industrial rotary screw air compressors and related parts it makes and sells are merchantable and, at the time of shipment from its plant in Sidney, Ohio, are free of defects in material and workmanship.

In the event of non-fulfillment of such express warranty, LeROI will, at its election, repair or replace the non-conforming or defective air compressor or part without charge to the owner. Engines and electric drive motor components are separately warranted by the manufacturers thereof.

No claim for consequential or incidental damages based on warranty, tort or breach of contract shall be asserted by the owner or others at any time with respect to a non-conforming or defective air compressor, part or component; and no warranty claim shall be made by or on behalf of the owner, or accepted by LeROI, after the expiration of the applicable time periods set forth below:

### TERM LIMITATIONS OF EXPRESS WARRANTY

A. This coverage shall expire upon the earlier of the following:

1. 12 months after the initial new rotary screw product start-up date; or
2. 18 months after the original date of shipment of the covered product by LeROI.

#### Performance Warranty Plan

LeROI also warrants that the air end of a rotary screw air compressor registered and maintained in accordance with LeROI's PERFORMANCE WARRANTY PLAN (the "Plan") will not fail under normal use during the three (3) or five (5) year term registered under the Plan. If the air end of the registered air compressor fails during the term of years registered under the Plan despite adherence to LeROI's recommended maintenance procedures, LeROI will supply a replacement air end free of charge, with the costs of labor for removing and reinstalling the air end borne by (a) LeROI during the first year of the warranty term, and (b) the owner/user after said first year.



LeROI INTERNATIONAL, INC.
211 East Russell Road
P.O. Box 927
Sidney, Ohio 45365

LWS-003 Effective 11/1/92