

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND<br>SEACOR OFFSHORE, INC.<br><br>Plaintiffs<br><br>VERSUS<br><br>HOUMA FABRICATORS, A DIVISION<br>OF L.O.R., INC., AIR COMPRESSOR<br>ENERGY SYSTEMS, INC., DRESSER<br>INDUSTRIES, INC. , AND LEROI<br>INTERNATIONAL, INC. D/B/A<br>COMPAIR LEROI<br><br>Defendant | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>NO.: 00-0166<br><br>SECTION: "S" (1) |

\* \* \* \* \* \* \* \*

### SEACOR'S REBUTTAL MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Notwithstanding the arguments raised – some for the first time – in Houma's recently submitted memorandum, this Court should grant SEACOR's motion for a partial summary judgment and should deny Houma's cross-motion.

**A. Delivery Did Not Eradicate SEACOR's Indemnity Rights**

On the indemnity clause issue, Houma sums up its current position thus:

1

> ... [T]he sole question presented ... is ... which party bears the risk of loss .... The answer to that question is ... Article IX of the Shipbuilding Contract transfers all risk of loss to SEACOR after delivery of the vessel, with the exception of the one year warranty found within Article XII.

By this analysis, Houma dismisses the plainly-worded indemnity clause (favoring SEACOR) as contrary to and overridden by the risk-of-loss provision.

The problems with this argument are numerous. First and foremost, this argument conflates a boilerplate "risk of loss" term with a meaning and significance never before seen in the annals of sales law. The standard title and risk-of-loss provisions of the Shipbuilding Contract merely specify when the sales transaction is complete – that is, when the vessel becomes the buyer's property and responsibility; they have nothing to do with (and do not eradicate) the buyer's rights of recourse for deficiencies found in the vessel after the moment of delivery.

As Your Honor pointed out during argument on the pending motions, the transfer of title and risk-of-loss is significant when a fortuitous event destroys an object of sale before the transaction is complete and the question arises who bears the loss. These concepts have no relevance to the question whether a seller is liable under a contract's indemnity clause (or in implied warranty) for a post-delivery loss caused by a pre-delivery defect in the vessel. In Your Honor's words:

> ... the connotation to me of risk of loss is if lightening strikes, or if a hurricane comes along, or any of those things where it's nobody's fault that you have the risk of loss. ... [W]hen you're taking about risk of loss, you're not talking about an unseaworthy condition. *[Transcript of March 7, 2001 Argument,* p. 27 (Exhibit "A")].

Contrary to Houma's position, the fact that title and risk-of-loss had passed to buyer

SEACOR before the fire does not deprive SEACOR of recourse against Houma for providing a defective vessel.

Second, Houma's argument is internally inconsistent. Houma posits that the risk of loss provision "transfers all risk of loss to SEACOR after delivery of the vessel, *with the exception of the one year warranty found in Article XII.*" (Emphasis supplied) This raises the obvious point: if SEACOR's rights under the warranty clause are enforceable after delivery, then why would the same not be true of SEACOR's rights under the indemnification clause? In both instances, a claim would be made after delivery, which is to say after the risk-of-loss had transferred to SEACOR. In both instances, SEACOR would be relying on a contractual provision expressly granting it a right of recourse against Houma for selling a defective product. A principled distinction cannot be drawn. Contractual indemnity rights survive the risk-of-loss transfer in precisely the same way that warranty rights do. Houma's argument therefore fails.

Third, and conversely, if Houma's risk of loss argument were correct – if, that is, the risk-of-loss transfer immunized Houma at the moment of delivery from further product-defect claims (even those – like SEACOR's indemnity claim – that are expressly sanctioned in the contract), then warranty claims would be excluded as well. So would any other right of recourse of the buyer after delivery, for all such claims would come after the buyer had accepted "all risk of loss."

The implications of Houma's position are far-reaching. If the transfer of risk-of-loss means what Houma contends, then it becomes essentially impossible to have an express warranty or an indemnification clause (or any other buyer-rights) in a sales contract. Why?

3

Because all risk-of-loss passes to the buyer at delivery, and this supposedly trumps the buyer's remedies granted (even expressly) under the terms of the contract (such as in an indemnity clause).

