FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAY 22 PM 1:34

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEACOR MARINE, INC. AND SEACOR OFFSHORE, INC. | * | CIVIL ACTION |
| | * | |
| | * | NO.:   00-0166 |
| **Plaintiffs** | * | |
| | * | SECTION:  "S" (1) |
| VERSUS | * | |
| | * | |
| HOUMA FABRICATORS, A DIVISION | * | |
| OF L.O.R., INC., AIR COMPRESSOR | * | |
| ENERGY SYSTEMS, INC., DRESSER | * | |
| INDUSTRIES, INC. , AND LEROI | * | |
| INTERNATIONAL, INC. D/B/A | * | |
| COMPAIR  LEROI | * | |
| | * | |
| **Defendant** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*

## PRE-TRIAL ORDER

1.   **DATE OF PRE-TRIAL:**

The pre-trial conference is set for May 23, 2001.

1

DATE OF ENTRY
MAY 2 5 2001

Fee_____
Process_____
X / Dktd _____
CtRmDep_____
Doc.No._____

2.    **APPEARANCE OF COUNSEL**:

Rufus C. Harris, III (#6638)
Alfred J. Rufty, III (#19990)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
Telephone: (504) 525-7500
Representing SEACOR Marine, Inc. and SEACOR Offshore, Inc.

Ronald A. Johnson, Esq.
Robert H. Wood, Esq.
Johnson, Johnson, Barrios & Yacoubian
One Shell Square
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7701
Telephone: (504) 528-3001
Representing Houma Fabricators, A Division of LOR, Inc.

Craig R. Nelson, Esq.
Ward Nelson, L.L.C.
1539 Jackson Ave., 6th Floor
New Orleans, Louisiana 70130
Telephone: (504) 561-5000
Representing The Gates Corporation

3.    **PARTIES INVOLVED**:

**SEACOR Marine, Inc.** has brought this suit for recovery of damages incurred as a

result of the engine room fire experienced aboard the vessel GALAXIE.

**The Gates Corporation.**

**Houma Fabricators, A Division of LOR, Inc.**, is a defendant and the builder of the

M/V GALAXIE, a 200-foot offshore supply vessel.

4.    **JURISDICTION:**

### SEACOR

Jurisdiction exists under 28 U.S.C. §1332, as the parties of diverse citizenship and the amount of the dispute exceeds $75,000 exclusive of interest and costs.

### HOUMA FABRICATORS:

The parties stipulate that this is a diversity damage suit with damages in excess of $75,000.

Houma Contends there is no maritime jurisdiction.

### GATES:

Gates contends there is no maritime jurisdiction over it for the reasons set forth in its Motion for Summary Judgment based upon the *East River* decision of the United States Supreme Court.

5.    **MOTIONS PENDING:**

### SEACOR

Motions for Summary Judgment by all parties are pending.  A Motion in Limine also may be filed by SEACOR for the exclusion of evidence pertaining to a fire test conducted by Houma and for the exclusion fire cause and origin expert testimony of Houma's mechanical engineer and surveyor.

### HOUMA FABRICATORS:

Houma Fabricators presently has a Motion for Summary Judgment pending before the court requesting dismissal of the plaintiff's Complaint for failure to state a cause of action in maritime tort or under state law for breach of contract or breach of an implied warranty.

**GATES:**

Gates has Motion for Summary Judgment to dismiss on *East River* grounds which has been heard by this Court and a decision is pending. Gates also has a second Motion for Summary Judgment to dismiss pending on grounds its product cannot be identified by any of the parties as being involved in the fire made the subject of this lawsuit.

6.    **PARTIES' SUMMARY OF MATERIAL FACTS:**

**SEACOR**

SEACOR has brought this suit for recovery of damages incurred as a result of the engine room fire experienced aboard its vessel GALAXIE. The GALAXIE was manufactured and sold by Houma Fabricators to SEACOR pursuant to a contract between them. SEACOR's damages total $595,083.77, consisting of repair costs ($308,463.77) and loss of use of the vessel ($286,620) during the repair period. Additionally, SEACOR is entitled to recover attorney fees of $95,387.92 (through May 1, 2001).

As the vessel's manufacturer, Houma engaged subcontractors to provide certain equipment to be integrated into the vessel. Among the equipment purchased from outside vendors was an air compressor manufactured by Comp Air LeRoi. The air compressor contained a flexible rubber hose manufactured by the Gates Corporation.

The GALAXIE fire occurred on January 30, 1999. SEACOR's experts have determined based on the pattern and intensity of fire damage that the source of the fire was a defective rubber hose and fitting assembly on the air compressor in the engine room. It was clear from an inspection of the fire-damaged engine room that the compressor hose had failed

4

and that lubrication oil had sprayed from the hose and ignited.

As a result of the fire, SEACOR incurred the damages noted above in repairing the damaged engine room and in loss of revenue during the vessel's period of inactivity while undergoing repairs. Because the vessel was under a long-term charter to Dowell-Schlumberger, there is no question that the full downtime loss would have been earned but for the casualty.

## A. Houma Owes SEACOR Contractual Indemnity

Under the Shipbuilding Contract, Houma is obligated to indemnify SEACOR against all losses even indirectly related to Houma's work under the contract. In relevant part, the indemnification clause (Article XVII) provided:

> . . . . . *BUILDER hereby agrees to indemnify, defend and hold harmless OWNER, . . . against all loss, liability and expense, including attorney's fees, howsoever arising, ... in any way directly or indirectly connected with the activities and services of BUILDER, or any of BUILDER's agents, employees, subcontractors or invitees.* ... Further, BUILDER shall not be required to defend, hold harmless and indemnify OWNER for any claims caused solely by an unseaworthy condition which occurs after the delivery provided for in Article IX. This shall not in any way affect any of the warranty provisions set forth in Article XII hereinabove.

This clause plainly encompasses SEACOR's losses here. Both the repair costs and the downtime losses fit easily within the plain-English phrase "all loss ... and expense, including attorneys' fees, howsoever arising."

It is equally clear that these losses are "directly or indirectly connected with the activities and services of [Houma], or ... [its] subcontractors." Those "activities and services"

5

were, after all, the manufacture and sale of the vessel. If the vessel was defective, and the defect caused the fire (as SEACOR's experts will demonstrate), then the resultant losses surely bear a connection "directly or indirectly" to Houma's activities as the manufacturer and seller of the vessel. SEACOR therefore is entitled to indemnification from Houma under the contract's indemnity clause.

Houma's contrary interpretation of the indemnity clause is untenable. Under Houma's interpretation, the final sentence of the indemnity clause – "This shall not in any way affect any of the warranty provisions set forth in Article XII hereinabove" – somehow subordinates the indemnity right to the warranty right and means that indemnification would be owed only for losses also recoverable under the warranty provisions of Article XII.

