

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAY 25  A 11: 14

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SEACOR MARINE, INC. AND**<br>**SEACOR OFFSHORE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 00-0166** |
| **HOUMA FABRICATORS, A DIVISION**<br>**OF L.O.R., INC. ET AL.** | **SECTION: "S" (1)** |

### ORDER AND REASONS

IT IS **HEREBY ORDERED** that the motion for summary judgment of Houma Fabricators, A Division of L.O.R., Inc., on the maritime tort claim is **GRANTED**.  (Document #60.)

IT IS **FURTHER ORDERED** that Houma Fabricators, A Divison of L.O.R., Inc.'s motion for summary judgment is **GRANTED** as to the redhibition and breach-of-contract (indemnity) claims and **DENIED** as to the breach-of-implied-warranty-of-fitness claim.  (Document #125.)

IT IS **FURTHER ORDERED** that Seacor's motion for partial summary judgment is **DENIED** as to the redhibition and breach-of-contract (indemnity) claims.  (Document #135.)

DATE OF ENTRY **MAY 2 5 2001**

Fee_____
Process_____
X  Dktd  16
✔ CtRmDep_____
Doc.No. 200

## I.  BACKGROUND

On May 30, 1996, Houma Fabricators, A Division of L.O.R., Inc.

(Houma), entered into a contract with Waveland Marine Service, Inc.

(Waveland) to build the M/V GALAXIE, a 200-foot, offshore supply

boat.  On January 3, 1997, while the vessel was under construction,

Waveland assigned the vessel construction contract to Seacor

Marine, Inc.  Houma delivered the completed vessel to Seacor in the

fall of 1997.

On January 30, 1999, a fire occurred in the engine room of the

M/V GALAXIE.  The alleged cause of the fire was a defective

hydraulic hose on a bulk air compressor module, which ruptured,

spreading oil over the engine room floor.  The oil ignited and

caused damage to the vessel.

Houma purchased the air compressor package from a regional

supplier, Air Compressor Energy Systems, Inc. (ACES), on September

6, 1996, and installed it aboard the M/V GALAXIE as part of its

original equipment. The component parts used to assemble the air

compressor package were manufactured by LeRoi International, Inc.

d/b/a CompAir LeRoi and Dresser Industries, Inc. (collectively,

LeRoi).  The hose was allegedly manufactured by Gates Rubber

Company (Gates) and supplied by Hart Industries, Inc. (Hart).

On January 18, 2000, Seacor Marine Inc. and Seacor Offshore,

Inc. (Seacor) filed a complaint seeking damages of $600,000 against

2

Houma, ACES, and LeRoi, asserting admiralty and maritime jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. LeRoi filed a third-party complaint alleging a maritime claim against Gates and Hart pursuant to Rule 14(c).

On January 25, 2001, Seacor filed a "First Supplemental and Amending Complaint" against Houma, ACES, LeRoi, alleging many claims for relief. Seacor has withdrawn most of the claims.

On March 22, 2001, the magistrate judge issued a "Partial Order of Dismissal," dismissing the claims against ACES, LeRoi, and Hart. The claims against Gates were dismissed on May 25, 2001. Claims against Houma for maritime products liability, based on negligence and strict liability; redhibition; breach of contract (indemnity); and breach of implied warranty are pending.

Houma filed a motion to dismiss the maritime claims or for summary judgment, asserting that, under East River S.S. Corp. v. Transamerica Delaval, Inc. 106 S. Ct. 2295 (1986), no products-liability claim lies in admiralty for Seacor's claims for economic loss and damage to the vessel which was the subject of the construction contract. Houma filed a motion for summary judgment on the supplemental claims of redhibition, breach of implied warranty, and breach of the indemnity clause of the contract. Seacor filed a motion for partial summary judgment on the claims of redhibition and indemnification.

3

## II.  DISCUSSION

### A.  Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B.  Maritime tort: product or "other property"

The maritime torts alleged in the complaint fall within the admiralty jurisdiction because the offshore supply vessel GALAXIE engaged in traditional maritime activity. East River, 106 S.Ct. at 2298. "With admiralty jurisdiction comes the application of substantive admiralty law." Id. at 2298-99. "Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." Id. at 2299. Products liability, including negligence

4

and strict liability, is recognized as part of the general maritime law.  Id.