Houma's stilted interpretation would impose these results even in sales contracts that are silent as to risk-of-loss. This is so because the Shipbuilding Contract's stipulation that the risk-of-loss passes at delivery merely re-states what is already law. Under La. Civ. Code art. 2467 ("Transfer of Risk"), the risk of loss *automatically* passes to the buyer at delivery:

> The risk of loss of the thing sold owing to a fortuitous event is transferred from the seller to the buyer at the time of delivery. That risk is so transferred even when the seller has delivered a nonconforming thing, unless the buyer acts in the manner required to dissolve the contract.

Thus, under Houma's view of a risk-of-loss transfer, *all sellers* would be immunized as a matter of law from responsibility for product defects at the moment of delivery, even if the sales contract expressly affords a right of recovery (such as in an indemnity clause) and is silent as to risk-of-loss. Houma's far-fetched theory would radically transform the law of sales, and it should be rejected.

Article 2467 refutes Houma's theory in two additional ways. First, it makes clear that the relevance of a risk of loss provision in a sales contract is to ascertain which party bears the risk of a "fortuitous event" damaging the thing sold.

Further, this article plainly is not meant to legislate away all buyer-rights-of-recourse (except dissolution) against sellers for losses caused by nonconforming things. Yet that would be the effect if Houma's argument were accepted, for the buyer's rights would disappear when the risk-of-loss transferred at the moment of delivery even as to

4

"nonconforming things".

This is not the law. What "risk of loss" concerns is who bears the brunt of a fortuitous loss to the object of sale before the transaction is complete; it does not eradicate the buyer's remedies for post-delivery losses caused by pre-delivery product defects.

Fourth, Houma's theory that the indemnity clause becomes ineffective at the moment of delivery (due to the transfer of risk-of-loss) clashes with the very definition of "indemnity". By definition, to be "indemnified" is to be compensated for a loss one has sustained or for which one is legally responsible.[1] Houma's theory would create an absurdity: SEACOR could never be indemnified for a pre-delivery loss to the vessel because it would *not* have the risk of loss; whereas SEACOR could never be indemnified for a post-delivery loss to the vessel because it then *would* have the risk of loss. Obviously, this is not a reasonable interpretation.

Fifth, the Court asked Houma's counsel in the argument of March 7, 2001 for authority supporting its novel view of the contract's risk-of-loss transfer. Houma conceded it had none. That remains true today.

Sixth, Houma's interpretation is at odds with the legal authorities. As discussed above, La. Civ. Code art. 2467 shows that risk-of-loss transfers pertain to fortuitous losses in the midst of the sales transaction and not to allocating liability for losses caused by product defects.

---

[1] BLACKS LAW DICTIONARY (5th Edition 1979) at page 692 states that "indemnity" "... pertains to liability for loss shifted from one person held legally responsible to another person. The term is also used to denote a compensation given to make the person whole from a loss already sustained."

5

Additionally, in *Nitram, Inc. v. Cretan Life,* 599 F.2d 1359 (5th Cir. 1979), the U.S. Fifth Circuit Court of Appeals considered the effect of the transfer of risk of loss from seller to buyer on indemnity rights. Finding that the risk of loss transfer had "no bearing" on indemnification, the Court wrote:

> ... [W]e are certain that the C & F [sales] term merely allocates the ***risk of loss*** of goods in transit as between the buyer and seller and therefore would have ***no bearing*** on the issue of whether Montedison must ***indemnify*** Skopi for the cargo shortage. *Nitram, Inc.,* 599 F.2d at 1374, n.35.

Similarly, in *Howe v. Marathon Oil Co.,* 2001 W.L. 290184 at p. 6 (N.D. Ill. March 16, 2001), the federal district court noted that transfer of title and risk-of-loss from seller to buyer did not preclude the buyer from recovering under a contractual indemnification clause:

> The fact that the gasoline purchase was ordered by Clark Oil and that title to the product passed to Clark Oil once it was loaded into the truck is irrelevant. ***This is not a standard risk of loss question, but rather a question about the applicability of the indemnification provision.***

Here, as well, the risk-of-loss provision is irrelevant to SEACOR's rights under the contract's indemnity clause.

Seventh, Houma's theory cannot accommodate the distinction made in the indemnity clause between unseaworthy conditions existing before delivery versus those created after delivery. Although the indemnity clause extends to SEACOR a broad right of indemnity, it contains a significant limitation: "[Houma] shall not be required to ... indemnify [SEACOR] for any claims caused solely by an unseaworthy condition which *occurs after the delivery*...." (emphasis added)   The clear import of this language is that SEACOR *is* entitled to indemnity for losses arising from unseaworthy conditions that existed *before*

delivery. In other words, what matters under the indemnity clause is not whether the *loss* occurred before or after delivery but rather whether the *unseaworthy condition* (or defect) that triggered the loss existed before or only after delivery.