This reasoning is flawed. Under Civil Code Article 2046:

> When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.

As Revision Comment (b) to this article cautions, "the letter of [a] clause should not be disregarded under pretext of pursuing its spirit."

By no reasonable interpretation do the words of the indemnification clause state that SEACOR's right to indemnification is limited to losses compensable under the warranty clause. In fact, Houma's interpretation is the *obverse* of what the clause actually says. (Whereas it actually says "indemnity clause shall not affect warranty provisions," Houma reads it to mean "warranty provisions shall affect – i.e. limit – indemnity clause."

Houma also contends that the indemnification clause was not meant to compensate

6

SEACOR for its owns losses ("first-party claims") but rather merely for its liability to others ("third-party claims"). Again, however, this interpretation is at odds with language of the indemnity clause itself, which draws no distinction between first-party and third-party claims.

Houma further claims that SEACOR's interpretation of the indemnity clause would "render[] the [one-year] warranty limitation meaningless." This too is wrong. The twelve-month time limitation in the warranty clause has had its full effect: namely, it has prevented SEACOR from pursuing an express warranty claim.

But that has nothing to do with SEACOR's rights and Houma's obligations under the indemnity clause. The indemnity clause is an entirely separate provision that is nowhere made subject to the explicit time limitation of the warranty clause. It imposes a reasonable limit, rather, by excluding from its scope losses from defective conditions that did not exist at delivery.

Finally, Houma urges that the transfer of risk-of-loss to SEACOR upon the vessel's delivery cut-off SEACOR's indemnity rights for any losses occurring thereafter, but this argument, too, clashes with common sense; the established meaning of a risk-of-loss transfer under sales law; and the plain language of the indemnity clause.

Because the plain words of the indemnity clause entitle SEACOR to indemnity for the losses alleged here, SEACOR is entitled to have this language enforced as a matter of law.

### B. Redhibition

As Houma must concede, the only Louisiana cases on point have ruled that a vessel

7

manufacturer/seller – such as Houma – is subject to a claim in redhibition and qualifies as a "manufacturer" within the meaning of the redhibition articles. On this issue of Louisiana law, the federal courts should enforce Louisiana law in accordance with the holdings of Louisiana courts.

Although the doctrinal analysis that Houma seeks to substitute the redhibition issue is fuzzy, the holdings of Louisiana courts are clear. Because the Louisiana appellate courts have ruled that a vessel manufacturer/seller is subject to a claim in redhibition, SEACOR respectfully submits that this Court should follow those holdings as the law of Louisiana.

The Louisiana Civil Code further provides that manufacturers are conclusively presumed to have knowledge of any redhibitory defect in the thing at the time of the sale. Manufacturers are liable for consequential losses and the buyer's attorney's fees.

SEACOR's experts have pinpointed the source of the fire as a defective hose on the air compressor unit within the vessel's engine room. The compressor had been subjected to just 28.5 hours of running time since the vessel was delivered to SEACOR; the compressor had never been repaired or tinkered with by the crew; and, excepting the hose, no other component of the compressor has been found to be defective. As for the hose, the testimony of Gates own chief product engineer (Mike Cottrell) and of SEACOR expert Courtney Busch establish that it was not fully or properly attached to its fitting and it therefore was defective before the vessel's delivery to SEACOR. Additionally, the hose did not meet the governing temperature specification for this compressor application. The defective hose permitted lubrication oil to spray around the engine and ignite. Although the hose was consumed in

8

the fire and so cannot be directly examined, these facts demonstrate by a preponderance of the evidence that the hose was defective.

### C. East River is Inapplicable to Contract Claims and to the Damaged Stern Thruster

Although defendants have relied on the *East River* case to argue that SEACOR lacks a tort remedy here, this argument applies to neither SEACOR's contract-based claims against Houma (under the indemnity clause, in redhibition, and in implied warranty), nor to SEACOR's claim for fire damage to the vessel's stern thruster engine.

The maritime jurisprudence establishes that when owner-supplied equipment – that is, equipment purchased separately by a shipowner from a third party rather than from the vessel's manufacturer – is damaged in a shipboard fire, the shipowner may bring a tort claim for damage to that equipment regardless of *East River*. See *Saratoga Fishing Company v. J.M. Martinac & Co.*, 520 U.S. 875, 876, 117 S.Ct. 1783, 1785 (1997) (fire damage to equipment – a skiff, a fishing net, and spare parts – added to a vessel by its purchaser was recoverable irrespective of *East River*; see also *Nicor Supply Ships Assoc. v. General Motors Corp.*, 875 F.2d 501 (5th Cir. 1989). (ship charterer who had added seismic equipment to the ship could recover for its fire loss caused by a defective engine.)

The uncontroverted evidence establishes here that the GALAXIE's stern thruster engine, which was damaged in the fire, was purchased separately by SEACOR from a third party and was not sold or supplied by Houma under the Shipbuilding Contract. Both Houma and Gates therefore are liable for the stern thruster damage in tort, irrespective of the *East River* rule.

9

**Article 2524 Claim**

Houma is also liable to SEACOR for breach of implied warranty under Louisiana Civil Code Article 2524. Article 2524 provides:

> *Art. 2524.    Thing fit for ordinary use*
>
> The thing sold must be reasonably fit for ordinary use.
>
> When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.
>
> If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

SEACOR will prove at trial that the GALAXIE was delivered to it by Houma with a defective compressor hose assembly, which failed and triggered a fire just fourteen months after delivery when the compressor had but 28.5 hours of running time. The compressor (and so the vessel) therefore was not "reasonably fit for its ordinary use" in accordance with the dictates of Article 2524.

Houma erroneously urges that an Article 2524 claim is not available under this contract. Houma theorizes that the mere presence of Article 2524 in the Civil Code's redhibition section should mandate extension to this implied warranty right of the redhibition rule that contracts to build (as Houma pigeonholes this contract) are not ones for which relief is available. But Houma is able to muster nothing in the way of statutory text, caselaw, or even published commentary in support of this novel proposition.

10

Houma's interpretation is also at odds with the text of Article 2524 and the official "Revision Comments" that follow it. The final sentence of Article 2524 stipulates that, "If the thing is not so fit [for ordinary use], the buyer's rights are governed by the general rules of conventional obligations." Revision Comment B elaborates that the "Buyer's action in such a case is one for breach of contract and not the action arising from the action arising from the warranty against redhibitory defects." The Civil Code itself thus expressly divorces an Article 2524 claim from the rules governing redhibition suits and stipulates that the general rules applying to breach of contract actions instead obtain. Accord *Fleming v. Standard Furniture Manufacturing,* 1997 WL 180478 (Ed. La. 1997) (Berrigan, J.) ("Article 2524 ... provides for contractual remedies for breaches. This warranty is distinguishable from the warranty against redhibitory vices.").