"[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."  Id. at 2302.  "When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."  Id.  "Damage to a product itself is most naturally understood as a warranty claim."  Id.  "The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified."  Id.  Losses that result when a product injures itself can be insured.  Id.

It is clear from East River that when a manufacturer sells a product to an initial user and places it in the stream of commerce, that item is the "product itself."  Saratoga Fishing Co. v. J.M. Martinac & Co., 117 S.Ct. 1783, 1786 (1997) (case involving the resale of a vessel).  The vessel, as placed in the stream of commerce, and not the component part, is the product that itself causes the harm.  See Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925, 928 (5th Cir. 1987).  A determination whether a component is "other property" is a legal question, and the court looks to the nature of the contract between the parties and the

5

contractual interpretation.  See Petroleum Helicopters, Inc. v. Avco Corp., 930 F.2d 389, 393 n.9 (5th Cir. 1991).

Houma argues that it cannot be held liable for harm caused to the vessel by the fire under the economic loss rule of East River because the damages asserted by Seacor are for harm to the defective product itself.  Further, Houma argues that the stern thruster engine was an integral part of the vessel for which Seacor contracted with Houma.  Houma contends that Seacor bargained and contracted for a complete vessel, and the fact that Seacor purchased and supplied certain component parts prior to completion and delivery of the vessel is irrelevant.  Houma argues that it was obligated to procure builder's risk insurance to include coverage of the equipment furnished by Seacor and that the contract's warranty provisions apply to the stern thruster engine supplied by Seacor.

Seacor presents alternative bases for its maritime tort claims: 1) damage sustained by the vessel as a result of the fire, and 2) damage to a stern thruster engine which Seacor purchased separately.  Seacor contends that the damaged stern thruster engine is "other property" for which it can recover in tort, even though it was integrated into the vessel.  Seacor argues that a contract remedy is not available against Houma for an inherent defect in the stern thruster engine because Seacor supplied the engine and that

6

Houma did not select, supply, or sell the stern thruster engine under the shipbuilding contract or otherwise.

Under East River, Seacor's first category of claims to recover for the damage to the vessel itself, other than the stern thruster engine, is clearly not cognizable because the claim is for economic loss for damage to the product itself. The more difficult question before the court is whether there is a cognizable alternative claim for damage to the stern thruster engine, which Seacor contends is other property that was purchased separately from a third party. To answer the question, the court examines the contract to determine whether the stern thruster engine was part of the bargained for "object of the contract" or a separately bargained for individual component of the vessel,

Louisiana contract law is applicable in this case. Under Louisiana law, "[a] contract is formed by the consent of the parties established through offer and acceptance." La. Civ. Code Ann. art. 1927 (West 1987). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Robinson v. Robinson, 778 So.2d 1105, 1121 (La. 2001); La. Civ. Code art. 2046. The meaning and intent of the parties must be sought within the four corners of the contract and generally cannot be explained or contradicted by parol evidence. Id. If the

7

parties have not made a provision for a particular situation, it is assumed that they intended to bind themselves to the express provisions of the contract and "to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." Frey v. Amoco Production Co., 603 So.2d 166, 172 (La. 1992); La. Civ. Code Ann. art. 2054 (West 1987). The court endeavors to ascertain the meaning of the written agreement in a manner consistent with agreements in the industry to achieve the end result. Id. at 172-73.

Article IV of the "Shipbuilding Contract" permitted Seacor (the owner) to furnish equipment, providing:

> All OWNER furnished equipment must be furnished as stated complete, for application intended, certified for service intended and delivered F.O.B. BUILDER's yard at 1100 Oak Street in Houma, Louisiana, in a timely manner as not to delay the progress of the work.

In his deposition, Butch Monnier, the president of Houma, testified as follows concerning the portion of the contract that permitted Seacor to purchase the stern thruster engine:

> Under the contract, we allowed Seacor to furnish certain pieces of major equipment of large dollar cost and minimal handling so that I would not mark them up 10 percent for handling and charge Seacor for it.