At oral argument, Your Honor apparently agreed with this assessment:

> THE COURT: On Page 15, it seems to me that the language that says "the builder shall not be required to defend, hold harmless, and indemnify the owner for any claims caused solely by an unseaworthy condition which occurs after the delivery provided for in Article 9," seems to imply that *they will be required to defend, hold harmless, and indemnify for claims caused solely by an unseaworthy condition which occurs before the delivery*. They're not talking about ... the event, they're talking about the condition.
>
> MR. WOOD: Your Honor, again, this ... this sentence points directly to the delivery period as being --
>
> THE COURT: Right, right --
>
> MR. WOOD: -- as being the cutoff.
>
> THE COURT: -- and so you have -- well, that's exactly the point. So, why doesn't that make me deny your Motion for Summary Judgment straight up?
>
> \* \* \*
>
> THE COURT: That means if -- let's say it was the hose and that that's unseaworthy. The hose was changed after the delivery, then you would -- then this indemnity provision would not apply.
>
> MR. WOOD: Yes, Your Honor.
>
> THE COURT: *But if the hose was provided before the delivery, then the indemnity provision would [apply].* It seems to me that that's what that's saying, isn't it?

7

| | |
|---|---|
| MR. WOOD: | Well, Your Honor, that's only if you're reading the indemnity provision outside of the context of the entire contract because – |
| THE COURT: | Well, I don't think so, because it says you still warrant the things that are installed that are taken care of -- you know, *this doesn't impact the warranty provisions*. But as to the indemnity provision, there is that bright line that's before and after. |
| MR. WOOD: | Well, Your Honor, that -- brings into focus the difference between a warranty and an indemnity. |
| THE COURT: | Exactly. |
| MR. WOOD: | And what -- what the Plaintiff is trying to do is create -- is put an indemnity into the shoes of a warranty. |
| THE COURT: | I don't think it's what the Plaintiff's trying to do, that's not what I'm focusing on. *I'm focusing on what this language means.* [emphasis added] [*Transcript*, pp.16-19] |

When Houma's counsel later reiterated the view that no claims could be brought for post-delivery losses (even if caused by a pre-delivery defect), the Court again disagreed:

> **MR. WOOD:** ... Now, when delivery occurs, and this language says it very clearly, we're not required to defend, indemnify them, or hold them harmless for any claims caused by an unseaworthy condition after delivery.
>
> **THE COURT:** No, no, no, no. It's saying an unseaworthy condition which occurs, not a claim which occurs. Look at the structure of the sentence, diagram the sentence. [*Transcript*, p. 24]

As the Court seemingly agreed, under the plain language of the indemnity clause, SEACOR is entitled to indemnification for post-delivery losses caused by pre-delivery defects in the vessel.

Eighth, Houma's theory would erase an important and necessary concept from the law of sales – namely, the concept of "risk of loss," properly understood. If Houma's theory is adopted, there will no longer be in the law of sales the necessary concept that the risk of loss from a fortuitous event (such as a hurricane) may be transferred from buyer to seller without simultaneously immunizing the seller from responsibility for product defects.

In short, Houma's theory that SEACOR has no indemnity rights for post-delivery losses caused by pre-delivery defects in the vessel is contrary to the plain language of the contract, common sense, the accepted meaning of boilerplate sales terms, and the law. Because the contract is unambiguous (as the parties agree), the Court accordingly should grant SEACOR's motion for a partial summary judgment that it is entitled to contractual indemnity for all losses and expenses caused by defects existing in the vessel before delivery. Concomitantly, Houma's cross-motion for summary judgment should be denied.

### B. Implied Warranties Not Disclaimed

Houma's argument that the Shipbuilding Contract expressly disclaimed SEACOR's implied warranty rights is without merit. The law is clear that warranty rights will be regarded as waived only if this is stated clearly and explicitly in the agreement. *Pias v. Wiggins,* 688 So.2d 1103, 1106 (La. App. 3rd Cir. 1997) (To be effective, waiver of implied warranties must be written in clear and unambiguous terms; must be contained in the sale document; and must be brought to the buyer's attention); *Prince v. Paretti Pontiac Co., Inc.,* 281 So.2d 112 (La. 1973); *Bo-Pil Foods, Inc. v. Polyflex Film and Converting, Inc.,* 787, 791 (La. App. 1st Cir. 1995) (implied warranties "cannot be regarded as waived in the

absence of a clear, unambiguous and express agreement").