### Gates' Liability

Although Gates denies it, the testimony of the knowledgeable witnesses establishes that the hose involved in the fire was a Gates hose. LeRoi's purchaser, ACES, testified that it received the compressor from LeRoi with the flexible hose in place. The hose on the compressor received from LeRoi was designated as LeRoi part no. 73-951.

It is undisputed that LeRoi part no. 73-951 corresponds exclusively to the Gates C5C flexible hose. At LeRoi's corporate representative, Ron Keen testified:

> Q: ...   Was the Gates C5C used in applications for 73-951 series hose?
>
> A:      Yeah, yes it was.

11

There is no contrary evidence suggesting that the flexible hose was from a different manufacturer. With the evidence thus establishing that the hose was a Gates hose, Gates is liable for SEACOR's losses.

## **MATERIAL FACTS CLAIMED BY HOUMA FABRICATORS:**

This defendant was the builder of the M/V GALAXIE, a 200-foot offshore supply vessel that was constructed for Waveland Marine, Inc. pursuant to a Shipbuilding Contract between the parties dated May 30, 1996. Before construction was completed, the Shipbuilding Contract was assigned to Seacor Marine, Inc.

The vessel was delivered to Seacor Marine, Inc. on November 25, 1997, having passed all necessary U.S. Coast Guard and American Bureau of Shipping certification examinations. The vessel was of the highest quality standards in the industry, met all contract specifications, was tested in sea trials and accepted by Seacor. The Shipbuilding Contract for the M/V GALAXIE provided a one-year warranty for all parts of the vessel constructed by Houma Fabricators and extended the manufacturer's warranty for all component parts of the vessel. Soon after delivery, Seacor returned the vessel to Houma Fabricators complaining of excessive vibration in the stern-thruster engine and asserting a claim under the vessel's warranty. After some investigation, it was determined that the damage was not a warranty item as the problem was caused by crew negligence, and Seacor paid for repairs.

Well over a year after delivery of the vessel, on January 30, 1999, an engine fire occurred on board the vessel. The evidence demonstrates that the fire started in an area aft

12

of the stern-thruster engine and spread forward, resulting in the burning of several component parts of the engine room, including a CompAir/LeRoi bulk mud air compressor. After the fire reached the area around the compressor, a flex hose containing lubricating oil burnt, causing the hose to part from its fitting and spray oil over the engine room. The cause of the ignition of the fire is unknown. However, it is defendant's position that the CompAir/LeRoi bulk mud compressor was not the cause of the fire, but was subsequently damaged after the fire had started. In any event, it is defendant's position that Seacor can't prove the cause/origin of the fire was at the air compressor hose. Houma Fabricators was not negligent in the manufacture of the vessel. Moreover, no facts support Seacor's claim for contractual warranty or indemnity. By Contract, Seacor was limited, with respect to the hose, to the warranty furnished by the manufacturer's, ACES and CompAir/LeRoi.

Defendant would also show that Seacor's Summary of Facts is really argument, not facts.

## **MATERIAL FACTS CLAIMED BY THE GATES CORPORATION**

The fire made the subject of this lawsuit was not caused by a Gates hose or any Gates product. Gates submits the evidence will show the hose in question was probably manufactured by AeroQuip as called for by the specifications. Alternatively, in the event a Gates hose is proven to have been on the air compressor made the subject of this lawsuit, same was not defective by way of design, manufacture or composition. Gates further submits the evidence will show a separation of this hose from its fitting, either before, during or after the fire, was due to negligent makeup of the hose by Hart Industries, a former

13

defendant in this lawsuit, or by ACES another former defendant in this lawsuit, in that the

hose was not fully/properly inserted into the fitting which allowed hydraulic oil to escape

from same. Further alternatively, Gates submits the fire made the subject of this lawsuit

occurred through ignition of diesel oil or paint thinner located near the stern thruster of the

M/V GALAXIE.

At all material times Gates' literature and training sessions from its regional

representatives advised all purchasers of its hose how to properly makeup same to fittings.

Gates further recommended crimping of its fittings onto hydraulic hoses rather than using

field attachable fittings which was done in this case.

Plaintiffs' damages are excessive and plaintiffs have failed to mitigate their damages.

7.    **UNCONTESTED FACTS:**

    a.    At all material times, the M/V GALAXIE was owned by Seacor Marine, Inc..

    b.    The GALAXIE was manufactured by Houma Fabricators pursuant to a
          "Shipbuilding Contract" that it entered into with Waveland Marine dated May
          30, 1996.

    c.    Waveland's rights and interest in the contract were validly assigned to
          SEACOR through an assignment agreement dated January 3, 1997.

    d.    Houma engaged various subcontractors to provide equipment to be integrated
          into the vessel.

    e.    Among the equipment purchased by Houma from outside vendors for
          integration with the vessel was an air compressor manufactured by Comp Air
          LeRoi.

    f.    The air compressor was purchased by Houma from Air Compressor Energy
          Systems (a LeRoi distributor).

    g.       At the time the air compressor was delivered to Houma, it contained a flexible rubber hose.

    h.       On January 30, 1999, the GALAXIE experienced an engine room fire.

    i.       The M/V GALAXIE passed all U.S. Coast Guard and American Bureau of Shipping inspections and certifications.

    j.       The M/V GALAXIE was delivered to Seacor Marine, Inc. on November 25, 1997.

    k.       Gates is a foreign corporation doing business in the State of Louisiana.

    l.       AeroQuip is a competitor of Gates insofar as manufacture and sale of hydraulic hoses.