Article V further addresses the owner-furnished items:

> The OWNER has the option to furnish various items for the Vessel as outlined in the Specifications and in the Quotation Letter of May 22, 1996. In the event the OWNER chooses to furnish any of the items, the BUILDER

8

shall credit the OWNER for the cost of the said item as
reflected in the Specifications, plus 10%.  The OWNER
shall have the option to supply but not be limited to
the following items:

    a) Two EMD 16-645E Main Engines with accessories;
    b) Two (2) Reintjes WAF 1941 Marine Gears with
accessories;
    c) Two (2) Detroit Diesel 8-V71, 99 KW Generators
with accessories;
    d) One (1) Detroit Diesel 8-V71 Bowthruster Engine
Coupled to One (1) Twin Disc MG 509 Marine Gear with
accessories;
    e) One (1) Detroit Diesel 6-71 Bulk Mud/Liquid Mud
Drive Engine complete with accessories.

Article VI concerns the transfer of title to the vessel and

states:

    Title to the Vessel, to the extent completed, and
title to all work, materials and components performed
on, installed in or placed on board the Vessel or
otherwise delivered to BUILDER's yard or fabricated by
the BUILDER shall vest in OWNER immediately upon
completion of such work, delivery to BUILDER's yard of
materials or fabrication of such components, and payment
for same by OWNER.  Title to all materials located and
components fabricated at BUILDER's yard and all
materials and components of BUILDER located elsewhere,
for use in the performance of the construction of the
Vessel, shall also vest in OWNER to the extent that same
have been paid for by OWNER, regardless of whether such
materials or components have been installed in or placed
on board the Vessel; provided, however, that except as
may be otherwise provided for in this Agreement, **the
risk of loss or damage to such materials, components,
work and the Vessel shall remain the liability of the
BUILDER, and OWNER shall not be deemed to have waived
its rights to require BUILDER to replace, at BUILDER's
sole expense, defective, damaged or destroyed
workmanship or material, and to deliver the Vessel with
the work thereon properly completed as provided for in
this Agreement.**  BUILDER shall retain title to such
components, materials and completed work to the extent

9

> that such components, work and material have not been
> paid for by OWNER.  Notwithstanding the foregoing,
> BUILDER shall remain liable for the risk of loss of all
> workmanship and components and materials if the Vessel
> is not delivered to or accepted by OWNER.

(Emphasis added.)

Under Article IX, Houma agreed "to complete and deliver the vessel to the OWNER . . . afloat in a seaworthy condition and ready and fit for the service intended."

At the time of delivery, Houma warranted the work performed under the contract against any defects discovered within one year after delivery of the vessel to Seacor.  Article XII provides in relevant part:

> [S]uch defects shall be corrected by BUILDER, or the
> defective parts shall be replaced by the BUILDER at such
> place as the parties shall mutually agree; provided,
> however, that in the instance of equipment purchased by
> BUILDER from others and incorporated in the Vessel, the
> responsibility of the BUILDER for defects in such
> equipment shall be limited to the usual guarantee or
> warranty extended by the manufacturer's supplier of such
> equipment.

Houma assumed responsibility under the contract to obtain insurance to cover the hull and materials, including equipment furnished by Seacor.  Article XVII (A) provides:

> A.  BUILDER shall procure a Builder's Risk Policy
> covering Hull and all of the equipment and materials to
> be incorporated into the Hull (**including OWNER furnished
> equipment**) to its full value.  In the event of any
> partial loss(es), the proceeds of said policy covering
> said partial loss(es) shall be paid directly to BUILDER
> and used by BUILDER in the repair or replacement of the

10

damaged areas.  In the event that a "Constructive Total
Loss" (as that term is defined in the Builder's Risk
Policy) should occur subsequent to the Hull being
substantially complete, OWNER shall be reimbursed out of
the proceeds of such policy of all progress payments
previously made to BUILDER and for **the cost of any OWNER
furnished equipment or materials** destroyed as a result
of such Constructive Total Loss.  All other proceeds of
the policy shall be paid to BUILDER and OWNER, as their
interests may appear.  BUILDER and OWNER shall be named
assured on said Builder's Risk Policy.