There was no clear and explicit waiver of implied warranty rights here. The warranty clause (Article XII) says nothing about a waiver of implied warranties. Nor does any other clause in the contract. Houma does not dispute this.

Instead, Houma relies on literature issued by the compressor manufacturer (LeRoi) to its buyer (ACES) disclaiming implied warranties. Of course, SEACOR had no contract with LeRoi. Undeterred, Houma argues that this disclaimer was effectively adopted into the Shipbuilding Contract by the sentence in the warranty clause which states that Houma adopts the warranties of the various (vessel) component-manufacturers.

This oblique reference to another company's warranty does not come close to a clear and explicit waiver of implied warranty rights. Indeed, Houma's counsel were not yet sufficiently aware of what LeRoi product literature said about implied warranties to advance this argument at the recent hearing on the pending motions. If it took the lawyers a year-and-a-half to come up with this theory, that is a strong indication that SEACOR did not have clear and explicit notice of a waiver of implied warranty rights.

### C. Redhibition

In the recent argument, the Court made the point that the transfer of title and risk-of-loss are sales matters associated with contracts of sale:

> **THE COURT:** I guess I'm having a hard time with title vesting without there being a sale. To me what transfer of title connotes is a sale of a thing. And so I'd like for you to address it from that standpoint when you do address it.

Houma's counsel responded: "Yes, Your Honor." [Transcript, pp. 38-39]. Yet Houma has said nothing on the subject.

10

## D. Conclusion

For these reasons, as well as those expressed in SEACOR's previous memoranda, SEACOR respectfully submits that its motion for a partial summary judgment should be granted and that Houma's cross-motion should be denied.

HARRIS & RUFTY, L.L.C.

_____
RUFUS C. HARRIS III (#6638)
ALFRED J. RUFTY III (#19990)
GARY A. ROBINSON (#27061)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
(504) 525-7500
**Attorneys for SEACOR Marine, Inc. and SEACOR Offshore, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded to opposing counsel by placing same in the United States mail, properly addressed, with first class postage affixed thereto, this ___ day of May, 2001.

_____
ALFRED J. RUFTY III

RECEIVED
MAY 8 2001
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
DEPUTY CLERK

```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF LOUISIANA

 3

 4   SEACOR MARINE, INC., and        *    Civil Action
     SEACOR OFFSHORE, INC.,          *    No. 00-166
 5                                   *
           Plaintiffs,               *    Section "S"
 6                                   *
                v.                   *    New Orleans, Louisiana
 7                                   *    March 7, 2001
     HOUMA FABRICATORS, A DIVISION   *
 8   OF L.O.R., INC., ET AL,         *
                                     *
 9         Defendants.               *
     * * * * * * * * * * * * * * * * *

10

11                       EXCERPT - MOTIONS
            BEFORE THE HONORABLE MARY ANN VIAL LEMMON,
12                  UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Plaintiffs,        Harris & Rufty, LLC
                                By:  ALFRED J. RUFTY, III, ESQ.
15                              CNG Tower
                                1450 Poydras Street, Suite 1510
16                              New Orleans, Louisiana 70112

17   For Houma Fabricators,     Johnson, Johnson, Barrios &
     a division of L.O.R.,        Yacoubian
18   Inc.,                      By:  ROBERT H. WOOD, ESQ.
                                701 Poydras Street, Suite 4700
19                              New Orleans, Louisiana 70139-7708

20   For Air Compressor         Young, Richaud & Myers
     Energy Systems, Inc.,      By:  C. BLASE MCCARTHY, JR., ESQ.
21                              Energy Centre
                                1100 Poydras Street, Suite 1515
22                              New Orleans, Louisiana 70163

23   For Dresser Industries,    Chaffe, McCall, Phillips,
     Inc., and LeRoi              Toler & Sarpy, LLP
24   International, Inc.,       By:  CAMPBELL E. WALLACE, ESQ.
     d/b/a CompAir LeROI,       2300 Energy Centre
25                              1100 Poydras Street
                                New Orleans, Louisiana 70163-2300
```