## 8.  **CONTESTED ISSUES OF FACT:**

    a.       The cause and origin of the fire aboard the M/V GALAXIE.

    b.       Whether Houma manufactured and sold to SEACOR a defective vessel.

    c.       Whether the losses and expenses incurred by SEACOR as a result of the fire were directly or indirectly connected with the activities and services of Houma or any of its subcontractors.

    d.       Whether the fire started at the compressor hose or some other place in the engine room.

    e.       Whether the fire started as a result of arson, negligence or spontaneous ignition.

    f.       Whether Seacor was negligent in the maintenance and upkeep of the vessel.

    g.       The reasonableness, nature and extent of the damages claimed by the plaintiffs.

    h.       Which party drafted the indemnity and insurance clause of the Shipbuilding Contract.

i.     The intent of the parties regarding the scope of coverage and purpose of the insurance and indemnity provision in the Shipbuilding Contract.

j.     Whether Houma Fabricators provided insurance to satisfy its obligations

k.     The identity of the manufacturer of the burned lubrication flex hose on the Model WE150SSII CompAir/LeRoi air compressor.

l.     Whether the Model WE150SSII CompAir/LeRoi air compressor was designed and delivered to Air Compressor Energy Systems, Inc., with hard pipe instead of flex hose.

m.     Who installed the flex hose on the Model WE150SSII CompAir/LeRoi air compressor.

n.     Whether Houma Fabricators contributed in any manner to the cause of the fire, even if it started as contended by Seacor.

o.     Whether or not a Gates hydraulic hose was on the M/V GALAXIE prior to and the time of the fire made the subject of this lawsuit.

p.     Whether or not there was any defect by way of design, manufacture or composition of any hydraulic hose on the air compressor which caused or contributed to the fire made the subject of this lawsuit.

q.     Negligence of plaintiff in causing or contributing to the fire made the subject of this lawsuit.

r.     Whether Gates manufactured a defective hose.

s.     In August 1996, a stern-thruster engine and dynamic positioning system was added to the contract by Change Order.

t.     Whether the Shipbuilding Contract is ambiguous.

**CONTESTED ISSUES OF LAW:**

a.     Whether the indemnity clause of the shipbuilding contract entitles SEACOR to indemnity from Houma for the losses alleged.

16

b.   Whether Houma is subject to a claim in redhibition and qualifies as a "manufacturer" within the meaning of the redhibition articles.

c.   Whether Houma and Gates are liable for the stern thruster damage in tort.

d.   Whether Houma is liable to SEACOR for breach of implied warranty under ~~Louisiana Civil Code Article 2524~~.

e.   Whether Gates is liable for SEACOR's losses.

f.   Whether res ipsa loquitor applies.

g.   Whether parol evidence is admissible to interpret the Shipbuilding Contract.

h.   All those issues of law arising from the issues of fact.

i.   Whether plaintiff's claim for damage to the stern-thruster engine purchased separately by plaintiff is barred under the *East River* doctrine, or whether the stern-thruster engine constitutes "other property" for which the plaintiff may recover pursuant to federal maritime products liability.

j.   Whether the Shipbuilding Contract is ambiguous in relation to the passage of risk of loss, breach of warranty and the duty of indemnity.

k.   Whether the Shipbuilding Contract is a contract to build or a contract of sale.

l.   Whether all implied warranties were waived.

m.   Whether plaintiff's claim is barred by the warranty provision of the Shipbuilding Contract.

n.   Whether any duty of indemnity existed on the part of Houma Fabricators at the time of the engine room fire on January 30, 1999.

o.   Whether a claim in redhibition based on Louisiana Civil Code Article 2520 is applicable to the Shipbuilding Contract.

p.   Whether Houma Fabricators has breached its contract by failing to indemnify Seacor for the losses sustained as a result of the engine room fire.

q.    Whether Houma Fabricators has breached its contract through failing to provide insurance.

r.    Which party bears the risk of loss for property damage occurring as the result of an engine room fire more than twelve months after delivery of the vessel.

s.    Whether the implied warranty of Civil Code Article 2524 is applicable to a building contract and, if so, whether that warranty was breached.

t.    Whether the implied warranty in Civil Code Articles 2762 and 2769 are applicable to the Shipbuilding Contract and, if so, whether they were breached.

u.    Whether the express warranty of Houma Fabricators applies to the claim for property damage, and/or whether the manufacturer's warranty extended by A.C.E.S. and/or Compair/LeRoi applies.

v.    What effect, if any, does Seacor's settlement with the other defendants have on Houma's liability and/or Seacor's contractual remedies.

w.    Whether Seacor can collect consequential damages from Houma Fabricators under the terms of the Shipbuilding Contract or other warranties.

x.    Whether insurance policies are admissible to explain the meaning of the contractual terms.

y.    The nature and extent of damages to which Seacor is entitled, if any.

z.    Whether SEACOR is entitled to recover its attorney fees and costs under the contract's indemnity clause.

aa.   Jurisdiction over the Gates Corporation or Gates Rubber Company under *East River*.

10.   **EXHIBITS:**

**SEACOR:**

a.    Air Compressor Energy Systems, Inc. Quotation Q-4117-3

b.    Air Compressor Energy Systems, Inc. Quotation Q-4117-5

18

c.      Houma Fabricators Purchase Order H-44085

d.      Houma Fabricators Change Order Request dated 9/5/96

e.      Houma Fabricators Change Order Request dated 4/24/97

f.      Shipbuilding Contract between Waveland Marine Service, Inc. and Houma Fabricators, Inc. dated May 30, 1996

g.      Assignment of Vessel Construction Contract between Waveland Marine Service, Inc. and SEACOR Marine, Inc. dated January 3, 1997

h.      Photographs of the GALAXIE's engine room and its various components

i.      Houma Fabricators specifications dated May 22, 1996

j.      Houma Fabricators list of equipment and valves

k.      Design drawings

l.      GALAXIE engine room logs 11/26/97 thru 2/1/99

m.      GALAXIE wheelhouse logs 1/29/99 thru 2/23/99

n.      SEACOR Personal Incident Report Vessel Incident Report dated 2/2/99

o.      U.S.C.G. Form 2692 dated 2/2/99

p.      Claims statement reflecting cost of repairs and expenses, including backup documentation and invoices

q.      Invoice concerning compressor oil

r.      Seacor Safety plan for vessel

s.      Supply Air Louver Details

t.      Exhaust Piping Plan

u.      Machinery Layout

v.      Exhaust Trunk plan

w.      Inspection Reports for the vessel

x.      Certificates of Inspection

y.      Certificate of Documentation

z.      Stewart & Stevenson documents
aa.     Correspondence regarding charter party

bb.     GALAXIE hire invoices

cc.     Profit Report & Budget, January- April 1999

dd.     Seacor Hull Policy dated May 23, 1997

ee.     Photographs of the remnants of the flexible hose and fittings involved in the
        fire

ff.     Shipbuilding Contract between Waveland Marine Services and Houma
        Fabricators

gg.     Assignment of Vessel Construction Contracts

hh.     Air Compressor Energy Systems quote to Houma Fabricators regarding the
        bulk compressor system

ii.     Houma Fabricators' change order proposals regarding bulk compressor

jj.     Change order request dated August 27, 1996

kk.     Change order request dated April 1, 1997

ll.     ABS documents for the initial class survey and supplemental surveys

mm.     Construction specifications

nn.     Equipment list

oo.     Constructions drawings

20

pp.    Remnants of burned hose and fitting

qq.    Similar exemplar hoses

rr.    Motor Vessel GALAXIE fire damage report

ss.    Drawing of exhaust system

tt.    Diagrams attached as exhibits to the deposition of Courtney Busch.