. . . .

Further, all deductibles shall be the sole
responsibility of BUILDER.

(Emphasis added.)

Seacor relies on <u>Transco Syndicate #1, Ltd. v. Bollinger
Shipyards, Inc.</u>, 1 F.Supp.2d 608 (E.D.La. 1998) to support its
argument that the stern thruster engine is other property that is
not the object of the bargained-for contract.  In <u>Transco</u>, a fire
occurred on board a 78 foot tug, which the owner/plaintiff,
Barnacle Marine Management, Inc., alleged was caused by a defective
fuel hose located in one of the vessel's diesel engines.  Pursuant
to a contract to repair and refurbish the vessel, Bollinger
Shipyard installed two used diesel engines that Barnacle purchased
from Diesel Engine & Parts Company (DEPCO).  Diesel Engine
purchased the engine that allegedly cause the fire from Diesel
Specialists, Inc (Diesel).  Barnacle and its insurer, Transco
Syndicate #1, Ltd. (Transco), filed suit against, alleging fault,

11

breach of contract, and/or breach of warranty.  DEPCO filed a third-party complaint against Diesel and a cross-claim against Bollinger, alleging that the engine it purchased from Diesel was defective and that it was improperly installed by Bollinger. Bollinger was dismissed from the suit on an unopposed motion for summary judgment.  Diesel filed a motion for summary judgment, arguing that it could not be held responsible for economic harm to the defective product itself.  The court held that the two engines that caused the harm were "other property" and denied Diesel's motion for summary judgement under the economic loss doctrine of East River.

Transco is factually distinguishable from the present case. Barnacle did not purchase an entire vessel from DEPCO; therefore the vessel was not the object of Barnacle's contract with DEPCO. Barnacle purchased two diesel engines that allegedly caused the fire from DEPCO and provided them to Bollinger Shipyard to install under a contract to repair and refurbish the vessel.  The engines were other property because they were components added to the vessel subsequent to its initial sale.  Seacor entered into a contract with Houma to construct a vessel under which Seacor exercised its right to separately purchase the stern thruster engine.  The stern thruster engine was installed by Houma, and the entire vessel was the product that Houma delivered to Seacor.

12

An examination of the express provisions of the contract
indicates that the object of the contract included the stern
thruster engine even though it was furnished by the owner.  As part
of the bargain, the parties agreed that Seacor could choose to
furnish certain equipment that would result in a financial benefit
to Seacor.  Houma installed and incorporated the owner-furnished
equipment, and remained liable for the risk of loss of all
workmanship and components prior to delivery of the completed
vessel to the owner.  Houma purchased insurance to cover the hull
and all equipment and materials incorporated into the vessel,
including the owner-furnished equipment, and accepted
responsibility to pay the full deductible on the policy.  Upon
delivery, Houma warranted the vessel against defects for which it
was responsible, including the installation of equipment supplied
by manufacturers, for one year.[1]

Accordingly, the court concludes that the stern thruster

---

[1]    The record indicates that Seacor expected Houma to repair
the stern thruster engine under the warranty.  Monnier testified in
his deposition that, during the warranty period, Seacor brought the
vessel back to Houma to resolve vibration problems with the stern
thruster engine.  Houma took readings and measurements on the
engine and found that a tail shaft which extended from the stern
thruster engine to the stern thruster units was twisted.  In this
instance, Seacor was billed for the repairs because Mel Rose, the
president of Seacor, examined the damage and agreed that Seacor's
negligence caused the damage to the vessel.  The damage occurred as
Seacor attempted to keep the vessel against the bank during
inclement weather.

engine is part of the product itself, not other property. Even though the contract gave Seacor the option to furnish equipment separately that met the specifications of the contract and to receive a credit for the cost of the furnished item, the owner-furnished equipment was part of the vessel, which was the object of the contract. Houma sold the entire vessel to Seacor as the initial user and placed it in the stream of commerce. Houma has no duty under either a negligence or strict products-liability theory to prevent the vessel from injuring itself.