EXHIBIT A

16

1  my claim, that Houma Fabricators must "indemnity Seacor
2  against all loss, liability and expense howsoever arising
3  directly or indirectly connected with the activities or
4  services of builder, Houma, or its subcontractors."
5          I don't think there can be any dispute, and I haven't
6  heard any, Your Honor, that Seacor's losses in this case don't
7  qualify as losses or expenses howsoever arising.  Plainly,
8  they do.
9          I don't think there's any dispute, Your Honor, that
10 they are directly or indirectly connected with the activities
11 or services of Houma Fabricators, or it's subcontractors under
12 the contract.  Your Honor, if we establish at trial that a
13 defect was in this hose, and again, Your Honor, that doesn't
14 require us to beat an East River rap --
15         THE COURT:  Let me ask Mr. Wood a question.
16         MR. WOOD:  Yes.
17         THE COURT:  I'm just looking at this language and it
18 sounds a little different to me now after hearing your
19 argument.  I just want to -- instead of hearing his whole
20 argument, let me address this to you and then let him respond
21 as well.
22         MR. WOOD:  Certainly.
23         THE COURT:  On Page 15, it seems to me that the
24 language that says "the builder shall not be required to
25 defend, hold harmless, and indemnify the owner for any claims

1  caused solely by an unseaworthy condition which occurs after
2  the delivery provided for in Article 9," seems to imply that
3  they will be required to defend, hold harmless, and indemnify
4  for claims caused solely by an unseaworthy condition which
5  occurs before the delivery.  They're not talking about --
6           MR. WOOD:  Yes, Your Honor.
7           THE COURT:  -- the event, they're talking about the
8  condition.
9           MR. WOOD:  Your Honor, again, this -- this sentence
10 points directly to the delivery period as being --
11          THE COURT:  Right, right --
12          MR. WOOD:  -- as being the cutoff.
13          THE COURT:  -- and so you have -- well, that's
14 exactly the point.  So, why doesn't that make me deny your
15 Motion for Summary Judgment straight up?
16          MR. WOOD:  Well, because, Your Honor, the language
17 here says that if -- if the --
18          THE COURT:  It's the condition which occurs, not the
19 event which occurs.
20          MR. WOOD:  If the --
21          THE COURT:  There's an event that occurs because of a
22 condition that -- an unseaworthy condition that was created
23 before -- after the event.
24          MR. WOOD:  Uh-huh.
25          THE COURT:  That means if -- let's say it was the

hose and that that's unseaworthy. The hose was changed after the delivery, then you would -- then this indemnity provision would not apply.

    MR. WOOD: Yes, Your Honor.

    THE COURT: But if the hose was provided before the delivery, then the indemnity provision would. It seems to me that that's what that's saying, isn't it?

    MR. WOOD: Well, Your Honor, that's only if you're reading the indemnity provision outside of the context of the entire contract because --

    THE COURT: Well, I don't think so, because it says you still warrant the things that are installed that are taken care of -- you know, this doesn't impact the warranty provisions. But as to the indemnity provision, there is that bright line that's before and after.

    MR. WOOD: Well, Your Honor, that -- that brings into focus the difference between a warranty and an indemnity.

    THE COURT: Exactly.

    MR. WOOD: And what the different obligations are there.

    THE COURT: Exactly.

    MR. WOOD: And what -- what the Plaintiff is trying to do is create -- is put an indemnity into the shoes of a warranty.

    THE COURT: I don't think it's what the Plaintiff's

19

1  trying to do, that's not what I'm focusing on.  I'm focusing
2  on what this language means.
3       MR. WOOD:  Well, as --
4       THE COURT:  I don't believe that the --
5       MR. WOOD:  -- as we interpret this, Your Honor, it
6  has to be read in conjunction with the risk of loss provision
7  that we -- that occurs on delivery.
8       THE COURT:  Exactly, by its very terms it refers to
9  that provision, by its terms.
10      MR. WOOD:  As Mr. Johnson's pointed out here, the
11 indemnity is really meant to encompass third-party claims.  We
12 briefed this.
13      THE COURT:  Oh, I know you briefed it, but there's no
14 mention of third-party claims in the indemnity provision.
15      MR. WOOD:  Well --
16      THE COURT:  So, that's a separate issue.
17      MR. WOOD:  That's what -- I mean to defend, hold
18 harmless and indemnity, it's our position that that relates to
19 a claim brought by a third-party, not by a claim for -- by
20 Seacor for damage to its own property that occurs after --
21      THE COURT:  I understand that.
22      MR. WOOD:  -- a risk of loss.
23      THE COURT:  I understand that argument, but that's
24 not -- that's different than the question I'm asking you.
25 That's a different thing altogether.