uu.    SEACOR's invoices and damage documentation

vv.    Summary of SEACOR's damages

ww.    Any exhibit to any deposition

xx.    Any exhibit listed by Houma and/or Gates

yy.    The depositions of any witnesses that do not attend trial

zz.    Any exhibit necessary for rebuttal/impeachment

aaa.    Any exhibit listed by any other party

bbb.    Air Compressor Energy Systems, Inc. Invoice No. QB-2644

ccc.    All pleadings filed in this matter

ddd.    Air Compressor Energy Systems, Inc. Invoice No. QB-2644-1

eee.    Air Compressor Energy Systems, Inc. Work Order No. S-4547

fff.    United States Coast Guard Marine Casualty Investigation Report dated 30
        November 2000 with attachments

ggg.    SSL50 Material Safety Data Sheet

hhh.    Drawing No. 73-951 Series for flex hose for CompAir LeRoi compressor

iii.    CompAir Important Service Notice dated May 4, 1999

jjj.    Lubriport Laboratories, Inc. Lab Report dated February 22, 1999

kkk.    Spectra Scan, Inc. Oil Analysis Report dated February 24, 1999

lll.    Petroleum Laboratories, Inc. Coolant Analysis dated February 22, 1999

mmm. Gates' pamphlet: "Safe Hydraulics"

nnn.    Gates' catalog: "Hydraulic Hose, Fittings and Equipment"

ooo.    Gates' photographs of remains of hose from M/V GALAXIE

ppp.    Gates' 8-D Concern Analysis: 4/13/98

qqq.    Gates' Distributor Agreement with Hart Industries

## HOUMA FABRICATORS:

a.      Shipbuilding Contract dated May 30, 1996

b.      Assignment of vessel construction contracts dated 3 January, 1997.

c.      Builder's Risk policy for the account of Houma Fabricators, Inc. from January 15, 1996 to January 15, 1997.

d.      Operations Manual for CompAir/LeRoi bulk mud air compressor Model WE150SS2.

e.      M/V GALAXIE diagrams, plans and specifications.

f.      Photographs taken by Houma Fabricators during construction of the M/V GALAXIE.

g.      List of equipment manuals for the M/V GALAXIE dated 21 November 1997.

h.      Air Compressor Energy Systems, Inc. Invoice No. QB-2644.

i.      Houma Fabricators' Purchase Order H-44085.

j.      Air Compressor Energy Systems, Inc. Invoice No. QB-2644-1.

k.   Air Compressor Energy Systems, Inc. Packing List No. J1053 regarding P and O manuals.

l.   Air Compressor Energy Systems, Inc. Packing List No. J1053 regarding air compressor Model WE150SS2.

m.   Houma Fabricators' Purchase Order H-44085.

n.   Air Compressor Energy Systems, Inc. Quote No. Q-4117-5.

o.   Air Compressor Energy Systems, Inc. Quotation No. Q-4117-2.

p.   Houma Fabricators correspondence dated March 12, 1997 to Ron Naquin re air compressor quote.

q.   Houma Fabricators test logs for hull No. 78, M/V GALAXIE.

r.   United States Coast Guard Certificate of Documentation.

s.   American Bureau of Shipping National Tonnage Certificate for M/V GALAXIE.

t.   United States Coast Guard Temporary Certificates of Inspection dated 20 November 1997.

u.   American Bureau of Shipping Interim Class Certificate dated 22 November 1997.

v.   American Bureau of Shipping Provisional Load Line Certificates for the M/V GALAXIE.

w.   Air Compressor Energy Systems, Inc. Work Order No. S-4547.

x.   Wright Marine Surveying, Inc. Survey Report dated January 27, 2000.

y.   Photographs of air compressor parts.

z.   M/V GALAXIE Fire Damage Report.

aa.   Seacor Vessel Profit Report from January, 1999 through April 1999.

23

bb.    United States Coast Guard Marine Casualty Investigation Report dated 30 November 2000 with attachments.

cc.    Stewart & Stevenson letter of September 28, 2000 to Sharon Stubinsky with attachments.

dd.    Certificate of Liability Insurance issued by Sedgwick James of Georgia, Inc. on behalf of insured, Houma Fabricators.

ee.    Houma Fabricators Quotation dated May 8, 1996 to Danny Felterman.

ff.    Draft of Shipbuilding Contract dated May 20, 1996.

gg.    Draft of Shipbuilding Contract dated May 23, 1996.

hh.    Letter dated May 29, 1996 from James B. Kemp, Jr. to Butch Monnier enclosing Shipbuilding Contract.

ii.    Shipbuilding Contract dated November 5, 1990 between Houma Fabricators and Waveland Marine Service, Inc.

jj.    Draft of Shipbuilding Contract, undated, for 199.5-foot offshore supply vessel.

kk.    Draft of Shipbuilding Contract, undated, for 199.5-foot offshore supply vessel.

ll.    Shipbuilding Contract, undated, for 200-foot offshore supply vessel.

mm.    Construction Specifications for M/V GALAXIE dated May 22, 1996.

nn.    Letter from James B. Kemp, Jr. to D. Lee Felterman dated May 24, 1996.

oo.    Letter dated May 24, 1996 from James B. Kemp, Jr. to Butch Monnier enclosing Shipbuilding Contract.

pp.    Fax from Lee Felterman to Butch Monnier dated May 28, 1996 with attachments.

qq.    Fax dated May 28, 1996 from Lee Felterman to Paul Politz .

rr.    Fax dated May 29, 1996 from James B. Kemp, Jr. to Paul Politz.

ss.    SSL50 Material Safety Data Sheet.