Therefore, there are no genuine issues of material fact, and Houma Fabricators is entitled to judgment as a matter of law, dismissing the maritime tort claim.

## C. Redhibition

Houma contends that plaintiffs cannot state a claim for redhibition because the redhibition statute applies only to a contract of sale, not a contract to build. Houma argues that the present contract is a contract to build because Seacor exerted control over the details of the construction of the M/V GALAXIE through discussions and negotiations relating to plans, specifications and overall cost, the negotiations took place before the commencement of the vessel's construction and prior to delivery, and it was contemplated that Houma would supply

14

materials, skill, and labor to construct the vessel.

"Redhibition is the avoidance of a sale because of some vice or defect in the thing sold." <u>Insurance Storage Pool v. Parish Nat'l Bank</u>, 732 So.2d 815, 819 (La. Ct. App. 1999) (citing <u>Capitol City Leasing Corp. v. Hill</u>, 404 So.2d 935, 939 (La. 1981)); La. Civ. Code art. 2520. In order for a party to bring an action in redhibition under Louisiana law, the underlying transaction must be a sales contract. <u>See</u> <u>Gulf States Utilities Co. v. Ecodyne Corp.</u>, 635 F.2d 517, t521 (5th Cir. 1981). A party cannot recover in redhibition if the contract is one to build. <u>See</u> <u>Duhon v. Three Friends Homebuilders Corp.</u>, 396 So.2d 559, 561 (La. Ct. App. 1981). Because the redhibition statute applies only to a sales contract, the court must characterize the contract between Houma and Seacor as a contract for sale or a contract to build. Where, as in this case, the contract includes aspects of the obligation both to do (a building contract) and to give (a contract of sale), the court must determined that one of the obligations is fundamental. <u>See</u> <u>Conmaco, Inc. v. Southern Ocean Corp.</u>, 581 So.2d 365, 369 (La. Ct. App. 1991) (citing 7 S. Litvinoff, La. Civil Law Treatise: Obligations Book 2, Section 158, 291). "[A] court considers the economics of the situation to determine if the primary obligation is to give (sales contract) or to do (construction contract)." <u>Poree v. Elite Elevator Services, Inc.</u>, 665 So.2d 133, 135 (La. Ct.

15

App. 1995) (citing <u>Harris v. Black Clawson Co.</u>, 961 F.2d 547, 553

(5th Cir. 1992); *The Work of the Louisiana Appellate Courts for the*

*1977-1978 Term-Sales*, 39 La.L.Rev. 705, 712 (1979)).

"Sale is a contract whereby a person transfers ownership of a

thing to another for a price in money." La. Civ. Code art. 2439.

Article 2756 characterizes a contract to build as follows: "To

build by a plot, or to work by the job, is to undertake a building

or a work for a certain stipulated price."

Louisiana jurisprudence has developed several tests for

determining whether a contract is a contract of sale or a

construction contract. Under the "value test" the court determines

whether the labor expended in constructing the item, or the

materials incorporated therein, constitute the principal value of

the contract." <u>Alonzo v. Chifici</u>, 526 So.2d 237, 241 (La. Ct. App.

1988). In addition, Louisiana courts have often used three major

factors to determine whether a transaction is a sale or a building

contract:

> First, in a contract to build, the "buyer" has some
> control over the specifications of the object. Second,
> the negotiations in a contract to build take place
> before the object is constructed. Third, and perhaps
> most importantly, a building contract contemplates not
> only that one party will supply the materials, but also
> that that party will furnish his skill and labor in
> order to build the desired object.

<u>Duhon v. Three Friends Homebuilders Corp.</u>, 396 So.2d 559, 561 (La.

16

Ct. App. 1981).

In this case, the fundamental object of the contract between Houma and Seacor was to build a vessel. The vessel was constructed in accordance with plans and specifications approved by Seacor, and Houma agreed "to furnish all plant, labor, tools, equipment, and materials necessary for the construction of the vessel." Although the contract permits the "Owner" to furnish some equipment, the contract required that the equipment be furnished "complete, for application intended, certified for service intended and delivered . . . in a timely manner as not to delay the progress of the work."