24

1       MR. WOOD:  Yeah.

2       THE COURT:  How did the fish guts get there --

3       MR. WOOD:  I mean someone --

4       THE COURT:  -- if it wasn't before it was delivered
5   to the owner?

6       MR. WOOD:  One of the -- one of the workers on the
7   vessel could slip on an item that's left on the vessel, and
8   because title had already passed, all right, they could sue
9   the vessel owner.  And we would be -- we would have to
10  indemnify them.

11      Now, also what if we had failed to get insurance as
12  we're required to do.  Okay, well then the indemnity clause
13  kicks in, so that anything that happens before delivery,
14  Seacor is covered.  They get either indemnity from us, they
15  get insurance coverage.  They get -- they're completely,
16  entirely covered up until the point of delivery.  Now, when
17  delivery occurs, and this language says it very clearly, we're
18  not required to defend, indemnify them, or hold the harmless
19  for any claims caused by an unseaworthy condition after
20  delivery.

21      THE COURT:  No, no, no, no.  It's saying an
22  unseaworthy condition which occurs, not a claim which occurs.
23  Look at the structure of the sentence, diagram the sentence.

24      MR. WOOD:  Yes, for any claims caused solely by an
25  unseaworthy condition with occurs after the delivery.

27

1   is, there's a limitation --
2       THE COURT: Well, why wouldn't you have the claim
3   limitations as you do in any contract? Isn't that what it
4   should be?
5       MR. WOOD: Yeah, and -- and the limitation that's in
6   this contract and is in almost all contracts like this. It's
7   the risk of loss where that -- where that point occurs, that's
8   when we say, here, it's yours. Now, if something happens,
9   we'll repair it.
10      THE COURT: Risk of loss, the connotation to me of
11  risk of loss is if lightning strikes, or if a hurricane comes
12  along, or any of those things where it's nobody's fault that
13  you have the risk of loss. I don't think risk of loss -- when
14  you're talking about risk of loss, you're not talking about an
15  unseaworthy condition.
16      MR. WOOD: Well, unseaworthiness is a writing of
17  strict liability, which is not false -- fault based. The
18  concept of fault has been removed from our client due to East
19  River.
20      THE COURT: Right.
21      MR. WOOD: Otherwise, yeah, they could -- they could
22  bring a negligence action against us, which is what they've
23  done. And we're sitting here saying, no, you don't have a
24  negligence action against us.
25      THE COURT: Do you have any cases that talk about the

38

1  here.
2              Now, Your Honor, Mr. Wood raises the distinction,
3  appropriately, between a contract to build and a contract to
4  sell.  Again, we rely on Louisiana law authorities.  The two
5  cases on point both favor us.  There's no case involving a
6  vessel which holds to the contrary.  But then getting into the
7  analytical side of it, Mr. Wood cites one case which talks of
8  a few components to consider in determining whether a contract
9  is one to build or one to sell.
10             Again, we haven't thoroughly exhausted this in the
11 briefing yet, but there are some other cases which speak
12 differently on that issue.  There are particularly a couple of
13 cases, one involving a crane where even though there was some
14 give and take amongst the people arriving at specifications
15 between the manufacturer and the buyer, that it was still
16 considered a contract of sale subject to redhibition.  But,
17 Your Honor, again, I think that we'll, you know, address that
18 further in our -- our brief.  Thank you.
19             THE COURT:  Thank you.
20             I just think that well, probably Article 6 is where
21 we need to look in the contract.  I guess I'm having a hard
22 time with title vesting without there being a sale.  To me
23 what transfer of title connotes is a sale of a thing.  And so
24 I'd like for you to address it from that standpoint when you
25 do address it.

                                                                39

1    MR. WOOD: Yes, Your Honor.
2    THE COURT: Thank you.
3    MR. WALLACE: I'm sorry -- I just want to clarify one
4  point, and when I was up here a couple of hours ago on the
5  first motion, I -- was I correct that you had waived the
6  redhibition claim against everybody except Houma?
7    THE COURT: Right, against everybody except Houma.
8    MR. RUFTY: That's correct, Your Honor.
9    MR. WALLACE: Thank you. Okay, so we don't need to
10 brief that, that's why I asked. Thank you.
11   THE COURT: Okay, I guess that concludes our business
12 here.
13   MR. WOOD: Thank you for your time, Your Honor.
14   MR. RUFTY: Thank you very much.
15                  *   *   *   *   *
16       (Whereupon, the hearing was adjourned)
17
18
19
20
21
22
23
24
25