24

tt.     Drawing No. 73-951 Series for flex hose for CompAir LeRoi Compressor.

uu.     Houma Fabricators Change Order Request for stern-thruster and DPS System and attachments.

vv.     Seacor Marine, Inc. Organization Chart dated 1999.

ww.     Marsh & McLennan Confirmation of Insurance dated May 23, 1997.

xx.     National Union Fire Insurance Company of Louisiana Policy of Insurance for the period from February 20, 1998 through February 20, 1999.

yy.     Seacor Marine, Inc. Safety Manual.

zz.     Gates Hydraulic Hose Manual.

aaa.    CompAir/LeRoi Invoice No. 20093947, dated 11-18-96.

bbb.    CompAir/LeRoi fax to Ron Naquin dated March 2, 1999.

ccc.    Air Compressor Energy Systems, Inc. fax to Robert Myers from Ron Naquin dated May 1, 2000.

ddd.    CompAir Important Service Notice dated May 4, 1999.

eee.    Air Compressor Energy Systems, Inc. fax from Ron Naquin to Gary Kaser dated February 22, 1999 with attachments.

fff.    LeRoi International, Inc. Express Warranty for Rotary Screw Products effective November 1, 1992.

ggg.    Lubriport Laboratories, Inc. Lab Report dated February 22, 1999.

hhh.    Spectra Scan, Inc. Oil Analysis Report dated February 24, 1999.

iii.    Petroleum Laboratories, Inc. Coolant Analysis dated February 22, 1999.

jjj.    Seacor Incident Report dated February 2, 1998.

kkk.    Various Photographs of the M/V GALAXIE taken by different parties, including but not limited to: Ryan Uhlich, Ed Bergeron, George Casalles, Ron Naquin, Chuck Prewitt, and the U.S. Coast Guard.

lll.    Engineer's Diary of Allen Townsend.

mmm. M/V GALAXIE Deck Log.

nnn.    M/V GALAXIE Engine Room Log.

ooo.    Any documents obtained through further discovery.

ppp.    Any depositions taken herein, including exhibits and photographs attached thereto.

qqq.    Any exhibits listed by any other party.

rrr.    Diagrams, models and/or pictures of the vessel, accident scene and pertinent equipment involved in the casualty.

sss.    All relevant blueprints, specifications, charts, maps, plats, drawings, sketches, diagrams, or other graphic representations or visual aids of the vessel and/or relating to the casualty.

ttt.    Any exhibits or documents produced in conjunction with the corporate deposition of any company.

uuu.    Any deposition used for impeachment purposes, when a witness is outside the subpoena power of the court, or is otherwise unavailable for trial.

vvv.    Exhibits and/or documents and/or attached and/or referred to or discussed in any deposition regarding the subject incident, whether needed for impeachment purposes or attached to a transcript used in lieu of live testimony.

www. Charts or illustrative materials or drawings on the blackboard or on large poster size paper to illustrate the facts of the case, the relationship of the parties, the testimony of the various witnesses, as well as the extent and elements of damages sustained by the plaintiff, or any other similar objects for use in the opening and closing statements.

xxx.    All relevant impeachment evidence.

yyy.   Report of Houma Fabricators fire investigation and engineering expert, Charles E. Prewitt.

zzz.   All documents, references and other materials relied on by Charles E. Prewitt in the course of generating his expert report.

aaaa.  Curriculum Vitae of Charles E. Prewitt.

bbbb.  Report of Houma Fabricators marine surveyor, Ryan F. Uhlich.

cccc.  All documents, reports or other materials relied on by Ryan F. Uhlich in generating his report.

dddd.  Curriculum Vitae of Ryan F. Uhlich, Sr.

eeee.  Any expert reports of any other party, including Courtney Busch, George Casellas, Edward Bergeron and Michael Cotrell.

ffff.   Any learned treatises, regulations, rules, standards and/or other data or information relied upon by such experts in formulating their opinions.

gggg.  Videotape of lubrication oil testing.

hhhh.  National Fire Protection Association, Inc. Guide for Fire and Explosions Investigations, 1998 Edition.

iiii.   Correspondence from Lee Felterman to Butch Monnier dated May 23, 1996.

jjjj.   Shipbuilding Contract dated August 5, 1996 between SEACOR and Halter Marine.

kkkk.  Shipbuilding Contract between SEACOR and Halter Marine dated April 25, 1996.

## GATES:

a.   Gates' pamphlet: "Safe Hydraulics"

b.   Gates' catalog: "Hydraulic Hose, Fittings and Equipment"

c.   Gates' photographs of remains of hose from M/V GALAXIE

    d.       Gates' 8-D Concern Analysis: 4/13/98

    e.       Gates' Distributor Agreement with Hart Industries

    f.       Gates' Distributor Mailing List

    g.       Gates' Distributor Training Program: "Safe Hydraulics Overhead Presentation"

    h.       Gates' Manufacturing Training Seminar Data

    i.       Gates' Safe Hydraulics Order Form

    j.       Gates' Safe Hydraulics Questionnaire (questions)

    k.       Gates' Safe Hydraulics Questionnaire (answers)

    l.       Gates' Distributor Reference Guide

    m.       Gates' Hydraulic Certification List

    n.       Gates' "Think Safety" sticker

    o.       Gates' flyer: "Belts, Hose, and Hydraulics" "Think Safety"

    p.       Gates' Hydraulic Training Course (Lessons 1 and 3)

    q.       Aeroquip Specifications for Hydraulic Hoses and catalogs

    r.       Exemplar hoses from AeroQuip

    s.       Any exhibit listed by any other party.

11.    **DEPOSITION TESTIMONY:**

    **SEACOR**

SEACOR may introduce into evidence the depositions of the following witnesses in lieu of live testimony.

28

a.    Clay Stribling

b.    Jamie Benyard

c.    James Key

d.    Danny Felterman

e.    Mike Cottrell

f.    Ed Bergeron

g.    Ron Keen

h.    Christopher Hart

i.    John Hart

j.    Todd Dufrene

k.    Gary Kaser

l.    Ron Naquin

m.    Courtney Busch

n.    Ryan Uhlich

o.    Charles Prewitt

p.    Jim Clendenon

q.    Tony Jones

r.    Clayton Breaux

s.    William Marquette

t.    Allen Townsend

u.    Lee Felterman

v.     Any other witness whose deposition testimony is introduced by Houma and/or
       Gates.

**HOUMA:**

a.     Captain James Key, a fact witness who will be expected to testify regarding
       the operation of the M/V GALAXIE and all facts and circumstances
       surrounding the fire at issue in this litigation (by deposition).

b.     Ed Bergeron, a fact and expert witness who will be expected to testify
       regarding his investigation of the fire on board the M/V GALAXIE and his
       estimate of the damages sustained by Seacor.

c.     Michael Cottrell, an expert witness who will be expected to testify in the area
       of compressor hose manufacture and failure (by deposition).

d.     Clayton Breaux, a fact witness who will be expected to testify regarding
       damages sustained by Seacor (by deposition).

e.     Ron Naquin, a fact witness who will be expected to testify regarding Seacor
       Marine safety policies (by deposition).

f.     Clay Stribling, a fact witness who will be expected to testify regarding Seacor
       Marine safety policies (by deposition).

g.     William Marquette, a fact witness who will be expected to testify regarding the
       involvement of Stewart & Stevenson in repairs to the M/V GALAXIE (by
       deposition).

h.     Ron Keen, a fact witness who will be expected to testify regarding the
       manufacture of the CompAir/Leroi bulk compressor on aboard the M/V
       GALAXIE (by deposition).

i.     Gary Kaser, a fact witness who will be expected to testify regarding the
       manufacture of the Compair/Leroi bulk mud compressor on board the M/V
       GALAXIE (by deposition).

j.     Roger Hart and Chris Hart, fact witnesses who will be expected to testify
       regarding the manufacture and distribution of compressor hoses (by
       deposition).

k.    Jimmy Merriman, a fact witness who will be expected to testify regarding compressor hoses (by deposition).