The language in the contract addressing the transfer of title to the owner does not preclude categorizing the contract as a building contract. Under Louisiana law, although the risk of loss normally passes to the obligee upon transfer of ownership, La. Civ. Code art. 2456, in the case of building contracts, a loss that occurs prior to delivery will be borne by the building contractor who furnishes the materials. La. Civ. Code. Art. 2758. If the contractor does not furnish materials, the owner retains the risk of loss throughout construction. La. Civ. Code art. 2759. If the work that is the subject of the contract is paid for in installments, that portion of the work completed and paid for becomes the liability of the owner and delivery is presumed upon payment. La. Civ. Code art. 2761.

17

Article VI of the contract reconciles the code provisions in this case by providing that the risk of loss remained with Houma until delivery.  Further, Article IX of the contract provides that risk of loss shall transfer to the owner upon delivery.  Delivery is the key to the completion of the obligation of the builder, and the obligation remains with the builder until delivery and acceptance by the owner.

Seacor argues that Houma should be characterized as a "manufacturer" of the vessel for purposes of the redhibition statute.  In Poche v. Bayliner Marine Corp., 632 So.2d 1170 (La. Ct. App. 1994), the contract for the sale of the Bayliner Trophy Convertible 2560 was held to be a contract for sale of a manufactured boat, and a redhibitory action was proper where the plaintiffs sought recission of the sale.  Similarly, in Morvant v. Himel Marine, Inc., 520 So.2d 1194, 1195 (La. Ct. App. 1988), the plaintiff purchased a Monark boat, motor, and a boat trailer that had been previously manufactured by Monark Boat Company, Inc. at its factory.  Morvant sought recission of the sale, and the court held that the contract was subject to rescission on the grounds of redhibition.  Unlike the boats in Poche and Morvant, the fundamental obligation of the contract between Seacor and Houma was the construction of the M/V GALAXIE.  The contract was one to build because the contract was negotiated in advance of construction, and

18

the vessel was built by Houma for Seacor according to the plans and specifications approved and incorporated into the contract.

Accordingly, because the redhibition statute applies only to a sales contract, Seacor cannot maintain an action in redhibition based on this contract to build. There are no genuine issues of material fact, and Houma is entitled to summary judgment dismissing the redhibition claim.

**D.   Breach of an implied warranty of fitness**

Houma asserts that Seacor's claim of breach of implied warranty of fitness for a product's ordinary use under La. Civ. Code art. 2524 is inapplicable because the contract was one to build, rather than for sale. Houma argues that Seacor negotiated for and received an express warranty of one year, instead of the six-month express warranty that Houma usually agrees to in its contracts, and that the time to claim under that warranty has prescribed.

As discussed above, the underlying contract was not a sale, but a contract to build; therefore, art. 2524 does not apply in this case. However, Articles 2762 and 2769 provide a statutory implied warranty that is applicable to contracts to build. Under Louisiana law, parties to a contract may waive the statutory warranty, providing the limitation is explicit. See <u>Gulf States</u>, 635 F.2d at 521. Although courts are reluctant to enforce warranty

limitations on consumers, they recognize that sophisticated parties who contract freely regarding a commercial undertaking are bound by their contracts. See California Union Ins. Co. v. Bechtel Corp., 473 so.2d 861, 866-67 (La. Ct. App. 1985).

In this case, the warranty provision of the contract does not include explicit language that the contractual warranty is the sole warranty in lieu of all other warranties express or implied. See Gulf States, 635 F.2d at 521 (citing FMC Corp. v. Continental Grain Co., 355 So.2d 953, 956 (La. Ct. App. 1977)). Although the court recognizes that the contract was negotiated by sophisticated parties, there is no explicit waiver of the statutorily imposed implied warranty. Accordingly, Houma's motion for judgment as a matter of law dismissing the Seacor's claim of breach of implied warranty is denied.