**GATES**

Deposition testimony:

Michael Cottrell - fact and expert
(only in the event he is unable to attend trial in person)

12.    **LIST OF CHARTS, GRAPHS, MODELS, SCHEMATIC DIAGRAMS AND SIMILAR OBJECTS WHICH COUNSEL INTEND TO USE IN OPENING STATEMENTS AND CLOSING ARGUMENTS:**

**SEACOR:**

SEACOR, reserves the right to use charts, physical evidence, diagrams and/or blow-ups at trial in connection with witness examination or argument.

**HOUMA FABRICATORS:**

Houma Fabricators will use photographic blowups, engine room charts and other diagrams, drawings, documents or physical evidence in its presentation.

**GATES:**

Gates may use any of same prepared and used by witnesses in their deposition or attached to their reports.

13.    **WITNESSES:**

**SEACOR** will call the following witnesses at trial:

a.    Mr. George Cassalles, who will testify as an expert concerning the cause and origin of the fire.

b.    Any witness necessary to authenticate documents not introduced by agreement

c.     Michael Cottrell, as a corporate representative of the Gates Rubber Company (by deposition);

d.     Clay Stribling and Daniel Felterman, both individually as fact witnesses relating to the construction and operation of the GALAXIE and as corporate representatives of SEACOR (by deposition).

SEACOR Marine, Inc. and SEACOR Offshore, Inc., may call the following witnesses at trial:

a.     Mr. Ed Bergeron, who may testify live or by deposition as an expert marine surveyor or concerning his investigation of the fire.

b.     Mr. Courtney Busch, who may testify live or by deposition as an expert in metallurgy and materials failure analysis concerning defects in the hose assembly and their relation to the fire.

c.     Any witness presented live by any other party.

d.     Ron Naquin, as a corporate representative of Air Compressor Energy Systems (by deposition);

e.     Ron Keen, Gary Kaser, and Jimmie Meriman, as corporate representatives of CompAir LeRoi (by deposition);

f.     Roger Hart and Christopher Hart, as corporate representatives of Hart Industries (by deposition);

g.     Stewart and Stevenson (by deposition);

h.     Tony Jones regarding the operation, maintenance and repair of the GALAXIE (by deposition);

i.     Jim Clendendon regarding the operation, maintenance and repair of the GALAXIE (by deposition);

j.     Jamie Benyard regarding operation and maintenance of the GALAXIE's engine room (by deposition);

k.     James Key regarding operation of the GALAXIE (by deposition).

32

l.   Mary Liles, who may testify regarding SEACOR's damages.

m.   Allen Townsend who may testify live or by deposition concerning engine room operations and the fire.

## HOUMA FABRICATORS:

The following witnesses will be called at trial in the absence of reasonable notice to opposing counsel to the contrary:

a.   O. E. "Butch" Monnier, Jr.
     c/o Houma Fabricators
     1100 Oak Street
     Houma, Louisiana 70363

Mr. Monnier will testify as to the negotiation, formation and execution of the Shipbuilding Contract for the M/V GALAXIE, communication with Seacor representatives during construction and after delivery of the vessel, the design and construction of the M/V GALAXIE, shipbuilding practices and customs in the industry, engine room design and operation, post-fire investigation, installation/repair to sternthruster, installation/operation of air compressor and any other aspect relating to the subject matter of the lawsuit.

b.   James Tabor
     c/o Houma Fabricators
     1100 Oak Street
     Houma, Louisiana 70363

Mr. Tabor will testify regarding communication with Seacor representatives during construction and after delivery of the vessel, the design and construction of the M/V GALAXIE, shipbuilding practices and customs in the industry, engine room

33

design and operation, post-fire investigation, installation/repair to sternthruster, installation/operation of air compressor and any other aspect relating to the subject matter of the lawsuit.

      c.      Paul J. Politz
              Taylor, Wellons and Politz, LLC
              1615 Poydras Street
              Suite 630
              New Orleans, Louisiana 70112

Mr. Politz will testify regarding the negotiation, formation and execution of the Shipbuilding Contract

      d.      Ryan F. Uhlich, Sr.
              c/o Maritime Surveyors, Inc.
              4232 Williams Boulevard,
              Suite 109
              Kenner, Louisiana 70065.

Mr. Uhlich will testify regarding post-fire investigation and as an expert in the area of marine surveying, materials analysis and fire cause/origin.

      e.      Charles E. Prewitt
              c/o Denson Engineers, Inc.
              225 Baronne Street
              Suite 1401
              New Orleans, Louisiana 70112

Mr. Prewitt will testify as an expert in marine engineering, materials analysis, and fire cause and/or origin investigation.

      f.      Ross Kraemer
              c/o Houma Fabricators
              1100 Oak Street
              Houma, Louisiana 70363

Mr. Kraemer will testify regarding communication with Seacor representatives during construction and after delivery of the vessel, the design and construction of the M/V GALAXIE, shipbuilding practices and customs in the industry, engine room design and operation, post-fire investigation, installation/repair to sternthruster, installation/operation of air compressor and any other aspect relating to the subject matter of the lawsuit.

   g.     Rodney Freeman
          c/o Houma Fabricators
          1100 Oak Street
          Houma, Louisiana 70363

Mr. Freeman will testify regarding communication with Seacor representatives during construction and after delivery of the vessel, the design and construction of the M/V GALAXIE, shipbuilding practices and customs in the industry, engine room design and operation, post-fire investigation, installation/repair to sternthruster, installation/operation of air compressor and any other aspect relating to the subject matter of the lawsuit.

   h.     Jack Keller
          c/o Houma Fabricators
          1100 Oak Street
          Houma, Louisiana 70363

Mr. Keller will testify regarding communication with Seacor representatives during construction and after delivery of the vessel, the design and construction of the M/V GALAXIE, shipbuilding practices and customs in the industry, engine room design and operation, post-fire investigation, installation/repair to sternthruster,

installation/operation of air compressor and any other aspect relating to the subject matter of the lawsuit.

  i.  Ed Bergeron
     Wright Marine Surveying, Inc.
     1671 Front Street
     Morgan City, Louisiana 70381