**E. Indemnity**

Houma asserts that the indemnity provision does not encompass property damage claims brought by Seacor regarding the object of the contract, rather that the indemnity obligation is to indemnify, defend and hold harmless Seacor for claims brought by third-parties against Seacor.

"[T]he general rules governing the interpretation of contracts apply in construing indemnity agreements." Brown v. Drillers, Inc., 630 So.2d 741, 758 (La. 1994). "One such general rules if

20

that the agreement must be construed as a whole and that terms
employed in several places in the agreement must be construed as
having the same meaning throughout." Id.  Intent is a question of
fact which can be inferred from the surrounding circumstances.
Kuswa & Assoc., Inc. v. Thibaut Constr. Co, Inc., 463 So.2d 1264,
1266 (La. 1985).  Whether a contract is ambiguous is a question of
law.  See Sanders, 696 So.2d at 1037.

The indemnity provision of Article XVII (B) of the contract
provides:

> B.  Notwithstanding any transfer of title as a
> result of OWNER's periodic payments as provided in
> Article III hereinabove and the transfer of title as
> provided in Article VI hereinabove, BUILDER hereby
> agrees to indemnify, defend and hold harmless OWNER, its
> officers, employees, agents, and affiliates from and
> against any and all claims, demands or causes of action,
> for damages or injury to any person (including death or
> any survivor's action) or any property, and against all
> loss, liability and expense, including attorneys' fees,
> howsoever arising, whether or not based in whole or in
> part on any negligent act or omission of OWNER, or
> whether or not based in whole or in part on fault or
> strict liability or unseaworthiness attributable to
> OWNER, in any way directly or indirectly connected with
> the activities and services of BUILDER, or any of
> BUILDER's agents, employees, subcontractors or invitee.
> However, BUILDER shall not be required to defend, hold
> harmless and indemnify OWNER for any claims caused
> solely by the negligence of OWNER or any subcontractor
> hired directly by OWNER.  Further, BUILDER shall not be
> required to defend, hold harmless and indemnify OWNER
> for any claims caused solely by an unseaworthy condition
> which occurs after the delivery provided for in Article
> IX.  This shall not in any way affect any of the
> warranty provisions set forth in Article XII
> hereinabove.

BUILDER further agrees to procure and maintain, at its sole cost and expense, insurance to fully cover all of its obligations set forth in this Agreement, and to have all of its insurance endorsed to name OWNER as an additional insured, with waiver of subrogation in favor of OWNER. This shall include, but not be limited to, the following insurances:

(1) Workman's Compensation Insurance at statutory amounts, with Longshoreman and Harbor Worker's Compensation Act coverage and Employer's Liability Insurance (including Jones Act) in the amount of at least $1 million, with such insurance endorsed to provide waiver of subrogation in favor of OWNER.

(2) Comprehensive General Liability coverage against damage to property, personal injury and/or death of at least $10 million, properly endorsed to have any "watercraft exclusion" deleted and to remove any such other impediment to coverage as an additional insured for OWNER.

All such insurance shall be considered primary to any insurance carried by OWNER, and any "other insurance" clauses are to be deemed deleted as to OWNER. Further, all deductibles shall be the sole responsibility of BUILDER.

The clear and explicit language of the contract provides that Houma will indemnify, defend and hold harmless Seacor for "any and all claims, demands or causes of action for damages or injury to any person or any property" and for "all loss, liability and expense, including attorneys' fees" incurred in indemnifying, defending and holding the owner harmless. The language of the indemnity provision unambiguously and necessarily presupposes a claim, demand, or cause of action against Seacor by a third party and pertains to Houma's obligation to indemnify, defend, and hold

22

harmless Seacor against such third-party claims, demands, or causes of action.  The indemnity provision of this contract does not contemplate a first-party claim by Seacor itself against Houma. Such claims are covered by the warranty provision of the contract.

Accordingly, the court concludes that there are no genuine issues of material fact, and Houma's is entitled to judgment as a matter of law dismissing the breach-of-contract (indemnity) claim.

New Orleans, Louisiana, this _25_ day of May, 2001.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE

23