     Mr. Bergeron will testify in the area of post-fire investigation, causation and damages.

  j.  Lee Felterman of SEACOR.

  k.  Captain James Key, a fact witness who will be expected to testify regarding the operation of the M/V GALAXIE and all facts and circumstances surrounding the fire at issue in this litigation (by deposition).

  l.  Ed Bergeron, a fact and expert witness who will be expected to testify regarding his investigation of the fire on board the M/V GALAXIE and his estimate of the damages sustained by Seacor.

  m.  Michael Cottrell, an expert witness who will be expected to testify in the area of compressor hose manufacture and failure (by deposition).

  n.  Clayton Breaux, a fact witness who will be expected to testify regarding damages sustained by Seacor (by deposition).

  o.  Ron Naquin, a fact witness who will be expected to testify regarding Seacor Marine safety policies (by deposition).

  p.  Clay Stribling, a fact witness who will be expected to testify regarding Seacor Marine safety policies (by deposition).

  q.  William Marquette, a fact witness who will be expected to testify regarding the involvement of Stewart & Stevenson in repairs to the M/V GALAXIE (by deposition).

  r.  Ron Keen, a fact witness who will be expected to testify regarding the manufacture of the CompAir/Leroi bulk compressor on aboard the M/V

36

GALAXIE (by deposition).

s.  Gary Kaser, a fact witness who will be expected to testify regarding the manufacture of the CompAir/Leroi bulk mud compressor on board the M/V GALAXIE (by deposition).

t.  Roger Hart and Chris Hart, fact witnesses who will be expected to testify regarding the manufacture and distribution of compressor hoses (by deposition).

u.  Jimmy Merriman, a fact witness who will be expected to testify regarding compressor hoses (by deposition).

v.  Any expert called by any other party.

w.  Any witness necessary to authenticate any evidence.

x.  Any witness whose statement/deposition has been taken.

y.  Any witness listed by any party.

z.  Any witness necessary for impeachment purposes.

## GATES:

The following witnesses will be called at trial by Gates:

a.  Michael Cottrell: fact and expert
    c/o The Gates Corporation
    999 South Broadway
    Denver, CO  80217

Cottrell will give factual testimony concerning the design, manufacture and composition of Gates hydraulic hoses; Cottrell will also testify as expert in the field of mechanical engineering with a subspecialty in design, manufacture and composition of Gates hydraulic hoses and will give opinions concerning the design, manufacture and composition of Gates hydraulic hoses alleged to involved in the

37

incident made the subject of this lawsuit and the cause and origin of the fire made the subject of this lawsuit.

Gates _may_ call the following witnesses:

a.    Mark Newberry.

b.    Gabe Gargarella.

c.    Christopher Hart.

d.    Roger Hart.

e.    Dick Batzer.

f.    Any witness listed by any other party.

    The Witness Lists have been filed in accordance with prior court orders and expert reports have been exchanged in accordance with prior court orders.

14.    This is a non-jury case.

15.    The issue of liability will not be tried separately from that of quantum.

16.    Rulings on the pending summary judgment motions would expedite disposition of the case.

17.    Trial shall commence on June 11, 2001. The case will take approximately 3 days to try.

18.    This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.    Possibility of settlement of this case was considered.

New Orleans, Louisiana this _23_ day of May, 2001.



_____

UNITED STATES DISTRICT JUDGE


Respectfully submitted,

HARRIS & RUFTY, L.L.C.


_____

Rufus C. Harris, III (#6638)
Alfred J. Rufty, III (#19990)
1450 Poydras Street, Suite 1510
New Orleans, Louisiana 70112
Telephone:  (504) 525-7500
Representing SEACOR Marine, Inc. and
SEACOR Offshore, Inc.



_____

Craig R. Nelson, Esq.
Ward Nelson, L.L.C.
1539 Jackson Ave., 6th Floor
New Orleans, Louisiana
Telephone: (504) 561-5000
Representing The Gates Corporation


_____

Ronald A. Johnson, Esq.
Robert H. Wood, Esq.
Johnson, Johnson, Barrios & Yacoubian
One Shell Square
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7701
Telephone: (504) 528-3001
Representing Houma Fabricators, A Division of
LOR, Inc.

39

May 18, 2001
Page 5

13.    Parties witnesses:

Will call witnesses of the Gates Corporation:

1.    Michael Cottrell: fact and expert
      c/o The Gates Corporation
      999 South Broadway
      Denver, CO  80217
      Cottrell will give factual testimony concerning the design, manufacture
      and composition of Gates hydraulic hoses; Cottrell will also testify as
      expert in the field of mechanical engineering with a subspecialty in design,
      manufacture and composition of Gates hydraulic hoses and will give
      opinions concerning the design, manufacture and composition of Gates
      hydraulic hoses alleged to involved in the incident made the subject of this
      lawsuit and the cause and origin of the fire made the subject of this
      lawsuit.

May call witnesses of the Gates Corporation:

2.    Mark Newberry: fact
      c/o The Gates Corporation
      999 South Broadway
      Denver, CO  80217
      Newberry will testify on Gates sales and marketing of hydraulic hoses and
      training of independent distributors of Gates hydraulic hoses including but
      not limited techniques involving in making up hydraulic hoses.

3.    Gabe Gargarella: fact
      c/o The Gates Corporation
      Fort Mitchell, KY
      Gargarella will testify as independent distributor of Gates hydraulic hoses
      and other products on sales to and distribution of Gates literature to Hart
      Industries prior to fire made the subject of this lawsuit in addition to
      training sessions on how to makeup Gates hydraulic hoses.

4.    Christopher Hart: fact
      c/o Hart Industries
      Westchester, OH
      Hart will testify as to independent distributor status of Hart Industries and
      sales and marketing of Gates hydraulic hoses to its customers.

May 18, 2001
Page 6

     5.     Roger Hart: fact
                c/o Hart Industries
                Westchester, OH
                Hart will testify as to independent distributor status of Hart Industries and sales and marketing of Gates hydraulic hoses to its customers.

     6.     Dick Batzer: fact
                750 North Academy
                Galesburgh, IL  61401
                Batzer will testify on Gates sales and marketing of hydraulic hoses and training of independent distributors of Gates hydraulic hoses including but not limited techniques involving in making up hydraulic hoses.

     7.     Any witness listed by or deposed by any other party.

14.     You fill in.

15.     You fill in.

16.     Matters which might expedite disposition of the case:

     Decision on all pending motions at earliest possible date.

     Please let me see a copy same prior to submission of the original to the court.

                Cordially,

                Craig R. Nelson

CRN/tlf